IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RALPH G. MCKENNA, | ) | |
| GLENROY A. DEANE, | ) | |
| ILENE WILGOREN-DEANE, | ) | |
| CHRISTOPHER J. LILLIE; and | ) | |
| LAURIE A. LILLIE; | ) | |
| | ) | |
| Plaintiffs, | ) | 04-10370-RCL |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST HORIZON HOME LOAN | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR CLASS CERTIFICATION**

Plaintiffs Ralph McKenna and Laurie Lillie submit this reply in support of their motion for class certification. Plaintiffs initially concede that since its class representatives are from Massachusetts, the classes should be limited to Massachusetts residents.

**I.    TILA PERMITS A CLASSWIDE DECLARATION
       OF THE RIGHT TO RESCIND**

First Horizon relies on James v. Home Constr. Co., 621 F.2d 727 (5th Cir. 1980), for the proposition that rescission is a personal remedy. James held that the rescission process on a class basis did not offer the creditor the opportunity to return finance charges and cancel the security interest in a timely in accordance with 15 U.S.C. § 1635(b). James is plainly distinguishable because it sought actual rescission and plaintiffs only seek a declaration of the right to rescind. The declaration would satisfy the James' court's concern that creditors would not have an adequate opportunity to respond to those class members who do choose to exercise

1

their right to rescind.

However, James and its progeny are not controlling in this district and other district courts in Massachusetts have certified a TILA rescission class. McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26 (D.Mass. 2003); Rodrigues v. Members Mortgage, Co., 226 F.R.D. 147 (D. Mass. 2005), pending review under Fed. R. Civ. P. 23(f)[1]. Accord, Williams v. Empire Funding Corp., 183 F.R.D. 428 (E.D.Pa. 1998), *later opinion*, 2000 U.S.Dist. LEXIS 11089 (E.D.Pa. 2000). In Rodrigues, the District Court considered the opinions in James v. Home Const. Co., 621 F.2d 727 (5th Cir. 1980) and Gibbons v. Interbank Funding Group, 208 F.R.D. 278 (N.D. Cal. 2002) and disagreed with those holdings. Notably, Nelson v. United Credit Plan, Inc., 77 F.R.D. 54 (E.D. La. 1978), relied on by First Horizon, strictly sought rescission on behalf of a class and not a declaration of entitlement to rescission. Moreover, Nelson also denied class certification because the adequacy requirement was not met. Id. at 57.

On the other hand, other courts have held that declaratory relief regarding the right of rescission is available as a class remedy. Tower v. Moss, 625 F.2d 1161 (5th Cir. 1980) (class certified under TILA with option to rescind offered after settlement of common claim); Vasquez v. Superior Court of San Joaquin County, 4 Cal.3d 800, 484 P.2d 964 (1971) (class action seeking declaration that class members were entitled to rescind contracts for the purchase of a food freezer and a frozen food package); Richmond v. Dart Industries, Inc., 29 Cal.3d 462, 629 P.2d 23 (1981) (class action sought declaration that class members had right to rescind land purchase contracts); Bryan v. Amrep Corp., 429 F.Supp. 313 (S.D.N.Y. 1977) (class certified in case

---

[1] The same counsel that represents First Horizon in this case filed a petition for leave to appeal the class certification decision in Rodrigues.

arising under the anti-fraud provisions of Interstate Land Sales Full Disclosures Act despite objection that relief sought for each class member was either damages or rescission, as that person might elect); Olive v. Graceland Sales Corp., 293 A.2d 658 (1982) (permitting a class action for relief including rescission to be maintained, as long as each member was specifically asked if he or she desired rescission); Tcherepnin v. Franz, 461 F.2d 544 (7th Cir. 1972) (affirming class-wide judgment providing that "the plaintiffs and their class had been defrauded within the meaning of the anti-fraud provisions of the securities exchange act" and that "[a]s defrauded purchasers of securities, they had a right to rescind their purchase agreements and, upon the rescission, were entitled to assert a claim against [certain funds]"); Smyth v. Kaspar American State Bank, 136 N.E.2d 796 (Ill. 1956) (certificate holders of a beneficial interest entitled to a declaration of a constructive trust.) *superceded by statute* Steinberg v. Chicago Medical School, 371 N.E.2d 634 (Ill. 1977).

      A class seeking a declaration establishing the right to rescind is not "unfair." It is "unfair" for defendant to violate the law and argue that the potential liability it faces in restoring the consumers to the position they were in before the violation occurred is unfair. Congress did not intend such a result; and this Court has not recognized that liability to be unfair. First Horizon's equity argument fails to consider that each consumer could have exercised their right to cancel in each transaction First Horizon funded. Therefore, plaintiffs and class members in this case are seeking exactly what federal law provides.

      First Horizon argues that TILA revisions were intended to prevent devastating judgments for statutory violations. Although this is true, Congress also recognized that "potential class action liability is an important encouragement to the voluntary compliance which is so

necessary to insure nationwide adherence to uniform disclosure." Bantolina v. Aloha Motors, 419 F.Supp. 1116, 1120 (D. Haw. 1976). "The possibility of class action exposure is essential to the prophylactic intent of the Act, and is necessary to elevate truth-in-lending lawsuits from the ineffective nuisance category to the type of suit which has enough sting to insure that management will strive with diligence to achieve compliance." Id. at 1120 citing the 1972 Federal Reserve Board Annual Report on TILA). In this case, the statutory violation was that consumers were given a notice to rescind that was so confusing that it effectively deprived them of exercising their right to rescind. Thus, it would be unfair to permit First Horizon to keep the interest they have collected and give the consumers less than what they are entitled to by law.

Finally, the low response rates in most class actions to class notices, and the results of the Tower case suggest that there is no danger of devastating result to First Horizon caused by class certification in this case. There is no guarantee that each class member will rescind. In short, plaintiffs' motion should be granted.

## II. TILA AUTHORIZES DECLARATORY RELIEF AND SUCH RELIEF SHOULD BE GRANTED IN THIS CASE

First Horizon's contention that rescission classes are not contemplated in TILA is without merit. (Resp., pp. 5, 7) First Horizon correctly states that § 1640 provides for statutory damages, while § 1635(g) specifically provides for rescission. However, § 1635's silence on class actions should not be construed as an exclusion to bring a rescission class, especially in light of the fact that several rescission classes have previously been granted. McIntosh, supra; Williams, supra; Tower; supra. This argument was previously rejected by the McIntosh Court. "The Court is unpersuaded by the Jefferson court's rationale that class actions seeking rescission under Section 1635 are inappropriate because such actions would render Section 1635 penal in nature."

McIntosh, 215 F.R.D. at 33.

Plaintiffs in this case seek a declaration of entitlement to rescission for the class members. By simply seeking a declaration of rescission, class members are given the *choice* to rescind. If class members do not elect the remedy, no one forces them to take it. Additionally, through the administration of the class notice, class members are given the opportunity to opt out pursuant to Fed. R. Civ. P. 23 (c)(2).

### A.     Class Members Have Standing

First Horizon claims that if putative class members have not formally notified First Horizon of their intent to rescind, they have no standing and that that deficiency is not remedied by filing a class action complaint. This argument is completely against the weight of authority.

Article III mandates plaintiffs to demonstrate that they have suffered some actual injury. Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197 (1975). However, "Congress may, by legislation, expand standing to the full extent permitted by Article III, thus permitting litigation by one 'who otherwise would be barred by prudential standing rules.'" Gladstone Realtors v. Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608 (1979), quoting Warth v. Seldin, 422 U.S. at 501. TILA provides for rescission, actual damages and statutory damages. Thus, a plaintiff who may have not suffered actual damages may rescind or recover statutory damages. "Apparently, the theory behind such statutes is that Congress cannot expand Article III, but it can create the injury necessary to fit within Article III....This rationale applies to TILA,..." Pearson v. Easy Living, Inc., 534 F.Supp. 884, 891 (S.D. Ohio 1981) (citations omitted). Accord, White v. Arlen Realty, 540 F.2d 645, 649 (4th Cir. 1976).

Several cases have held that the filing of a class action complaint constitutes notice

of rescission. Elliott v. ITT Corp., 764 F.Supp. 102, 105-06 (N.D. Ill. 1991); Taylor v. Domestic Remodeling, 97 F.3d 96, 99-100 (5th Cir. 1996); In re Rodrigues, 278 B.R. 683, 689 (Bankr. D.R.I. 2002). Once this has been done, the rights of all class members are protected. American Pipe and Construction Co. v. Utah, 414 U.S. 538 (1974); Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983); Appleton Electric Co. v. Graves Truck Line, Inc., 635 F.2d 603, 610 (7th Cir. 1980). It is not necessary that a judgment of rescission be entered within 3 years.

Consumer protection laws, such as TILA, should be enforced through class actions because the vast majority of consumers are undoubtedly unaware that their rights are being violated. To preclude a class declaration of rescission and statutory damages would stifle the filing of class actions and permit lenders to continue to violate the law and harm multiple consumers without liability.

**B.**    *Rodrigues* **and** *McIntosh*

First Horizon attempts to make the same arguments it made to the appellate court in its pending petition for leave to appeal pursuant to Fed. R. Civ. P. 23(f) of the Rodrigues decision. This District has already ruled in favor of rescission classes in Rodrigues and McIntosh, and defendant's attempt to create a split are futile. Nevertheless, plaintiffs assert that Rodrigues and McIntosh are persuasive authorities that this Court should consider in its ruling on plaintiffs' motion for class certification.

First Horizon contends that the McIntosh Court erred in certifying a rescission class by rejecting what the Fifth Circuit held in James. The McIntosh Court discussed James and Jefferson, and simply did not follow those opinions. McIntosh, 215 F.R.D. at 32-33. The James and Jefferson opinions have no precedential effect and are merely persuasive authority. Plymouth

grossly misstates that the McIntosh Court rejected the weight of authority on the issue of rescission classes. In fact, First Horizon has only identified a few cases, four of which are other District Court opinions, which deny a certification of a class seeking a declaration of rescission. Four cases, all of which are not controlling, are not a "weight" of authority.

The McIntosh Court certified a class because the plaintiffs met the requirements of Fed. R. Civ. P. 23. Additionally, the Court considered that the class action was the best method to adjudicate claims which may not have been brought by individuals because they may be unaware that their rights were violated.

First Horizon asserts that TILA provides sufficient incentive for individual recoveries and that a class action removes that incentive for bringing an individual action. This argument is nonsensical since TILA already provides for class actions. Moreover, any court reviewing Fed. R. Civ. P. 23 requirements must determine the "best" available method for the "poor or uninformed to enforce their rights, and [consider] the improbability that large numbers of class members would possess the initiative to litigate individually." Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1165 (7th Cir. 1974).

All of the class members' claims arise from the same set of facts, i.e., the same First Horizon documents. First Horizon's argument also fails to consider that several individual actions are less efficient, likely resulting in duplicative litigation, and less economical. In a class action, no class member pays for an attorney; such is not the case in an individual action even with a statutory provision for attorney's fees and costs. In this case, no class member will be prejudiced by having the opportunity to exercise their right to rescission.

Rodrigues is quite similar to the case at bar. Both cases involve improper notice of

right to cancel documents. First Horizon states that the number of class members in both the McIntosh and Rodrigues cases "ameliorated the consequences of certifying a rescission class." (Resp., p. 11) Although the classes in those cases were smaller than the case at bar, even as limited to Massachusetts residents, First Horizon, neglected to mentioned that there is another quite substantial putative class that has not yet been certified in Rodrigues. Moreover, counsel for Plymouth (counsel for First Horizon) in its petition for leave to appeal mentions this case and refers to it as "similar" in its argument to state a "compelling" need for review.

Nevertheless, the Court may always in its discretion modify or narrow the class definition, as it did in McIntosh, to produce a fair and equitable result.

### III.   PLAINTIFFS HAVE SATISFIED FED. R. CIV. P. 23

#### A.   Class Certification Is Not Inequitable

First Horizon argues that the liability it faces in the event a class is certified is inequitable. This argument is untenable. Receipt of a defective notice is equivalent to not receiving the notice at all because it does not accurately disclose a borrower's rights. Creditors are required under TILA to provide clear and conspicuous disclosures. Using the wrong notice form is a disclosure violation. TILA's damages are an incentive for compliance. "[A]ny violation of TILS, regardless of the technical nature of the violation, must result in a finding of liability against the lender." Barnes v. Fleet National Bank, N.A., 370 F.3d 164, 171 (1st Cir. 2004).

First Horizon's argument is that they should be relieved of giving the right to cancel because of the loss they may incur if the statutory right was exercised. First Horizon complains about the damages if everyone cancelled, but each class member had a right to cancel,

and First Horizon deprived them of that right by providing a faulty notice.  Thus, any money returned to the class is only a return of what the law provides in the first place.

      **B.**      **Common Issues Predominate**

      First Horizon argues that individual issues predominate and as such, class certification should be denied.  First Horizon claims that individual inquiry is needed to ascertain each putative class member's understanding of the notice of right to cancel. This argument is without merit.  No individualized inquiry is necessary.  The burden is not shifted to the closing agents to communicate the substance of the forms but is imposed on the lenders to make the disclosures themselves clear and conspicuous.  15 U.S.C. § 1635(a); 12 C.F.R. §§ 226.15(b), 226.23(b),  226.5(a)(1) and 226.17 (a)(1).  "An objective standard is used to determine violations of the TILA, based on the representations contained in the relevant disclosure documents; it is unnecessary to inquire as to the subjective deception or misunderstanding of particular consumers....We cannot allow the appellees to evade the requirements of the TILA and Regulation Z on the fortuity that some consumers are better able to evaluate the information than others."  Zamarippa v. Cy's Car Sales, Inc., 674 F.2d 877, 879 (11th Cir. 1982).  See Wright v. Tower Loan of Mississippi, Inc., 679 F.2d 436, 445 (5th Cir. 1982); Rodash v. AIB Mortgage Co., 16 F.3d 1142 (11th Cir. 1994); Diaz v. Westgate Lincoln Mercury, 1994 U.S. Dist. LEXIS 16300 (N.D. Ill. Nov. 14, 1994); Wiggins v. Avco Fin. Servs., 62 F.Supp.2d 90 (D.D.C. 1999): Henry v. Cash Today, Inc., 199 F.R.D. 566 (S.D. Tex. 2000); Helton v. World Wide Fin. Servs., 2003 U.S. Dist. LEXIS 26156 (E.D. Mich. 2003).

      The class definitions by nature refer to standard form documents - notice of right to cancel.  Moreover, all closings First Horizon handles give agents a set of closing instructions.

Each plaintiff in this case received an identical copy of the closing instructions. (Exhibits A-C) It would be extremely detrimental for First Horizon to give each closing agent unfettered discretion to conduct the closing in any manner they see fit. Hence, the closing instructions mandate uniformity of the closing. "THESE INSTRUCTIONS CANNOT BE AMENDED BY ANY ORAL AGREEMENTS OR DISCUSSIONS WITH UNAUTHORIZED PERSONNEL. ANY DEVIATION FROM THESE WRITTEN INSTRUCTIONS ARE AT THE RISK OF SETTLEMENT AGENT." (Exhibits A-C) These instructions have been signed by the settlement agents in the Lillies and Mr. McKenna's closings. (Exhibits A-B) "This loan must be closed in accordance with these instructions." Id.

Standardized documents are used to give "a consistent uniform interpretation." Sharon Steel Corp. v. Chase Manhattan Bank, 691 F.3d 1039, 1048 (2d Cir. 1982) *cert. denied*, 460 U.S. 1012 (1983); Leverso v. Southtrust Bank, 18 F.3d 1527 (11th Cir. 1994). Uniform instructions are issued to ensure that an intense, fact-based analysis need not be conducted in every instance but that uniform procedures can be relied upon for compliance. By signing a form document, the parties agree that the document contains all the terms of the agreement and that neither party's rights will be effected by any other oral or written statements. Restatement 2d Contracts, § 211(1). By arguing that each closing agent could have changed the substance of the agreement by giving further instruction, would be akin to arguing that defendant's closing agents ignored its instructions.

Finally, First Horizon argues, correctly, that some borrowers may be excluded from the class definitions because their bankruptcies (chapter 7s or confirmed chapter 13s) or foreclosure sales terminate their rescission rights. Plaintiffs, however, disagree that those persons

who have paid off their loan should be excluded from the classes. Paying off a loan is not one of the events listed in 15 U.S.C. § 1635 that terminates rescission rights.

### C.    The Classes Are Manageable

First Horizon argues that the classes are unmanageable because it would have to review 200,000 loan files to identify the class members. However, the testimony of Mr. Covington shows that although there may have been multiple versions of the notice of right to cancel used, the form at issue was created by and resides on First Horizon's system, "TMO," The Mortgage Originator. (Exhibit D, pp. 19, 53) Moreover, the "potentially different version" of the form contained only "some variations" or "minor format changes." (Exhibit D, pp. 21, 54) It remains undisputed that the offending form was consistently used.

First Horizon's quality control measures demonstrate that hundreds of loans are reviewed on a monthly basis for compliance. (Confidential Documents FH 988-1043). Furthermore, it was not a hardship for First Horizon to discover that its home equity lines of credit mortgage loans, which are likely also on the TMO "were not in technical compliance with Federal disclosure statutes and regulations." (Exhibit E) Finally, if this Court finds that loan by loan review would be unduly burdensome to defendant, plaintiffs are willing to investigate the records themselves to identify the class to alleviate the alleged burden.

Rescission is not as complicated as defendant hypothesizes. Although court supervision is needed, plaintiffs counsel is adequately qualified and experienced. After all, plaintiffs' counsel also represented plaintiffs in McIntosh and Rodrigues.

### D.    Superiority Exists

Defendant claims that since TILA offers an adequate incentive to bring an

11

individual litigation, superiority does not exist. The superiority requirement is met because many borrowers do not even know that their notice of right to cancel has been violated. It is through the class action device that a group of individuals are able to receive the benefits of counsel without directly paying counsel attorney's fees and costs. Most importantly, efficiency is a primary concern in determining whether a class action is a superior method of resolving the controversy. Ironically, what First Horizon seems to be arguing is that the inefficiencies and inconsistencies of multiple suits would be more beneficial. Such logic is nonsensical, especially in the context of dealing with potentially 8,900 individual lawsuits in Massachusetts.

### E.     Plaintiffs Are Adequate Class Representatives

Plaintiffs seek a declaration of rescission. First Horizon argues that plaintiffs stand to gain nothing out of this litigation and have no interest in litigating this class action. (Resp., p. 19) Similar to the class members they seek to represent, plaintiffs have not yet received their remedy. Despite First Horizon's argument that it is "absurd" that plaintiffs would rescind even if they were only able to obtain a higher interest rate, their testimony was consistent with that contention. Mortgage rates, though currently on the rise, are still under 6%. (Exhibit F) The point is that the borrowers have the choice to elect to rescind and that they are not forced to rescind and the amount they recover is not capped. Finally, not all class members will rescind, but they will at least have received the right. If the notice had been proper, not all consumers may have rescinded, but at least they were and are entitled to it.

### F.     Typicality

First Horizon argues that the plaintiffs, Massachusetts residents, lack standing to represent a non-Massachusetts TILA class and for that reason their claims are not typical of the

class. Plaintiffs concede this issue and limit their request to certify classes comprised of only Massachusetts residents.

## IV. CONCLUSION

In conclusion, plaintiffs have satisfied all the requirements of Fed. R. Civ. P. 23(a) and (b)(3) and respectfully request that this Court certify the classes in this action.

Respectfully submitted,

s/ Heather A. Piccirilli

Daniel A. Edelman
Heather A. Piccirilli
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre, B.B.O. # 629056
LAW OFFICES OF CLAUDE
    LEFEBVRE & SONS
P.O. Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (FAX)