

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
Willie C. MURRY and Wylodean Murry,
v.
AMERICA'S MORTGAGE BANC, INC., et al.,
Defendants.
Blondell GREENLEAF, Plaintiff,
v.
BWM MORTGAGE, LLC, et al., Defendants.
BWM MORTGAGE, LLC, Counterplaintiff,
v.
Blondell GREENLEAF, Counterdefendant.
**No. 03 C 5811, 03 C 6186.**

May 5, 2005.

Daniel A. Edelman, Cathleen M. Combs, Francis Richard Greene, James O. Latturner, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Willie C. Murry and Wylodean Murry.

Richard David Herman, Best, Vanderlaan & Harrington, Wheaton, IL, Aaron C. McKee, James S. Kreamer, Baker, Sterchi & Cowden, Kansas City, MO, Tod H. Rottman, Best, Vanderlaan & Harrington, Chicago, IL, for America's Mortgage Banc, Inc.

John Joseph Lydon, Raymond John Ostler, Gomberg, Shafman, Gold & Ostler, P.C., Chicago, IL, for The Loan Arranger, Inc. and Clearwater Title Company.

Daniel Joseph Neppl, Sidley Austin Brown & Wood LLP, Jamie A. Robinson, Michael Best & Friedrich, LLC, Chicago, IL, for Paragon Home Lending, LLC.

Renee Lynn Zipprich, Richard Eric Gottlieb, Arthur F. Radke, Gwen Marie Geraghty, Julie C. Keller, Miles W. Hughes, Ralph T. Wutscher, Dykema Gossett Rooks Pitts PLLC, Chicago, IL, Sarah Elizabeth Heineman, Dykema Gossett, Grand Rapids, MI, for Homecomings Financial Network, Inc. and Sovereign Bank.

Alexander Holmes Burke, Anne Michelle Burton, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Blondell Greenleaf.

James Daniel Dasso, Nathaniel L. Strup, Foley & Lardner, Chicago, IL, Michael George Aretos, Jonathan Neil Rogers, Stephen G. Daday, Wayne B. Giampietro, Stitt, Klein, Daday & Aretos, Arlington Heights, IL, Jay N. Varon, Foley & Lardner, Washington, DC, for BWM Mortgage, LLC.

*REPORT AND RECOMMENDATION*

SCHENKIER, Magistrate J.

**\*1** In these related cases, *Murry v. America's Mtg. Banc, Inc.,* No. 03 C 5811, and *Greenleaf v. BWM Mtge., LLC,* No. 03 C 6186, the plaintiffs have filed a renewed motion for class certification (doc. # 113), pursuant to Federal Rule of Civil Procedure ("Rule") 23. In both actions, plaintiffs assert federal claims arising under the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226 ("Reg.Z"), in connection with allegedly improper disclosures in mortgage transactions, as well as supplemental state law claims under the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS § 505/2, for alleged misrepresentations in the finance charge designed to mislead plaintiffs into believing they were getting a better deal than they were, and to avoid triggering the Illinois High Risk Loan Act, 815 ILCS § 137/10. As a remedy for the alleged violations, the plaintiffs seek statutory damages under TILA; compensatory and punitive damages for the ICFA claims; and, for the TILA and ICFA claims, a declaration that "any class member who so desires may rescind their transaction," injunctive relief, and attorneys fees and costs (Pls.' Mem. Ex. A (Murry Third Am. Compl. ¶ ¶ 52(b), 72(b)), Pls.' Reply Mem. Ex. B (Greenleaf Am. Compl. ¶ ¶ 44(2), 59(2))).

In both *Murry* and *Greenleaf,* plaintiffs seek certification of various classes (which we describe in more detail below) in both the TILA and ICFA claims. The motions for class certification have been referred to this Court for a report and recommendation (doc. # 131). After careful review, the Court respectfully recommends that the plaintiffs' renewed motion for class certification be granted as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to liability and statutory damages, but denied with respect to plaintiffs' claims seeking declaratory relief regarding rescission.

I.

The procedural history of this case has been summarized in previous opinions in this case. But, we will briefly review the facts relevant to the present motion.

On August 19, 2003, the Murrys filed a class-action complaint in connection with a mortgage loan that they obtained in April 2002. The Murrys alleged that the mortgage loan (which was in the principal amount of $74,000.00, and was secured by their primary residence) was issued by defendant America's Mortgage Banc, Inc. ("AMB") and was arranged by a mortgage broker hired by the Murrys-- The Loan Arranger, Inc. AMB later assigned the loan to Paragon Home Lending, LLC. In consummating the transaction, the Murrys received a Truth in Lending disclosure statement from AMB, which listed title insurance charges by Lake Shore Title Agency ($450) and Clearwater Title Company ($1,145.00).

The *Greenleaf* complaint alleges that Loan Arranger arranged for a $58,000 mortgage loan from BWM Mortgage, LLC that closed on or about September 11, 2002. This transaction was "for personal, family or household purposes, namely to refinance prior debts incurred for that purpose" (Am.Compl.¶ 11). The mortgage loan was secured by the plaintiffs' home, and is currently owned by Sovereign Bank. In consummating this transaction, the Greenleaf plaintiffs received two different settlement statements: one on form HUD-1 (Pls.' Ex. D) and one on form HUD-1A (Pls.' Ex. E). The Greenleaf plaintiffs allege (and defendants do not dispute) that the HUD-1 represents the actual terms of the transaction. Specifically, the Greenleaf plaintiffs were charged a total of $1,625 for title insurance, most of which was paid to Clearwater Title. These title charges were not included in the finance charge. The plaintiffs assert that the title insurance charge is not accurate because "the insurance was actually issued ... for a fraction of the $1,625" (Am.Compl.¶ 18), or about $400.00.

**\*2** Both the *Murry* and *Greenleaf* complaints allege that defendant Michael Robins owns both Loan Arranger and Clearwater. Both complaints also allege that the charges for title insurance were inflated, for the purpose of allowing the finance charge set forth in the Truth in Lending statement to be understated

and the amount financed to be overstated.

Based on this theory, the *Murry* plaintiffs allege three causes of action: (1) a class action claim under TILA, against AMB, Paragon (for rescission only), and the Doe defendants, seeking a declaration that any class member can rescind their transaction, statutory damages, attorney's fees and other relief (Count 1); (2) an individual claim by the Murrys under TILA, seeking rescission of their transaction, statutory damages for failure to rescind, if appropriate, a judgment voiding plaintiffs' mortgage, a judgment declaring what obligation if any plaintiffs have towards defendants, and attorney's fees and costs (Count II); and (3) a class action under ICFA, against AMB, Clearwater, Loan Arranger, and Mr. Robins, seeking a declaration that any class member who so desires may rescind their transaction, injunctive relief, compensatory and punitive damages, and attorney's fees and costs (Count III).

Based on the same basic allegations and theories, the *Greenleaf* plaintiffs assert the same three causes of action: (1) a class-action TILA claim against BWM Mortgage, LLC (which issued the loan to Mr. Greenleaf), Mortgage Lenders Network, USA ("MLN") and Sovereign Bank (which are alleged to be subsequent owners or assignees of the Greenleaf loan), and Does 1-5, seeking a declaration that "any class member who so desires may rescind their transaction, binding on all defendants," attorney's fees (against assignees of the loan) and costs (against all defendants) (Count I); (2) an individual TILA claim alleged against BWM, MLN, Sovereign Bank, and Does 1-5, seeking rescission and relief (Count II); and (3) ICFA a class-action claim is alleged against BWM, MLN, Clearwater, Loan Arranger, Mr. Robins and Does 1-5, seeking a declaration that any class member who so desires may rescind their transaction, against all defendants, actual and punitive damages against Mr. Robins, Loan Arranger, Clearwater, and BWM; a judgment voiding plaintiffs' mortgages and declaring what obligation if any plaintiff has toward defendants; injunctive relief; and attorneys' fees and costs (Count III).

This motion addresses only the class certification claims in Counts I and III of both the *Murry* and *Greenleaf* complaints. Based on our review of the parties' submissions and the governing legal principles, we recommend that the district judge certify classes, as proposed by the *Murry* and *Greenleaf* plaintiffs, in Counts I and III of both complaints, but for purposes of liability and damages only, and not for rescission or other injunctive or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

equitable purposes.

## II.

To maintain a class action, plaintiffs must demonstrate that they and the class they wish to represent meet all four requirements of Rule 23(a) and one of the requirements of Rule 23(b). _General Telephone Co. v. Falcon,_ 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). To satisfy Rule 23(a), plaintiffs must specifically establish that the class satisfies the following requirements: (1) numerosity (a class large enough to make joinder of all members impracticable); commonality (questions of law or fact common to the class; (3) typicality (named parties' claims or defenses typical of the class); (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class). _Patterson v. General Motors Corp.,_ 631 F.2d 476, 481 (7th Cir.), _cert. denied,_ 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). [FN1]

> FN1. There are two implied prerequisites to class certification that also must be satisfied prior to addressing the issues raised by Rule 23(a). _First,_ the class must be sufficiently defined so that the class is identifiable. _Alliance to End Repression v. Rochford,_ 565 F.2d 975, 977 (7th Cir.1977). _Second,_ the named representatives must fall within the proposed class. _Id._ Defendants do not assert that plaintiffs fail to meet those two implied requirements, and so we do not discuss them further.

**\*3** In addition, Rule 23(b) requires that one of its prerequisites also be satisfied. In this case, plaintiffs seek to proceed as a Rule 23(b)(3) class. To satisfy Rule 23(b)(3), the plaintiffs must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." This requirement is generally interpreted by the case law as delineating two requirements: (1) that common questions of law or fact predominate over questions affecting only individual members, and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The predominance factor requires consideration of the substantive elements of the plaintiffs' cause of action, the proof necessary for the various elements, and the manageability of the trial on these issues. If individual issues predominate, then class certification is usually not a superior method for resolving the

controversy, since management of such issues by a court will not be efficient. _Szabo v. Bridgeport Machines, Inc.,_ 249 F.3d 672, 675 (7th Cir.), _cert. denied,_ 534 U.S. 951, 122 S.Ct. 348, 151 L.Ed.2d 263 (2001). _See also Lucas v. GC Services L.P.,_ 226 F.R.D. 337 (N.D.Ind.2005).

The Seventh Circuit has directed district courts to conduct an independent judicial review of the plaintiffs' allegations before determining whether class certification is appropriate. _Szabo,_ 249 F.3d at 675-76. "Before deciding whether to allow a case to proceed as a class action, ..., a judge should make whatever factual and legal inquiries are necessary under Rule 23." _Id._ at 676. When, as here, plaintiffs seek certification under Rule 23(b)(3), we must "make a preliminary inquiry into the merit" of the claims, to decide whether "the difficulties likely to be encountered in the management of the class" preclude certification. _Id._ As this Court previously has stated:

> We do not believe that _Szabo_ directs district courts to decide class certification questions based on a preliminary assessment of the ultimate merits of the plaintiffs' claims: to base class certification on a prediction of who will win the case would be at odds with _Eisen [v. Carlisle & Jacquelin,_ 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ]. In our view, the "preliminary inquiry into the merits" discussed in _Szabo_ is a more limited one, that has as its focus not the substantive strength or weakness of the plaintiffs' claims but rather whether the path that will need to be taken to decide the merits renders the case suitable for class treatment. It is in this limited sense that the Court assesses the "merits" of plaintiffs' allegations in considering the class certification motion.

_Humphrey v. International Paper,_ No. 02 C 4147, 2003 WL 22111093, \*3 (N.D.Ill. Sept.11, 2003) (discussing _Szabo,_ 249 F.3d at 675).

## III.

**\*4** In the _Murry_ complaint, the plaintiffs propose the following class for the TILA claim in Count I:

> All natural persons who obtained loans from America's Mortgage Banc secured by their residences on or after a date three years prior to the filing of this action, for purposes other than the initial construction or acquisition of those residences where a mortgage broker fee was paid to Loan Arranger, where title insurance charges were paid to Clearwater, and where the charge for the title insurance was excluded from the finance charge.

(Th.Am.Compl.¶ 66). For their ICFA claim in Count III, plaintiffs propose two classes, designated

A and B. Proposed Class A consists of the class identified in Count I. Proposed Class B consists of:

> All natural persons who obtained loans secured by their residences on or after a date three years prior to the filing of this action for purposes other than the initial construction or acquisition of those residences where: (1) a mortgage broker fee was paid to the Loan Arranger, (2) title insurance charges were paid to Clearwater, and (3) the charge for the title insurance was excluded from the finance charge.
>
> (Th.Am.Compl.¶ 67.)

The *Greenleaf* plaintiffs propose the following class and subclass of persons for certification on both the TILA and ICFA claims. The proposed class consists of:

> All natural persons who obtained loans from BWM Mortgage, LLC secured by their residences, on or after a date three years prior to the filing of this action, for purposes other than the initial construction or acquisition of those residences, where The Loan Arranger, Inc. was the broker and title insurance was obtained from Clearwater Title, and the charge for the title insurance was excluded from the finance charge.

(Am.Compl.¶ 54). The subclass is limited to those persons whose loans later were transferred to MLN (*Id.*).

We first address the propriety of certifying these proposed classes beginning with the uncontested Rule 23(a) factor19s. We then address the contested Rule 23(a) factors and the Rule 23(b)(3) considerations in this case.

                                     A.

The defendants do not challenge plaintiffs' assertion that Rule 23(a)(1), requiring numerosity, and Rule 23(a)(4), requiring adequacy of representation, are satisfied. We therefore only briefly review the standards and evidence offered on these factors.

Rule 23(a)(1) requires that the proposed class be so numerous that joinder is impracticable. While there is no bright line test for numerosity, courts have found this element satisfied where the putative class would number in the range of as few as 10 to 40, at least where the joinder of individual plaintiffs would be impractical. *See generally* Humphrey, 2003 WL 2211093, at *6 (and cases cited therein). Here, the plaintiffs offer evidence obtained through discovery to substantiate their numbers. According to the Murry plaintiffs, "there are approximately 45-70 transactions that fit the Murry Class A definition and

160-170 loans that meet the Class B definition[.]" And, as for the Greenleaf definition, there are "at least 40" class members (Clearwater discovery responses in Murry, Ex. E at 8; BWM Mortgage discovery responses in Greenleaf, Ex. F, at 6), and "more than 50 members" alleged in the amended complaint. The defendants do not challenge plaintiffs' evidence on numerosity; and, they in fact accept it for purposes of asserting that the plaintiffs' claims are not "typical" under Rule 23(a)(3)--a point we address *infra* pp. 14-15 (Pls.' Mem. at 14, n. 15). We therefore recommend that the district judge find that the numerosity element of Rule 23(a)(1) is met.

**\*5** Rule 23(a)(4) requires "adequacy of representation." To be an adequate representative of a class, a plaintiff must have a sufficient stake in the outcome to ensure zealous advocacy and must not have antagonistic or conflicting claims with other class members; moreover, counsel for the named plaintiff must be experienced, qualified, and generally able to conduct the litigation. *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584 (7th Cir.1993). The class representative must also have the same interest as the other class members in establishing the claims alleged against the defendant in the case. *Hoffman v. Grossinger Motor Corp.*, No. 96 C 5362, 1999 WL 184179, at *5 (N.D.Ill., March 29, 1999). The defendants make no arguments regarding this requirement. And, we see no basis to conclude that either plaintiffs' counsel (who are extremely experienced in consumer-related class litigation) or the plaintiffs themselves are not adequate representations. Therefore, the Court recommends that the district judge find that Rule 23(a)(4) has been satisfied.

                                     B.

We now address the two contested Rule 23(a) factors: commonality and typicality. For the reasons explained below, we recommend that the district judge find these two requirements satisfied.

                                     1.

Rule 23(a)(2) requires that plaintiffs prove the existence of questions of law or fact that are common to the proposed class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992). Thus, "some factual variation among the class grievances will not defeat a class action." *Id.* at 1017. Commonality is not a difficult requirement to meet: only one issue of law or fact needs to be common to all class members, and standardized conduct with some variation among

class members will do. *Meiresonne v. Marriot Corp.*, 124 F.R.D. 619, 622 (N.D.Ill.1989).

Commonality is a factor in both the Rule 23(a)(2) and Rule 23(b)(3) analysis. Both requirements are usually satisfied when there is standardized conduct by the defendants toward members of the proposed class and a common nucleus of operative facts is present. *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill.1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D.Ill.1988). Class certification is usually considered a superior method of adjudicating claims involving standardized conduct, because the analysis focuses on the same document and/or conduct for each proposed class member, even if there are individual facts, such as different numbers or amounts, that must be factored into the same formula or document or conduct. *See Haroco v. American Nat'l Bank*, 121 F.R.D. 664, 669 (N.D.Ill.1988); *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D.Ill.1989). This is true even though the nature and amount of damages may differ among the class members, so long as those individual issues are manageable through bifurcated hearings or some other mechanism that allows the common issues to be adjudicated together. *Heastie*, 125 F.R.D. at 678-79.

**\*6** Based on the *Murry* and *Greenleaf* plaintiffs' allegations, and the briefs and evidence submitted in support of those allegations, this Court recommends that the district judge find that the commonality requirement of Rule 23(a)(2) has been satisfied. The common question that links the TILA and ICFA claims of all the proposed class members is the alleged formula used by Loan Arranger and Clearwater to arrive at title insurance charges to be made to borrowers. Plaintiffs have offered evidence that Loan Arranger and Clearwater have a standard practice of charging a flat fee of approximately $1,595.00 for title insurance for all mortgage loans less than $1 million (Pls.' Ex. C., Robins Dep. at 35). Plaintiffs assert that this standard practice results in title insurance charges that are routinely excessive and unreasonable, because the true cost of the title search and insurance is typically far less than that amount--in the range of $420.00 (Pls,' Mem. at 4-5).

Plaintiffs assert that a substantial portion of the stated title charge is, in fact, a broker fee charged by Loan Arranger (which allegedly pockets the difference between the $1,595.00 stated title charge and $420.00 that is the true cost of the title search and insurance). Based on this assertion, plaintiffs' theory of TILA liability is that the loan documents fail to accurately disclose the true title cost and the amount of broker fees financed, thus understating the disclosed finance charge and overstating the amount financed.

This theory of false disclosure also is the linchpin to plaintiffs' ICFA class claim. The alleged fraud that gives rise to the ICFA claim is the alleged false TILA disclosure--that is, the alleged overstatement of title charge and understatement of broker fees. Plaintiffs' ICFA theory is that the motivation for the alleged fraud was the desire of Mr. Robins to avoid having loans fall under the Illinois High Risk Loan Act, 815 ILCS 137/10, which imposes various limitations and requirements not applicable to other loans. The Act defines a "high risk home loan" as one that is above a defined interest rate and where the total fees and points payable by the borrower at or before closing exceeds the greater of $800.00 or 5 percent of the total loan contract. The statutory definition of "points or fees" includes "compensation paid directly or indirectly to a mortgage broker," but does not include title charges. So, plaintiffs allege that by mislabeling broker fees as title charges, defendants reduced the amount of fees that would be counted in the calculation to determine if the High Risk Loan Act applied, and thus reduced the likelihood it would apply.

We agree with plaintiffs that the allegations and evidence present significant common questions. The charge applied for loans under $1 million (which are the loan amounts for all putative class members) is standard. Plaintiffs have pointed to evidence that the standard title insurance charges so far exceed the actual cost of obtaining the insurance that, in all instances, the stated charges are unreasonable and excessive--which, if true, would support an action for false TILA disclosures as well as an ICFA claim.

**\*7** Defendants do not agree that common questions regarding standardized formula exist, let alone predominate, for purposes of the Rule 23(a)(2) requirement (Defs.' Resp. Mem. at 12 and n. 13). Specifically, defendants argue--with respect to both TILA and ICFA--that "the core relevant inquiry here is whether the amount charged to each putative class member for title insurance was unreasonable and, if so, whether the excess portion of the charges are outside rescission tolerances" (*Id.*). The defendants thus conclude that "no matter what amount is ultimately stated as the finance charge, each plaintiff's loan must be subject to a specific and fact-intensive mathematical determination of whether the specific finance charge is within allowable tolerances for the corresponding loan" (*Id.*).

We are unpersuaded that this argument undermines the predominance of common questions. Defendants have offered evidence that there may be some variance in what a reasonable title charge might be in any given case. In particular, defendants have pointed out that other title companies (*e.g.,* Chicago Title and Trust) may charge more for title search and insurance services than Lakeshore and Lawyers' Title. But, those possible variations show that the reasonableness of the total charge defendants allocated to title search and insurance (a mark-up of more than $1,000.00 over the charges of Lakeshore and Lawyers' Title) cannot be determined on a class-wide basis. Moreover, defendants have not offered specific evidence to show they would attempt to prove, on a case-by-case basis, that a flat title charge of some $1,600.00 was in fact reasonable as to the named plaintiffs or to any putative class members, when measured against the $420.00 or so in title search and insurance fees that Clearwater actually incurred for the title work done by Lakeshore and Lawyers' Title. Discovery has been completed, and if defendants have evidence to show that they could prove this defense in individual cases, they should have presented it-- even if on only a sample basis. In the absence of such evidence, we see no reason to believe that the question of the accuracy of the TILA disclosures stemming from the defendants' standard charges and practices cannot be resolved on a class basis.

We further conclude that the defendants' reliance on <u>Guise v. BWM Mortgage, LLC,</u> 377 F.3d 795, 798-99 (7th Cir.2004), to undermine class certification is misplaced. In *Guise,* the Seventh Circuit affirmed a judgment on the pleadings on a rescission claim because the discrepancy between the actual finance charge and the disclosed charge was less than 0.5 percent of the financed amount, and thus the disclosure was deemed accurate under <u>15 U.S.C. § § 1605(f)(2)</u> and <u>1635(i)(2).</u> *Guise* fails to advance defendants' argument for several reasons.

*First,* the "0.5 percent tolerance" defense to TILA disclosure claims applies only to rescission claims, and not to damages claims. Indeed, we note that in *Guise,* the TILA damages claims remained in the case. Given this Court's recommendation that the district judge in this case deny certification on the plaintiffs's rescission claims, the .05 percent tolerance defense has no bearing on this motion.

**\*8** *Second,* we note that, even if this defense could apply to damages claims, defendants have offered no

evidence that this defense would apply to the claims of the named plaintiffs or to those of any putative class members. Defendants have not shown that, if the TILA disclosures were incorrect, they were understated or overstated by .05 percent or less.

We therefore find the commonality questions in Rule 23(a)(2) (as well as the predominance questions in Rule 23(b)(3)) satisfied. The trial judge has the authority to decide whether individual determinations will need to be made at any point; any such individual issues do not defeat certification of a class in this case, since a class is the most efficient way to resolve the questions common to all plaintiffs. *See* <u>Romasanta v. United Airlines, Inc.,</u> 537 F.2d 915 (7th Cir.1976).

2.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are the same legal theory." <u>De La Fuente v. Stokely-Van Camp, Inc.,</u> 713 F.2d 225, 232 (7th Cir.1983) (internal quotations omitted). Therefore, the typicality prong "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of the other class members." *Id.* The key to typicality is based on the relationship between the class representative and the class members: that is, whether the named plaintiff's interests aligned with those of the proposed class in such a way that the representative, in pursuing his own claims, will also advance the interests of the class. <u>Guillory v. American Tobacco Co.,</u> No. 97 C 8641, 2001 WL 290603, \*3 (N.D.Ill. March 20, 2001). Generally, when the commonality prong is satisfied under Rule 23(a)(2), the typicality prong of Rule 23(a)(3) follows suit.

We find that the typicality prong has been satisfied by the plaintiffs in this case. The plaintiffs contend that the formula for determining whether each proposed class member is entitled to damages under both TILA and ICFA is typical for all plaintiffs because this formula drives off of the common fact, typical to all plaintiffs, of the alleged false disclosure regarding title insurance charges. In other words, without a false disclosure, the entire case collapses.

The defendants make two arguments to defeat typicality: (1) that the putative class members are subject to one or more unique defenses; and (2) that putative class members who closed their loans more

Slip Copy                                                                                                    Page 7
2005 WL 1323364 (N.D.Ill.)
**(Cite as: 2005 WL 1323364 (N.D.Ill.))**

than a year before filing would not have a TILA damages claim, while those putative class members who did borrow within one year of filing would have one. We find neither argument persuasive.

As to the first point, the only "unique defense" defendants offer is that all putative class members signed the same "Controlled Business Arrangement Disclosure Statement" which disclosed that borrowers could go elsewhere for title insurance, and might get better rates elsewhere (Defs.' Mem. at 14). But, we fail to see how that fact bears on the typicality question: it has nothing to do with whether the standard practice of charging a flat fee for title insurance that exceeded by more than two times the actual title charges paid by Clearwater resulted in an unreasonable title insurance charge to homeowners that in turn resulted in inaccurate TILA disclosures and violations of the ICFA. Moreover, defendants offer no explanation of how the information in the Controlled Business Arrangement Disclosure Statement would provide a defense to TILA or ICFA liability or damages. [FN2]

> FN2. Defendants conclusorily argue that this information "will plainly constitute a defense to rescission" (Defs. Mem. at 14). In light of our conclusion that class certification on the rescission claim is unavailable for separate reasons, we express no view as to this undeveloped argument.

**\*9** As to the second point, that some putative class members would be ineligible for TILA damages because their loans closed prior to suit, we note that plaintiffs' prayer for relief under Count I of both complaints seeks "statutory damages for all persons whose loans were closed within one year prior to the filing of this action." Moreover, this limitation does not apply to the class claims for damages under the ICFA. In any event, the existence of individual damages issues will not generally preclude certification, _Carnegie v. Household Int'l, Inc.,_ 376 F.3d 656, 660-661 (7th Cir.2004), and we see no reason why it would do so here.

                           C.
We now consider the question of whether plaintiffs have met the requirements of Rule 23(b). The named plaintiffs in both the _Murry_ and _Greenleaf_ proposed classes seek certification under Rule 23(b)(3).

Rule 23(b)(3) permits class certification when "the court finds that the questions of law or fact common to the members of the class predominate over any

questions affection only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This rule requires two findings: predominance of common questions over individual ones, and superiority of the class action mechanism. On the issue of whether a class action is superior to other available methods of adjudication, the Court considers the following factors: (a) the interest of the members in the class individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (d) the difficulties likely to be encountered in the management of a class action. _See, e.g., Rahim v. Sheahan,_ No. 99 C 0395, 2001 WL 1263493, at \*15 (N.D.Ill. Oct.19, 2001).

Defendants do not--and cannot--argue that any of the first three factors weighs against certification. There is no suggestion here that mentions putative class members who have an interest in individually controlling the case, or that there is other commenced litigation that weighs against certification. Indeed, defendants do not contest plaintiffs' assertion that most of the putative class members "are undoubtedly unaware that their rights [allegedly] are being violated" (Pls.' Mem. at 15; Pls.' Reply Mem. at 12). Nor do defendants suggest any reason why it is not desirable to concentrate plaintiffs' claims in one court.

Instead, defendants focus their fire on what they claim will be the difficulties encountered in managing this case as a class action. Defendants begin by asserting that plaintiffs have failed to submit a trial plan "that demonstrates how the class action may be tried in a way that is both manageable and not volatile of defendants' due process and Seventh Amendment rights" (Defs.' Mem. at 15). The defendants then spend the next seven pages of their response brief arguing the merits of the liability case alleged against them. In arguing that plaintiffs' claim lacks merit, defendants misconceive the Court's role in reviewing the merits in the class certification context. As we explained above, we view the merits not to determine who will win the case, but to determine if the case is suitable for class treatment.

**\*10** After considering all the arguments and authorities, we find that any difficulties in managing the purported classes is outweighed by the benefits of addressing the standard practice challenged here in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

one forum. All the participants in this process share in these benefits: if plaintiffs have a meritorious claim, then they will receive a recovery collectively that they may or may not have been able to achieve individually; if defendants show they are not liable, then they will achieve a far broader preclusive effect from that victory than they would derive from a victory in an individual action; and the judicial system will avoid the unnecessary expenditure of resources for the potentiality of multiple, repetitive and individual claims.

For these reasons, the Court respectfully recommends that the district court certify the proposed *Murry* and *Greenleaf* classes under Rule 23(b)(3) for purposes of liability, damages, costs and fees.

## IV.

Having found the requirements for class certification satisfied under Rule 23(a) and (b)(3) for purposes of liability and statutory damages, we now turn to plaintiffs' request for class certification on their rescission claim. In *Murry*, plaintiffs seek--in addition to damages, costs and fees--unspecified injunctive relief and "a declaration that any class member who so desires may rescind their transactions" (Th. Am. Compl., at 12). In *Greenleaf*, plaintiffs seek a "declaration that any class member who so desires may rescind their transaction against all defendants," as well as injunctive relief and a "judgment declaring what obligation, if any, plaintiff has toward defendants" (Am. Compl., at 12-13).

This Court respectfully recommends that the district judge deny the plaintiffs' request to certify a class with the stated aim to obtain a declaration that they have a right to rescind their transaction with defendants. Our reasons for this recommendation are as follows.

Although the case law on the issue of whether a court should certify a class seeking rescission is split, both inside and outside this district, we agree with the general rationale of the line of cases represented by the decisions in *James v. Home Constr. Co. of Mobile, Inc.*, 621 F.2d 727, 731 (5th Cir.1980), *Gibbons v. Interbank Funding Group*, 208 F.R.D. 278, 285-86 (N.D.Cal.2002), and *Jefferson v. Security Pac. Fin. Serv., Inc.*, 161 F.R.D. 63, 69 (N.D.Ill.1995), which have rejected efforts to obtain class certification of claims for rescission under TILA. In *Jefferson*, the district court gave two reasons for this conclusion that we find particularly helpful.

*First,*

"Section 1635(b), which governs rescission claims brought under TILA, does not expressly provide for class actions. Conversely, Section 1640, which governs damages, was amended in 1970 to expressly include class actions and to impose a cap on individual and class action damages. Act of October 28, 1974, Pub.L. 93-495, 88 Stat. 1500 (amending TILA Section 1640(a)(2)(B)). [ ... ] Congress' failure to amend Section 1635(b) in 1974 evidences a Congressional intent to treat rescission as a purely personal remedy, which is not subject to class action. [Also], when Congress did amend Section 1635 in 1980, the amendment gave courts equitable authority to tailor the rescission steps to meet the needs of each borrower and creditor. [Thus], the 1980 amendment [is][an] indication that rescission is a personal, rather than a class, remedy."

**\*11** *Jefferson,* 161 F.R.D. at 68 (internal quotations omitted). *Second,*

the purpose of the rescission remedy is to restore the parties, as much as possible, to the status quo ante. This purpose would be undone by allowing a class of plaintiffs to rescind their agreements against an individual defendant when the cost of recovery would exceed the harm done by the technical violation.

*Id.* at 69. To this reasoning, we add the following observation.

Rescission is an equitable remedy. *Walker v. Gateway Fin. Corp.*, 286 F.Supp.2d 1965, 968 (N.D.Ill.2003). In certain instances, claims for equitable relief may be suitable for class treatment. Indeed, Rule 23(b)(2) expressly provides for class treatment where the conduct of the opposing party makes "appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

But, that is not the case here: we note that plaintiffs seeks certification under Rule 23(b)(3) and not Rule 23(b)(2). There is no claim here that any of the putative class members made a claim for rescission within three days of closing, as permitted by 15 U.S.C. § 1635(a). When such a claim is made, Section 1635(b) requires the lender to grant the request--irrespective of whether there has been any TILA disclosure violation. This case does not present a claim that any defendant had a standard practice of improperly denying the putative class members the "automatic recision" rights they have under Section 1635(a), in violation of Section 1635(b).

Slip Copy                                                                                                           Page 9
2005 WL 1323364 (N.D.Ill.)
**(Cite as: 2005 WL 1323364 (N.D.Ill.))**

Rather, plaintiffs seek rescission on a different ground: as an equitable remedy for alleged TILA disclosure violations. In order to determine whether that equitable relief is appropriate, the presiding judge would be required to consider the particular circumstances of each putative class member's loan transaction. One consideration would be, as the *Jefferson* court observed, whether the remedy of rescission would be disproportionate to the violation. Another consideration would be subsequent assignments of the loan from the original lender to others: a court acting in equity would certainly pause before unwinding a loan if it had been transferred to subsequent assignees who took without knowledge of the alleged TILA violations. There likely would be other considerations that likewise could not be determined on a class-wide basis, but that instead would have to be assessed on a case-by-case basis. This consideration, along with the others identified above, persuades the Court that class certification of the rescission claims should be denied for failure to satisfy the requirements of Rules 23(a)(2) and (3) and Rule 23(b)(3). [FN3]

> FN3. These considerations apply as well to plaintiffs' request for certification of a class for recissionary relief on their ICFA claim.

In reaching this conclusion, we reject the line of cases cited by defendants, including one from this district, which hold or suggest in dicta that certification of a class seeking rescission is appropriate. *See, e.g., Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 435-36 (E.D.Pa.1998)(distinguishing but not rejecting *James* and *Jefferson* ); *McIntosh v. Irwin Unino Bank and Trust Co.,* 215 F.R.D. 26, 32-36 (D.Mass.2003); *Latham v. Residential Loan Ctrs. of Am., Inc.,* No. 03 C 7094, 2004 WL 1093315 (N.D.Ill. May 4, 2004) (in decision denying motion to dismiss TILA class claim seeking rescission, court followed *Williams* and *McIntosh* and rejected *James* and *Jefferson* ) (Pls.' Mem. at 8). We note the case law suggesting that there may be a distinction to be drawn between a declaration authorizing class-wide rescission, and a declaration that individuals within the class may later seek rescission on a continuing basis, *Williams,* 183 F.R.D. at 435 (drawing distinction between declaration authorizing rescission and order enforcing rescission rights on class wide basis), as well as those that reject that distinction. *Gibbons,* 208 F.R.D. at 285-86 (agreeing with the rationale of *Jefferson* and specifically rejecting *Williams*--finding no meaningful distinction between a declaration

authorizing a right to seek rescission and an order enforcing rescission rights). However, we need not delve into this issue, as plaintiffs' complaints here seek orders or declarations of rescission, a request we believe is not amenable to class treatment.

*CONCLUSION*

**\*12** The Court therefore recommends that the district judge grant the plaintiffs' motion for class certification in part and deny it in part (doc. # 113). We recommend certification of the proposed *Murry* and *Greenleaf* classes for liability and damages only, under TILA, 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. part 226, as well as ICFA, 815 ILCS § 505/2 (as it relates to the HRLA, 815 ILCS § 137/10). However, we recommend that the district judge deny that portion of the motion seeking certification of these classes for purposes of declaratory relief regarding rescission rights, if any.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed.R.Civ.P. 72(b). Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *See Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir.1986).

2005 WL 1323364 (N.D.Ill.)

### Motions, Pleadings and Filings (Back to top)

• 1:03CV06186 (Docket) (Sep. 03, 2003)

• 1:03CV05811 (Docket) (Aug. 19, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.