UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RALPH G. MCKENNA, | ) | |
| GLENROY A. DEANE, | ) | |
| ILENE WILGOREN-DEANE, | ) | |
| and LAURA A. LILLIE, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| v. | ) | NO. 04-10370-RCL |
| | ) | |
| FIRST HORIZON HOME LOAN | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION ON
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

November 10, 2005

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiffs Ralph G. McKenna, Glenroy A. Deane, Ilene Wilgoren-Deane, Christopher J. Lillie and Laurie A. Lillie have brought this action against defendant First Horizon Home Loan Corporation ("First Horizon") for alleged violations of the Federal Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"), the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D ("CCCDA"), and the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A.  The plaintiffs claim that First Horizon violated these statutes by issuing confusing and legally defective notices to customers regarding the right to rescind their mortgage loans.  Presently before the court is the motion of plaintiffs Ralph McKenna ("McKenna") and Laurie Lillie

("Lillie") for class certification ("Motion") (Docket No. 19).  By their Motion, McKenna

and Lillie are seeking certification, pursuant to Fed. R. Civ. P. 23(b)(3), of a class

consisting of "(a) all natural persons (b) who obtained non-purchase money loans that

were secured by their Massachusetts residences, (c) on or after April 1, 2003, (d) for

purposes other than the initial construction or acquisition of those residences, (e) where

the person received a [Notice of Right to Cancel] in the form represented by Exhibit D"

to the Amended Complaint.[1]  (Motion at 1).  The relief sought for this proposed class is a

"declaration that any class member who so desires may rescind their transaction" along

with "[s]tatutory damages for all persons who rescind" and attorneys' fees, expenses and

costs.  (Amended Complaint ("Compl.") (Docket No. 2) at prayers for relief following

¶¶ 41-51).

     The issue presented by this case, namely whether a class action is appropriate in

an equitable action seeking a declaration of the right to rescind, has divided the courts.

As set forth in detail below, this court finds persuasive those cases in which courts have

allowed such class actions to proceed against the lender, where the plaintiffs otherwise

have satisfied their burden of establishing that class certification is appropriate under Fed.

R. Civ. P. 23.  However, this court also finds that the proposed class is much too broad in

that it includes persons for whom the challenged notice admittedly is not inaccurate, as

---

[1]  The plaintiffs have limited their class claims to Massachusetts residents and have waived their request for a broader class which included all borrowers.  (See Plaintiffs' Reply Memorandum ("Pls.' Reply") (Docket No. 29) at 1).

well as those who are not entitled to rescission as a matter of law.  Consequently, this

court recommends to the District Judge to whom this case is assigned that the plaintiffs'

Motion for Class Certification be ALLOWED IN PART and DENIED IN PART, and that

the following class be certified:

> All natural persons who obtained non-purchase money loans from
> First Horizon Home Loan Corporation on or after April 1, 2003 and
> who received a Notice of Right to Cancel in the form represented by
> Exhibit D to the Amended Complaint where: (1) the loans were
> secured by the borrower's Massachusetts residence; (2) the loan was
> for purposes other than the initial construction or acquisition of the
> residence; and (3) all or part of the loan proceeds were used to
> refinance a loan made by someone other than First Horizon Home
> Loan Corporation, which prior loan was secured by an interest in the
> Massachusetts residence.

> The class shall not include any person whose legal right to rescind
> has been extinguished for any reason, including by written waiver of
> the right to rescind, the sale or transfer of all ownership interests in
> the property that served as security for the loan transaction, or by
> foreclosure, personal bankruptcy, or other loan workout settlement.

> The declaratory judgment sought shall be a "declaration that any
> class member who so desires may seek to rescind their transaction."

## II.  FACTUAL BACKGROUND

The following facts are relevant to McKenna's and Lillie's motion for class

certification.[2]  On June 25, 2003, plaintiff McKenna received a $244,600 mortgage loan

from First Horizon.  (Compl. ¶ 7).  The loan was secured by McKenna's home in

---

[2]  Since Glenroy A. Deane and Ilene Wilgoren-Deane are suing individually, and do not
seek to bring their claims on behalf of a class, the facts relating to their loans will not be
discussed.  (See Compl. ¶ 48).

Braintree, Massachusetts. (Id. ¶ 10, Ex. B). McKenna obtained the loan for personal, family or household purposes, including to pay most of a prior mortgage loan from another lender. (Id. ¶¶ 8, 9). One of the documents that McKenna received from First Horizon in connection with the June 25 transaction was a Notice of Right to Cancel advising McKenna of his rescission rights under TILA. (Id. ¶ 10, Ex. D).

Similarly, on August 27, 2003, Lillie, along with plaintiff Christopher J. Lillie, obtained a $112,500 mortgage loan from First Horizon that was secured by the Lillies' home in Pittsfield, Massachusetts.[3] (Id. ¶ 23, Ex. J). Like McKenna, the Lillies obtained the loan for personal, family or household purposes, and used most of the loan to pay off a prior mortgage loan from another lender. (Id. ¶¶ 24, 25). Among the documents that First Horizon furnished to the Lillies in connection with their loan was a Notice of Right to Cancel advising the Lillies of their right to rescind the transaction under TILA. (Id. ¶ 26, Ex. L). This form was substantially similar to the one given to McKenna.

The Federal Reserve Board, as part of the regulations implementing TILA, has prepared model forms providing notice of the right to rescind. See 12 C.F.R. § 226, Appendix H. There are two proposed forms, one which involves refinancing with a new lender (Form H-8) and one which involves refinancing with the same creditor who issued the original loan (Form H-9). Pursuant to the federal regulations implementing TILA and

---

[3] On August 27, 2003, the Lillies also obtained a $9,600 home equity line from First Horizon. (Compl. ¶ 23). The equity line is not relevant to this case. (See Plaintiffs' Memorandum in Support of Their Motion for Class Certification ("Pls.' Mem.") (Docket No. 20) at 2 n.1).

the Massachusetts regulations implementing the CCCDA, a creditor is not required to use

the Federal Reserve Board's model forms as long as the creditor provides a notice of the

right to rescind that is "substantially similar" to the Board's forms.  12 C.F.R. §

226.23(4)(b)(2); 209 C.M.R. § 32.23(2)(b).  First Horizon did not use the Federal

Reserve Board's model form, but instead provided McKenna and the Lillies with its own

form of notice.  (Compl. ¶¶ 11-14).  This form, Exhibit D to the Amended Complaint,

was created after plaintiffs' counsel complained to First Horizon about an earlier version

of the document.  (See Defendant's Opposition to Plaintiffs' Motion for Class

Certification ("Def.'s Opp.") (Docket No. 27) at 3).  Plaintiffs contend that this new

version is confusing as well.

## The Challenged Provision

Federal Reserve Board Form H-8 is meant for consumers who are entering into

loan transactions with a different lender than the one that financed a previous loan

secured by the borrower's home.  12 C.F.R. § 226, Appendix H.  That form provides in

relevant part as follows:

> Notice of Right to Cancel
>
> Your Right to Cancel
>
> You are entering into a transaction that will result in a (mortgage /lien/security interest) (on/in) your home.  You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:
>
> (1)    the date of the transaction ...; or
> (2)    the date you received your Truth in Lending disclosures; or

(3)     the date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage /lien/security interest) is also cancelled.  Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage /lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

Federal Reserve Board Form H-9 is intended for consumers who are entering into loan transactions with the same creditor who financed the borrower's prior mortgage loan.  Id.  That form provides in relevant part as follows:

Notice of Right to Cancel

Your Right to Cancel

You are entering into a new transaction to increase the amount of credit previously provided to you.  Your home is the security for this new transaction.  You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last:

(1)     the date of this new transaction...; or
(2)     the date you received your new Truth in Lending disclosures; or
(3)     the date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe.  Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation

-6-

> of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

> You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address below.

> If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

Plaintiffs challenge First Horizon's notice. The notice applies both to transactions in which First Horizon is refinancing a prior loan from a different lender as well as to transactions in which First Horizon is refinancing a prior loan that First Horizon made to the borrower. (Compl. ¶¶ 11, 14). The First Horizon notice states in relevant part:

> You are entering into a transaction that will result in a mortgage /deed of trust on your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occur last: (1) the date of the transaction, which is [date]; or (2) the date you received your Truth-in-Lending disclosures; or (3) the date which you received this notice of your right to cancel.

> If you cancel the transaction, the mortgage/deed of trust is also canceled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage /deed of trust on your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

> For new transactions involving us, if you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit. It will not affect the amount that you presently owe or the mortgage lien, or security interest we already have on your home. If you cancel[,] the mortgage, lien, or security interest as it applies to the increased amount is also canceled. Within 20 calendar days after we receive your notice of cancellation of the new transaction, we must take the steps necessary to reflect the fact that the mortgage,

-7-

> lien, or security interest on your home no longer applies to the
> increase of credit. We must also return any money you have given
> to us or anyone else in connection with this transaction.

(Id., Exs. D and L, emphasis added).

According to the plaintiffs, First Horizon's notice is legally defective under the disclosure provisions of TILA and the CCCDA[4] because "there is no explanation of what a 'new transaction involving us' might be. The limited right to rescind, applicable to the additional amount of the loan, applies where a loan issued by creditor A is refinanced by creditor A. This distinction is not apparent on First Horizon's form." (Motion ¶ 9). Thus, according to the plaintiffs, the parties harmed are those who were refinancing loans originally made by another lender. (Motion ¶ 14; Compl. ¶¶ 38, 51 (common question is whether First Horizon used the challenged form "in connection with the refinancing of loans made by someone else" and "[w]hether doing so violates TILA")).

---

[4] TILA § 1635(a) entitled "Disclosure of obligor's right to rescind," provides: "[e]xcept as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the [Federal Reserve] Board, of his intention to do so. *The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.*" 15 U.S.C. § 1635(a) (emphasis added). The Massachusetts CCCDA contains nearly identical language. See Mass. Gen. Laws ch. 140D, § 10(a).

-8-

The named plaintiffs have notified First Horizon of their wish to rescind their loans. (Compl. ¶ 30). As noted above, the relief sought for the proposed class members includes a "declaration that any class member who so desires may rescind the transaction." In connection with a rescission action, First Horizon would be obligated to refund all finance charges paid, including interest and certain closing costs, statutory damages of up to $2,000 per violation, recovery of costs and an award of attorney's fees. 15 U.S.C. §§ 1635, 1640. (Def.'s Opp. (Docket No. 27) at 19 n.17). First Horizon estimates that the named plaintiffs could be entitled to recover between $15,000 and $25,000, plus attorney's fees, if they were to rescind their loans. (Def.'s Opp. at 19; Declaration of Edward Hyne (Docket No. 27) at ¶¶ 4-5). First Horizon also estimates that between April 2003 and February 2004 (when use of the form ceased), it provided loans in the principal amount of more than $1.7 billion involving 8,908 transactions of Massachusetts properties. (Declaration of Jose Iglesias (Docket No. 27) at ¶ 4). Assuming all these borrowers were eligible to and elected to rescind their loans, First Horizon could be liable for approximately $190 million. (Id. at ¶ 10; Def.'s Opp. at 13 and n.13).

Additional facts will be provided below where appropriate.

## III. ANALYSIS

### A. Standard of Review

#### 1. Class Actions

Class certification is governed by Fed. R. Civ. P. 23. "To obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)." Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). Pursuant to Rule 23(a), the plaintiffs must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If the plaintiffs are able to meet these prerequisites to class certification, they still must satisfy one of the requirements of Rule 23(b). Here, McKenna and Lillie seek class action status pursuant to Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Matters relevant to the court's analysis of the predominance and superiority requirements include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability

-10-

> or undesirability of concentrating the litigation of the claims in a
> particular forum; (D) the difficulties likely to be encountered in the
> management of a class action.

Id. This list of factors is "nonexhaustive." Amchem Prods., Inc. v. Windsor, 521 U.S.

591, 615, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689 (1997).

Although the district court's decision on certification is discretionary, the "court

must conduct a rigorous analysis of the prerequisites established by Rule 23 before

certifying a class." Smilow, 323 F.3d at 38. In doing so, the court may find it "necessary

to probe behind the pleadings before coming to rest on the certification question." Gen.

Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d

740 (1982). Thus, in evaluating the plaintiffs' motion to allow the case to proceed as a

class action, the court may assess "the allegations in the complaint in light of the entire

record presented . . . on the motion for class certification." Swack v. Credit Suisse First

Boston, 230 F.R.D. 250, 257 (D. Mass. 2005).

### 2. Law Governing Rescission Action

The plaintiffs are seeking a declaration that class members have the right to

rescind their loans. Initially, the plaintiffs sought this relief under TILA and the CCCDA,

both of which allow for rescission where a borrower "whose loan is secured by his

principal dwelling . . . has been denied the requisite disclosures. . . ." Fidler v. Central

Coop. Bank, 226 B.R. 734, 736 (D. Mass. 1998) (citing 15 U.S.C. § 1635, Mass. Gen.

Laws ch. 140D, § 10). However, at oral argument the parties agreed, correctly, that

because the plaintiffs are seeking certification of a class of Massachusetts borrowers

whose loan transactions were secured by their Massachusetts residences, the CCCDA and not TILA, governs the proposed class members' rescission claims. See id. (credit transactions within Massachusetts that are subject to the CCCDA are exempted from various provisions of TILA, including § 1635 regarding the right to rescind). Accord Desrosiers v. Transamerica Fin. Corp., 212 B.R. 716, 722 n.6 (D. Mass. 1997) ("a Massachusetts resident can bring a claim for damages under § 1640 of TILA, but cannot rescind a credit transaction under § 1635 of that statute; he or she can pursue that remedy only under CCCDA."); Belini v. Washington Mutual Bank, Nos. 04-2532, 04-2533, 2005 U.S. App. Lexis 11256, at *25-26 (1st Cir., June 15, 2005) (because of the Massachusetts exemption, disclosure requirements and mechanics of rescission governed by state law, not TILA).

The Massachusetts courts have not directly addressed whether class certification is appropriate where the proposed class members are seeking declaratory rescission relief under the CCCDA. "Because TILA was the model on which CCCDA was based, federal court decisions construing TILA are instructive in construing parallel provisions of CCCDA." Fidler, 226 B.R. at 726. See also Desrosiers, 212 B.R. at 722 ("Because the provisions of CCCDA parallel those of TILA, CCCDA should be construed in accordance with federal law" (internal quotations and citation omitted)); Mayo v. Key Fin. Servs., Inc., 424 Mass. 862, 864, 678 N.E.2d 1311, 1313 (1997) (since Mass. Gen. Laws ch. 140D was "closely modeled" on TILA, "Federal court decisions are instructive in construing [the] parallel State statutes and State regulations."). The relevant provisions

of CCCDA § 10 regarding the right to rescind closely parallel the federal counterpart,

TILA § 1635.  Compare Mass. Gen. Laws ch. 140D, § 10 with 15 U.S.C. § 1635.

Therefore, it is appropriate for this court, in evaluating whether to certify the proposed

class in this matter, to rely on federal case law addressing the certification issues under

TILA.

      **B.**      **Availability of Class Action Relief**

      First Horizon's threshold argument which must be addressed is that a class action

is not available to the plaintiffs because they are seeking the right to rescind.  As First

Horizon argues:

> TILA does not allow certification of a class action for rescission.
> Rescission under TILA is a highly individualized, purely personal
> remedy, which, like common law rescission, is intended to restore
> parties to the *status quo ante*.  For that reason, and because TILA
> allows for class actions for damages but not for rescission, the
> weight of authority holds that rescission classes should not be
> certified.  Contrary authority, including in this District, is wrongly
> decided and distinguishable.

(Def.'s Opp. (Docket No. 27) at 2).  This court disagrees and concludes that the mere fact

that a declaration regarding rescission rights is being sought does not preclude the

certification of a class as a matter of law.

      "The availability of the class action mechanism under TILA is a matter of debate."

Williams v. Empire Funding Corp., 183 F.R.D. 428, 435 (E.D. Pa. 1998).  The First

Circuit has not addressed the appropriateness of class actions seeking either actual

rescission or a declaratory judgment that the class members are entitled to rescission

-13-

under TILA. There is a line of federal cases which find that Congress did not intend to allow class-wide rescission actions under TILA. <u>See</u>, <u>e.g.</u>, <u>James v. Home Constr. Co. of Mobile, Inc.</u>, 621 F.2d 727, 730 (5th Cir. 1980); <u>Murry v. America's Mortgage Banc, Inc.</u>, Nos. 03 C 5811, 03 C 6186, 2005 WL 1323364 *10-11 (N.D. Ill. May 5, 2005); <u>Gibbons v. Interbank Funding Group</u>, 208 F.R.D. 278, 285-86 (N.D. Cal. 2002); <u>Jefferson v. Sec. Pac. Fin. Servs.</u>, 161 F.R.D. 63, 68-69 (N.D. Ill. 1995). These decisions are based primarily on the fact that § 1635(b), which governs rescission claims, does not expressly provide for class actions while § 1640, which governs damages claims, was amended in 1970 to expressly allow for class actions and to cap damage recovery. <u>See</u> <u>Jefferson</u>, 161 F.R.D. at 68. While § 1635 was subsequently amended, it did not add a reference to class actions. <u>Id.</u> Furthermore, these courts find that rescission is an individual remedy which is designed to restore the status quo ante. According to these courts, "[t]his purpose "would be undone by allowing a class of plaintiffs to rescind their agreements against an individual defendant when the cost of recovery would exceed the harm done by the technical violation." <u>Id.</u> at 69. <u>See</u> <u>also</u> <u>James</u>, 621 F.2d at 730-31. This would, in effect, "turn Section 1635(b) into a penal provision." <u>Id.</u> <u>See</u> <u>also</u> <u>Gibbons</u>, 208 F.R.D. at 286. Finally, courts denying rescission class certification under TILA have questioned whether the proposed class members have standing if they have not previously demanded rescission. <u>See</u> <u>Gibbons</u>, 208 F.R.D. at 285 ("Without any rescission requests, nor subsequent denials by defendants, it is not at all clear that a justiciable controversy exists between the class and defendants."); <u>Jefferson</u>, 161 F.R.D. at 69 (lack of

-14-

allegations "that the purported class members have gone through the steps of rescission with [the creditor or] have requested or even desire rescission . . . indicates that the purported class members lack standing.").

These arguments have been rejected by a second line of cases, including two recent cases in this district, where the courts have certified class actions or determined that class status is appropriate in cases in which the plaintiffs were seeking a declaration of the right to rescind under TILA. See, e.g., Rodrigues v. Members Mortgage Co., Inc., 226 F.R.D. 147, 153 (D. Mass. 2005); Latham v. Residential Loan Ctrs. of America, Inc., No. 03 C 7094, 2004 WL 1093315 *3 (N.D. Ill. May 6, 2004); McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 33 (D. Mass. 2003); Williams v. Empire Funding Corp., 183 F.R.D. 428, 435-36 (E.D. Pa. 1998). This court finds this second line of cases persuasive.

As an initial matter, "there is nothing in the language of TILA which precludes the use of the class action mechanism provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission." Rodrigues, 226 F.R.D. at 153 (quoting Williams, 183 F.R.D. at 436). This court does not find it significant that Congress expressly referred to class actions in connection with setting a damages cap, but did not make a comparable amendment to the rescission statute. It is just as likely that Congress did not intend to in any way limit rescission claims which are designed to put

the consumer back in the same position as before the inaccurate information was provided.

Similarly, this court is not persuaded that by allowing class actions seeking a declaration that consumers have the right to seek rescission improperly converts § 1635 into a penal provision. First of all, as Judge Young held in <u>McIntosh</u>, "[t]o achieve its remedial purpose, TILA *is* penal in nature and builds in incentives for litigation to protect classes of plaintiffs who, individually injured, would never sue to recover modest damages." <u>McIntosh</u>, 215 F.R.D. at 33 (emphasis in original). Moreover, in view of the fact that the class has been limited to only those who were potentially injured, and the fact that the class plaintiffs are only seeking declaratory relief, this court does not find the defendant's fear of a catastrophic penalty to be persuasive. <u>See id.</u> As the <u>Williams</u> court held:

> Plaintiffs only seek a declaration that the notices of rescission ... violate TILA, and thus that each member of the class is entitled to seek rescission. Should the Court declare that, indeed, plaintiffs are entitled to seek rescission because of certain infirmities in the TILA disclosure documents, then each class member, individually, and not as a member of the class, would have the option to exercise his or her right to seek rescission. As to any member of the class who triggered the statutory right to rescission, the defendants would have, in turn, the opportunity to exercise their rights to cure under TILA.

<u>Williams</u>, 183 F.R.D. at 435-36. <u>Accord</u> <u>McIntosh</u>, 215 F.R.D. at 33; <u>Latham</u>, 2004 WL 1093315, at *3; <u>Rodrigues</u>, 226 F.R.D. at 136. <u>But see</u> <u>Gibbons</u>, 208 F.R.D. at 285 (rejecting distinction between class action suit seeking rescission and one seeking declaration of right to rescind).

-16-

Finally, this court does not agree that the potential class members lack standing to maintain an action if they did not previously request rescission. The Supreme Court has long recognized that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . ." Havens Realty Corp. v. Coleman, 455 U.S. 363, 373, 102 S. Ct. 1114, 1121, 71 L. Ed. 2d 214 (1982) (punctuation in original) (quotations and citations omitted). Section 10 of the CCCDA establishes an enforceable right to the clear and conspicuous disclosure of the right to rescind. See White v. Arlen Realty & Dev. Corp., 540 F.2d 645, 649 (4th Cir. 1975) (Congress, in the disclosure requirements of TILA, "gave the debtor a right to specific information and therefore defined 'injury in fact' as the failure to disclose such information."). Therefore, the proposed class members who received the allegedly unlawful notice have standing to sue for improper disclosure under the CCCDA.[5] In any event, "the filing of the complaint constitutes statutory notice of rescission" pursuant to TILA and the CCCDA. Taylor v. Domestic Remodeling, Inc., 97 F.3d 96, 100 (5th Cir. 1996); McIntosh, 215 F.R.D. at 32, and cases cited.

---

[5] The case of Highsmith v. Chrysler Credit Corp., 18 F.3d 434 (7th Cir. 1994), on which First Horizon relies to argue against standing, in fact supports standing in this case. In Highsmith, the court determined that under the Consumer Leasing Act, the failure to disclose any portion of the formula that a lessor uses to calculate an early termination charge will give rise to a technical violation of the statute's disclosure provision. 18 F.3d at 439. Consequently, by claiming that the lessor did not disclose an unearned finance charge reduction as part of its formula, the plaintiff was able to state a claim for relief. Id.

-17-

For these reasons, a class action seeking a declaration of rights to rescind is not precluded as a matter of law. Consequently, this analysis will now turn to the requirements of Rule 23.

### C.    Application of Rule 23 to the Record

#### 1.    Rule 23 (b)(3)

First Horizon's principal arguments against class certification relate to the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3), so these elements will be addressed first.

#### Predominance

The plaintiffs are challenging the language of a form document, and assert that First Horizon violated the CCCDA because its Notice of Right to Cancel contained confusing language regarding the scope of the plaintiffs' rescission rights. The language appears on the face of the Notice. The fundamental issues in this case include whether First Horizon had a standard practice of using the challenged form to refinance loans made by another lender and whether the description in the form "clearly and conspicuously" discloses the borrower's rescission rights, as required by the CCCDA. Thus, "[t]he common factual basis is found in the terms of the [Notice], which are identical for all class members." Smilow, 323 F.3d at 39. Similarly, the common questions of law include whether the Notice was misleading and violates the CCCDA. Under such circumstances, common issues predominate and the plaintiffs have satisfied

-18-

this prong of Rule 23(b)(3).  See also Rodrigues, 226 F.R.D. at 153 (plaintiffs' claim that notice of right to cancel misstated the scope of the plaintiffs' rescission rights satisfied the predominance requirement of Rule 23).

First Horizon argues that the predominance requirement cannot be met because the determination as to whether the Notice of Right to Cancel was clear and conspicuous under the CCCDA necessitates "close scrutiny of the totality of the circumstances in each transaction" to determine whether the individual class members were in fact confused by the Notice.  (Def.'s Mem. (Docket No. 27) at 15-16).  First Horizon also argues that its defenses to individual claims, such as defenses that certain borrowers have paid off their loans, have waived their rescission rights, or have sold or transferred all ownership interests in the property that serves as security for the transaction, will require an evaluation of the particular circumstances of each loan transaction.  (See id. at 16-17).

It is not clear whether the events surrounding the circumstances of each closing where the Notice was signed will be relevant to the instant litigation.  It has been held that "[a]n objective standard is used to determine violations of the TILA, based on the representations contained in the relevant disclosure documents; it is unnecessary to inquire as to the subjective deception or misunderstanding of particular consumers." Zamarippa v. Cy's Car Sales, Inc., 674 F.2d 877, 879 (11th Cir. 1982).  That is because the court "cannot allow" lenders "to evade the requirements of the TILA . . . on the fortuity that some consumers are better able to evaluate the information than others."  Id. (fact that consumers did not read, speak or understand English did not protect seller who

provided inadequate disclosure statements).  See also Smilow, 323 F.3d at 39 n.7

(defendants "wisely withdrew the argument that oral representations made by sales

representatives to potential customers would vary the contract terms by customer and so

defeat commonality" where contract contained integration clause).[6]  However, assuming,

arguendo, that the specific circumstances are relevant, class-wide treatment is still

warranted.  There is, at minimum, a common legal question which would warrant class

certification — namely, "whether the subjective understanding of the borrowers with

respect to their rights negates a prima facie TILA violation."  Rodrigues, 226 F.R.D. at

152.

        The plaintiffs have alleged, and asserted as a common question of fact, that First

Horizon had a standard closing practice using the challenged form in connection with the

refinancing of mortgage loans which had been made by a different lender.  (Compl. ¶¶ 38,

51).  If First Horizon demonstrates that this was not its practice, and that the individual

circumstances are relevant, it may then move to decertify the class.  Rodrigues, 226

F.R.D. at 152.  But see Smilow, 323 F.3d at 39-40 (fact that, as defendant contends, it

_____

        [6]  At oral argument, First Horizon relied on the case of Mechanics Nat'l Bank of
Worcester v. Killeen, 377 Mass. 100, 384 N.E.2d 1231 (1979) to support its argument that the
borrower's subjective understanding of the creditor's notice is relevant to determine whether the
notice violated the CCCDA.  In Mechanics, the court found that the absence of a bank's name
from one form, as required by law, was "insignificant and unintended" and did not allow for
penalties based on a failure to disclose information since the information had otherwise been
disclosed.  384 N.E.2d at 1238.  The case does not address the situation where the consumer's
fundamental right to rescind was confusing.  Nor does it specifically address whether the legality
of a rescission notice under the CCCDA must be evaluated using an objective or a subjective
standard.

may be able to prove that individual plaintiffs waived their claims does not defeat class

certification — "Courts traditionally have been reluctant to deny class action status under

Rule 23(b)(3) simply because affirmative defenses may be available against individual

members"). The standard at that time would still be whether common issues predomi-

nate. Rule 23(b)(3) does not require that "all issues be common to the class." <u>Smilow</u>,

323 F.3d at 39.

<b><u>Superiority</u></b>

This court also finds that a class action is a superior means of adjudicating the

controversy. One of the purposes of Rule 23 is to "achieve economies of time, effort, and

expense, and promote . . . uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results." <u>Amchem</u>,

521 U.S. at 615, 117 S. Ct. at 2246 (quotations and citation omitted). In light of the

common issues in this case, class certification will further these goals. Additionally,

class certification will advance both the fundamental policy of Rule 23(b)(3) and the

remedial purpose of the CCCDA "to protect classes of plaintiffs who, individually

injured, would never sue to recover modest damages." <u>McIntosh</u>, 215 F.R.D. at 33. <u>See</u>

<u>also Smilow</u>, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the

claims of consumers and other groups of people whose individual claims would be too

small to warrant litigation."). Although, as First Horizon contends, some borrowers may

be entitled to as much as $25,000 or more if they are allowed to rescind their

transactions, this court is not convinced that most consumers, when faced with the cost of

-21-

retaining counsel, the effort required to pursue litigation, and the risk of failing to achieve

a desirable outcome, would consider it worthwhile to pursue these claims individually.[7]

      The court's conclusion regarding superiority is not altered by First Horizon's

argument that the class would be unmanageable due to the effort that would be required

to identify class members and the complexity of administering the rescission remedy,

which "frequently requires court supervision and modification of the rescission

procedures in order to protect lenders' interests and to do equity." (Def.'s Opp. at 17-

18).  Since the parties filed their briefs, the plaintiffs have limited the proposed class to

Massachusetts residents, which has reduced substantially the number of loans at issue.

Additionally, the plaintiffs have volunteered to review First Horizon's files and identify

class members if the process is too burdensome for the defendant.  Furthermore,

notwithstanding First Horizon's conclusory argument to the contrary, there is no evidence

that the rescission remedy would be so unmanageable that it should justify the denial of

class certification.  "The individuation of damages in consumer class actions is rarely

determinative under Rule 23(b)(3)."  <u>Smilow</u>, 323 F.3d at 40.  Any potential difficulties

with the administration of a remedy are outweighed by the efficiencies of litigating the

plaintiffs' claims as a class action.

---

    [7]  The court is aware of plaintiffs' counsel's letter advertising a client's $50,000 savings
from the rescission of his mortgage loan, as well as the three individual rescission demands from
Rhode Island consumers that followed.  <u>See</u> First Horizon's Supplemental Memorandum in
Opposition to Plaintiffs' Motion for Class Certification (Docket No. 32), Exs. A & B.  However,
this information does not indicate whether the potential plaintiffs would be willing to proceed on
an individual basis.

Furthermore, although First Horizon could face significant liability if the proposed class members are able to establish a right to rescind, that possibility must be balanced against the policy considerations underlying Rule 23(b)(3) and the CCCDA. If First Horizon's notice is, in fact, defective, a class action is the most efficient means of enabling consumers to vindicate their rights under the CCCDA. The customers, in fact, were supposed to have the right to rescind under the statute — it is not a right being created by this litigation. Whether the individual plaintiffs still actually seek to rescind remains an open question. Accordingly, this court concludes that a class action is a superior means of adjudicating the present controversy.

## 2.    Requirements of Rule 23(a)

### Numerosity

This court also concludes that the plaintiffs have met the four prerequisites of Fed. R. Civ. P. 23(a). The first of those requirements "is satisfied when the class is 'so numerous that joinder of all members is impracticable.'" Swack, 230 F.R.D. at 258 (quoting Fed. R. Civ. P. 23(a)(1)). "Other courts in this district have noted that a 40 person class is 'generally found to establish numerosity.'" McLaughlin v. Liberty Mut. Ins. Co., 224 F.R.D. 304, 307 (D. Mass. 2004) (quoting In re Relafen Antitrust Litig., 218 F.R.D. 337, 342 (D. Mass. 2003)). First Horizon does not dispute, and the record supports the plaintiffs' argument that the size of the proposed class is sufficient. Although the plaintiffs have not specified the number of class members, "district courts may draw reasonable inferences from the facts presented to find the requisite

-23-

numerosity." <u>McCuin v. Sec'y of Health & Human Servs.</u>, 817 F.2d 161, 167 (1st Cir.

1987).  In view of the large number of loan transactions and the fact that the plaintiffs are

challenging the use of a form, it may be inferred that the proposed class includes well

over forty individuals and is sufficiently numerous to satisfy Rule 23(a).

<u>**Commonality**</u>

The second, "commonality" prong of "Rule 23(a)(2) requires that questions of law

or fact be shared by the prospective class, but does not require that every question be

common." <u>McLaughlin</u>, 224 F.R.D. at 309.  In fact, "[b]ecause '[a] *single* common legal

or factual issue can suffice' to satisfy the 23(a)(2) requirement, 'the commonality

requirement ordinarily is easily met.'" <u>Swack</u>, 230 F.R.D. at 259 (quoting <u>Payne v.

Goodyear Tire & Rubber Co.</u>, 216 F.R.D. 21, 25 (D. Mass. 2003)).  "Commonality and

predominance are closely related" and, as a general statement, "a finding of one will

satisfy the other." <u>Jefferson</u>, 161 F.R.D. at 68 n.13.  "Similarly, commonality and

typicality are closely related and a finding of one generally compels a finding of the

other." <u>Id.</u>  Here, for many of the reasons described above, the prospective class shares

common questions of law or fact.  For example, one of the significant factual questions

raised by the plaintiffs' claims is whether First Horizon had a practice of issuing to its

customers the form Notice of Right to Cancel, exemplified by <u>Exhibit D</u> to the Amended

Complaint, in connection with the refinancing of loans made by another lender.  This

question is common to the proposed class members.  Common legal questions include

whether the Notice of Right to Cancel that First Horizon issued violates the CCCDA and

-24-

if so, whether that constitutes a violation of Mass. Gen. Laws ch. 93A.  These questions

establish the existence of commonality required by Rule 23.

## Typicality

The third prong of Rule 23(a) requires that the lead plaintiffs' claims or defenses

are "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The central

inquiry in determining whether a proposed class has 'typicality' is whether the class

representatives' claims have the same essential characteristics as the claims of the other

members of the class."  McLaughlin, 224 F.R.D. at 310 (quotations and citations

omitted).  The requirement is satisfied where the plaintiffs "show that their claims arise

from the same course of conduct that gave rise to the claims of the absent [class]

members."  Id. (quotations and citation omitted).  See also Rodrigues, 226 F.R.D. at 151.

In this case, McKenna's and Lillie's  claims arise from First Horizon's and its agents' use

of the challenged forms at loan closings.  This is the same course of conduct from which

the claims of the absent Massachusetts class members arise.  Accordingly, this court finds

that McKenna's and Lillie's claims are typical of the claims of the class.

## Adequacy of Representation

The fourth and final prong of Rule 23(a) requires that the named plaintiffs "will

fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This

"adequacy" requirement focuses on "the named plaintiffs' ability to prosecute the action

vigorously through qualified counsel and their lack of conflicting interest with unnamed

class members."  McLaughlin, 224 F.R.D. at 310 (quotations and citations omitted).  See

<u>also</u> <u>Swack</u>, 230 F.R.D. at 265. Plaintiffs' counsel in this matter have significant

experience in consumer class representation, <u>see</u> Pls.' Mem., Appendix C, and the court

is satisfied that they are qualified to vigorously prosecute this case. Additionally, the

plaintiffs are seeking a declaration of the right to rescind, which would allow both the

named plaintiffs and the absent class members to cancel their loan transactions with the

defendant only if they choose to do so. Therefore, the plaintiffs have no conflict of

interest with the unnamed class members. <u>See</u> <u>Rodrigues</u>, 226 F.R.D. at 151 ("The fact

that [plaintiff], if she prevails, may rescind her loan while other plaintiffs may not creates

no conflict because all she is seeking in this action is a declaration of the right to

rescind.").

## IV. <u>CONCLUSION</u>

This court finds that the plaintiffs have satisfied all of the prerequisites to class

certification set forth in Fed. R. Civ. P. 23(a), and that they also have met the require-

ments of Fed. R. Civ. P. 23(b)(3). However, the class sought to be certified is overly-

broad. Therefore, this court recommends to the district judge to whom this case is

assigned that the plaintiffs' Motion for Class Certification (Docket No. 19) be

ALLOWED IN PART and DENIED IN PART,[8] and that the following class be certified:

---

[8] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party
who objects to these proposed findings and recommendations must file a written objection thereto
with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommenda-
tion. The written objections must specifically identify the portion of the proposed findings,
recommendations or report to which objection is made and the basis for such objections. The
parties are further advised that the United States Court of Appeals for this Circuit has repeatedly

All natural persons who obtained non-purchase money loans from First Horizon Home Loan Corporation on or after April 1, 2003 and who received a Notice of Right to Cancel in the form represented by Exhibit D to the Amended Complaint where: (1) the loans were secured by the borrower's Massachusetts residence; (2) the loan was for purposes other than the initial construction or acquisition of the residence; and (3) all or part of the loan proceeds were used to refinance a loan made by someone other than First Horizon Home Loan Corporation, which prior loan was secured by an interest in the Massachusetts residence.

The class shall not include any person whose legal right to rescind has been extinguished for any reason, including by written waiver of the right to rescind, the sale or transfer of all ownership interests in the property that served as security for the loan transaction, or by foreclosure, personal bankruptcy, or other loan workout settlement.

The declaratory judgment sought shall be a "declaration that any class member who so desires may seek to rescind their transaction."


        / s / Judith Gail Dein
        Judith Gail Dein
        United States Magistrate Judge

---

indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).