UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                       )
RALPH G. MCKENNA,                                      )
GLENROY A. DEANE,                                      )
ILENE WILGOREN-DEANE,                                  )
CHRISTOPHER J. LILLIE, and                             )
LAURA A. LILLIE,                                       )
                        Plaintiffs,                    )
                                                       )        Civil Action No. 04-10370 (RCL)
        v.                                             )
                                                       )
FIRST HORIZON HOME LOAN                                )
CORPORATION,                                           )
                        Defendant.                     )
_____)

**DEFENDANT'S RULE 72(a) OBJECTIONS TO THE REPORT AND
RECOMMENDATIONS ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND ON DEFENDANT'S MOTION FOR CLARIFICATION**

FIRST HORIZON HOME LOAN
CORPORATION,

By its attorneys,

U. Gwyn Williams (BBO # 565181)
Julie M. Wade (BBO # 653902)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Thomas M. Hefferon (BBO # 548289)
GOODWIN PROCTER LLP
901 New York Ave., NW
Washington, D.C. 20001
(202) 346-4000

Dated:  January 23, 2006

This case requires the Court to decide if it should certify a class action for a declaratory judgment in the absence of any dispute, and potentially subject the defendant to nearly $200 million of liability for an allegedly inadequate loan disclosure. The proposed class suffers from numerous infirmities, including that, under Massachusetts law, the liability determination will require an examination of varying facts, which cannot be accommodated in a common trial. The Magistrate Judge recommends that a class action be certified. That recommendation should not be adopted.

Though their class request presents numerous problems, Plaintiffs' legal claim is straightforward. The Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D ("MCCCDA") – the Massachusetts' correlate to the Truth in Lending Act – requires that borrowers refinancing residential mortgage loans be given the right to rescind that transaction for three days after closing. Plaintiffs claim that the form used by Defendant First Horizon Home Loan Corporation ("First Horizon") to inform borrowers of this right was confusing, and thus violated MCCCDA. Though there is no evidence that any borrowers were in fact confused about their rights or would have rescinded within that three day period had the form been worded differently, Plaintiffs nonetheless seek to certify a class of nearly 9000 borrowers who received that form.

The aim of their suit is more unusual. Plaintiffs' primary demand is that the Court issue a declaratory judgment that all class members may be entitled to rescind their mortgage loans, should they so choose. Rescission of the loan would entitle the borrower to the return of all finance charges (including closing costs and interest) paid in connection with that loan, thus in essence providing these borrowers with the windfall of an interest-free loan. But none of the borrowers is entitled to rescission for, under the MCCCDA, the right to rescind is triggered only

by a borrower's demand for it – so that there is no 'dispute' (except in the imagination of the out-of-state class counsel) as to which the Court could declare the parties' rights.

The Magistrate Judge incorrectly recommended that certification of an equitable action seeking a declaration of the right to rescind, regardless of whether any borrower actually intend to rescind his or her loan, would be permissible. *See* Report and Recommendation dated November 10, 2005 at 2 ("R&R I"). In so doing, it rejected numerous reasons why the case is not legally or factually appropriate for a class, is unfair and inadvisable in light of the crushing liability it threatens, and simply does not otherwise meet the requirements of Rule 23. To add insult to injury, the Magistrate Judge also incorrectly rejected one of First Horizon's merits defenses – that borrowers who have already refinanced or otherwise paid off can nonetheless rescind the loan which no longer exists. *See* Report and Recommendation on the Motion to Clarify, dated January 6, 2006 ("R&R II") (collectively, "R&R"). This ruling was contrary to settled Massachusetts law on the merits, as well as to federal law which prohibits resolving a party's defenses in connection with a procedural class ruling.

The Magistrate's recommendation should not be accepted, and class certification should be denied. First, MCCCDA simply does not allow certification of a class action for rescission. By the plain language of the statute, MCCCDA only permits damages classes, which are limited to $500,000 in gross recovery so as to moderate a company's liability for technical violations of this difficult statute. The Magistrate Judge's effort to read into the statute a rescission class misapplies established canons of statutory construction and flaunts the one-half million dollar cap by permitting a class worth *380 times that much*. Rescission is a highly individualized, purely personal remedy which is intended to restore the parties to the *status quo ante*. Accordingly, the weight of authority holds that rescission classes should not be certified.

Contrary authority, including in this District, is wrongly decided and conflicts with the Massachusetts' Legislature's intent to limit liability for technical violations such as the rescission notice at issue in this case.

Second, a declaratory relief class action is impermissible because the class members, who have not sought rescission or even indicated an intent to do so, do not have standing. There is no justiciable controversy as to them, and this suit is seeking an improper advisory opinion.

Third, class certification is not a superior method of litigation. Fed. R. Civ. P. 23(b)(3). Rescission involves the refunding of "finance charges" to rescinding borrowers—a remedy that would yield tens of thousands of dollars for many borrowers and create a total possible exposure of as much as $190 million to First Horizon.[1]  (R&R I at 9).  This suit poses such enormous potential liability that certification has the very real risk of inevitably and unfairly driving First Horizon – a public company – to settlement, not litigation of its meritorious defenses.  Moreover, the high stakes at issue for each borrower eliminate the rationale and perceived need for a class in the first place, because borrowers have ample incentive to sue on their own.

Fourth, the class request fails to meet the predominance requirement for a class action. Under Massachusetts law, whether the form gives rise to liability will require an examination of the facts and circumstances of each loan, an inquiry that eludes class treatment.  The Magistrate Judge inappropriately dismissed that controlling authority in a footnote and non-sensically found common issues to predominate because the legal question of whether such evidence was relevant was a common question.

---

[1]    *See* Declaration of Jose Iglesias at ¶¶ 4 & 10 (Dock. No. 27) (class includes over 8900 borrowers with potential liability to First Horizon of nearly $150 million in interest charges alone, not including finance charges) and Declaration of Edward Hyne at ¶¶ 4-6 (Dock. No. 27) (Plaintiffs' finance charges range from approximately $13,000 to over $25,000), submitted herewith; *see also* Defendant's Opposition to Plaintiffs' Motion for Class Certification at p. 13 n.13 ("Def. Opp.") (Dock. No. 27).

<u>Fifth</u>, the recommendations defined the class erroneously and, in connection with that error, impermissibly rejected one of First Horizon's defenses. Responding to First Horizon's point that it had defenses to many of the borrowers' claims, the Magistrate defined some of them out of the class. This is not permitted, as it just squeezes the class-destroying defenses into the class notice phase of the case. Then, the Magistrate Judge compounded the error. Responding to First Horizon's request for explanation as to whom had been defined out of the class, the Magistrate Judge made a *merits determination* that former borrowers who extinguished their loan through refinance or pay off do not have a right to rescind. This was wrong on the law – the Supreme Judicial Court, which is binding on this Court in applying the MCCCDA, has settled the law that refinancing Massachusetts borrowers have no right to rescind – and wrong as a matter of fairness, for class determination is never the time to decide whether a party wins or loses a claim or defense.

## **FACTUAL BACKGROUND**

In June and August of 2003, Plaintiffs McKenna and Lillie refinanced the mortgages on their homes through First Horizon, a nationwide mortgage lender. At the loan closings, Plaintiffs received and signed a notice of their right to cancel, understood they had a right to cancel their loans, chose not to even read the notice, and made no attempt to cancel their loans at the time.[2] But Plaintiffs now seek to rescind their loans and to collect from $13,000 to over $25,000 in finance charges.[3] Plaintiffs only claimed the form was confusing and sought to rescind their loans <u>after</u> receiving solicitations from Class Counsel. *Supra*, n.2. Class Counsel has used

---

[2]    Deposition Transcript of Ralph G. McKenna, January 14, 2005 ("McKenna Dep.") at 28-30, 48-52, relevant pages attached at Exhibit A; Deposition Transcript of Laura A. Lillie, December 16, 2004 ("Lillie Dep.") at 24-28, 50-52, 56, 60, relevant pages attached at Exhibit B.

[3]    According to First Horizon's records, as of April 21, 2005, Plaintiff McKenna had paid over $25,000 in finance charges, Plaintiff Lillie had paid over $13,000 in finance charges, and Plaintiff Deane had paid nearly $25,000 in finance charges. Hyne Decl. at ¶¶ 4-6.

advertisements soliciting individual plaintiffs for litigation, promising borrowers a refund of up to $50,000 or more in finance charges.[4] And indeed, a review of the docket reveals at least 25 individual plaintiffs have filed suit seeking rescission under MCCCDA and/or TILA since 2000 within the First Circuit alone.[5] Many of these individual plaintiffs are represented by Class Counsel who now claims such individual suits are unlikely.

## STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation concerning a motion for class certification, the District Court must review the objected-to portions of the recommendation and report *de novo*. 28 U.S.C. § 636(b)(1)(A).

## ARGUMENT

**I.    The R&R Disregarded the Plain Language and Intent of MCCCDA by Permitting a Class Action for Rescission.**

**A.    *By the Express Terms of the Statute, MCCCDA Only Permits Class Certification for Cases Seeking Damages, not for Those Seeking Rescission, and Does Not Provide Declaratory Judgment as a Remedy.***

MCCCDA does not provide for rescission class actions or for declaratory relief, and the Magistrate Judge erred by reading these into the statute. First, MCCCDA expressly allows for damages classes, but does not similarly provide for rescission classes. *Compare* Mass. Gen.

---

[4]    *See* Legal Advertisement by Christopher M. Lefebvre, attached as Exhibit C.

[5]    *See, e.g., Alicea v. Citifinancial Svs.*, 02-30133 (D. Mass.); *Belini v. Washington Mut. Bank, FA*, 03-30175 & 04-30083 (D. Mass.); *Benitez v. New England Fid.*, 00-10287 (D. Mass.); *Burgess v. New Century Mort. Corp.*, 05-40026 (D. Mass.); *Cammarata, et al v. Associates Fin.*, 01-10575 (D. Mass.); *Correia v. Ameriquest Mort. Co.,* 05-11467 (D. Mass.); *Dekoschak v. New Century Mort. Corp.,* 04-30249 (D. Mass.); *Dellecese v. MRD Corp.,* 03-10197 (D. Mass.); *Donoghue v. Plymouth Sav. Bank,* 04-01351 (D. Mass. Bank.); *Egipciaco-Ruiz v. R & G Mort. Corp.,*02-02829 (D. Puerto Rico); *First Horizon Home Loan Corp. v. Pacheco,* 05-00264 (D. RI); *Flood v. Ameriquest Mort. Co.,* 04-10585 (D. Mass.); *Ganguly v. Swiss Am. Sec. Inc.,* 03-11138 (D. Mass.); *Grant v. Superior Bank, FSB,* 01-10965 (D. Mass.); *Homeowners Loan Corp. v. Poindexter,* 05-00439 (D. RI); *Kania, v. Long Beach Mort.,* 01-30094 (D. Mass.); *Mendez-Negron v. R & G Mort. Corp.,* 03-01337 (D. Puerto Rico); *Morin v. First Horizon Home Loan Corp.,* 03-518 (D. RI); *Palmer v. Champion Mort.,* 04-11954 (D. Mass.); *R.G. Financial Corp. v. Vergara-Nunez,* 03-01841 (D. Puerto Rico); *Robinson v. World Wide Fin.,* 00-11000 (D. Mass.); *Stanley v. Ameriquest Mort. Co.,* 04-11376 (D. Mass.); *Stanley v. Home Star Mort. Serv.,*

Laws ch. 140D § 10 (rescission) *with* § 32 (damages); *see also* 15 U.S.C. §§ 1635 (rescission) & 1640 (damages).[6]  In 1974 Congress amended TILA to permit class actions in damages cases, but it left the separate rescission provision undisturbed, and, in later amendments, never added class action language to the rescission provision.  *See Jefferson v. Security Pac. Fin. Servs.*, 161 F.R.D. 63, 68 (N.D. Ill. 1995) (explaining legislative history).  Unlike damages claims, Congress recognized that rescission is an inherently equitable and personal remedy, investing courts with equitable discretion to modify the statutory procedures for rescission, 15 U.S.C. § 1635(b), and making court supervision of rescission claims on a case-by-case basis inconsistent with class-wide relief.  *Jefferson*, 161 F.R.D. at 68.

Although Congress (and the Massachusetts legislature) omitted rescission classes from the statute, the Magistrate Judge failed to appreciate the significance of that omission:

> This court does not find it significant that Congress expressly referred to class actions in connection with setting a damages cap, but did not make a comparable amendment to the rescission statute.  It is just as likely that Congress did not intend to in any way limit rescission claims which are designed to put the consumer back in the same position as before the inaccurate information was provided.

(R&R I at 16)  This conclusion, however, directly conflicts with the fundamental principles of statutory construction.  As this Court has recognized previously,

> Where the language of one provision in a statute differs from the language in a later provision, it is logical to conclude that the legislators intended that different language.  "Where Congress has

---

*LLC*, 04-11998 (D. Mass.); *Stebbins v. Home Star Mort. Serv., LLC*, 04-30206 (D. Mass.); *Szajner v. New Century Mort. Corp.*, 05-40091 (D. Mass.); *Tabares v. First Horizon Home Loan Corp.*, 05-017 (D. RI).

[6]     The MCCCDA is the state equivalent of the Truth In Lending Act, 15 U.S.C. s 1601, *et seq.* ("TILA") and, under TILA's exemption provisions, controls in this case.  Although Plaintiffs initially acknowledged that MCCCDA controls, they recently retreated from this position in the face of unfavorable case law.  The Magistrate Judge rejected Plaintiffs' change in position and correctly concluded that state law applies.  (R&R II, at 4 n.1; *see also* R&R at 11-12)  State courts may look to TILA and its case law as guidance in interpreting and applying the MCCCDA.  *Mayo v. Key Fin. Servs., Inc.*, 678 N.E.2d 1311, 1313 (Mass. 1997).

> carefully employed a term in one place but excluded it in another,
> it should not be implied where excluded."

*Pastore v. Medford Sav. Bank*, 186 B.R. 553, 555 (D. Mass. 1995) (Lindsay, J.) (internal citations omitted);[7] *see also Howe v. Bank for Int'l Settlements*, 194 F. Supp. 2d 6, 20 (D. Mass. 2002) (Lindsay, J.) (applying Supreme Court's instruction that if Congress amends statute and omits language, courts should not interpret statute to include omitted language); *Golub v. Isuzu Motors*, 924 F. Supp. 324, 327 (D. Mass. 1996) (Lindsay, J.) (applying "familiar presumption that a legislative body acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another section of the same").  Where the legislature acted to provide for class relief in the provision permitting statutory damages, but not in the provision permitting rescission, this Court must conclude that the legislature did not intend to permit rescission class actions.

Second, MCCCDA provides specific remedies for consumers, but declaratory relief is not among them.  *See*, *e.g.*, Mass. Gen. L. ch. 140D §10(a) (rescission for individuals), § 32(a) (actual damages or statutory damages), §32(a)(3) (attorneys' fees and costs of litigation).  These comprise the entire slate of remedies provided by the statute and do not include declaratory relief.  The Magistrate Judge reasoned that "nothing in the language of TILA" *precludes* a declaration that members of a class might be entitled to rescission.  (R&R I at 15) (citing *Williams v. Empire Funding Corp*. 183 F.R.D. 428, 435-36 (E.D. Pa. 1998)).  But this reasoning directly contradicts instruction from the United States Supreme Court, as followed by this Court:

---

[7]    In *Pastore*, this Court considered whether Congress intended the Bankruptcy Code to provide a right of action against private businesses where the words "deny employment" appeared only in the section authorizing suit against the government, but not in a nearly identical provision authorizing suit against private businesses.  This Court concluded that "[t]his strongly suggests that Congress intentionally omitted the reference to discrimination in hiring from the provision regulating the conduct of private employers" and dismissed plaintiff's claim.  186 B.R. at 555.

> "It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it ... In the absence of strong indicia of a contrary congressional intent, [a court should] conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cty. Sewerage Authority v. Sea Clammers,* 453 U.S. 1, 14-15, 101 S. Ct. 2615, 2623, 69 L. Ed. 2d 435 (1981).

*Pastore*, 186 B.R. at 555.

The Magistrate Judge's conclusion that MCCCDA should be expanded to include a rescission class action for declaratory relief directly conflicts with the Supreme Court's instruction and this Court's reasoning in *Pastore*. There is no "strong indicia" of any intent by the legislature to provide for either declaratory relief or rescission class actions. Instead, just as this Court refused to read a cause of action into the statute in *Pastore* that Congress did not expressly provide, this Court should refuse to permit class certification for rescission cases under MCCCDA and TILA where Congress intentionally omitted that form of relief. A contrary holding violates the plain language of the statute and extends TILA and MCCCDA relief far beyond the legislatures' intent.[8]

**B.**    *Rescission is a Purely Personal Remedy Not Suited to Class-Wide Relief.*

This statutory construction makes perfect sense given that rescission is a purely personal remedy not suited to class-wide relief – an issue the Magistrate Judge simply ignored in recommending class certification despite substantial briefing on this issue by both parties. *See James v. Home Constr. Co. of Mobile*, 621 F.2d 727, 731 (5th Cir. 1980) (denying class certification because rescission is "purely personal" remedy and inappropriate for class-wide relief). The chief (though not only) reason for this conclusion is simple and compelling. By its

---

[8]    Indeed, courts consistently have rejected the concept that consumer statutes, like MCCCDA, can be broadened to encompass remedies and means of redress other than ones intended by Congress. *See, e.g., Mullinax v.*

nature, rescission completely unwinds a transaction and returns both parties to where they were before the transaction. Whether a borrower wants that remedy or not depends on his or her personal situation.  Rescission is not a zero sum game like damages claims are—the borrower is not necessarily better off as a result of a rescission class action brought "on his behalf." Accordingly, because rescission is such an individualized remedy, the only Circuit Court and most district courts to address this issue have rejected the certification of class actions seeking rescission.  *See, e.g., James*, 621 F.2d 727, 731; *Murry v. America's Mortgage Banc, Inc.*, 2005 WL 1323364 (N.D. Ill. May 5, 2005); *Gibbons v. Interbank Funding Group*, 208 F.R.D. 278, 285 (N.D. Cal. 2002); *Jefferson*, 161 F.R.D. at 70; *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 583 (S.D. Ohio 1993); *Nelson v. United Credit Plan, Inc.*, 77 F.R.D. 54, 58 (E.D. La. 1978) ("[T]he propriety of ever pursuing rescission under [TILA] through a class action is open to serious doubt.").[9]

## II. A Declaratory Action For Borrowers Who Have Not Decided or Committed to Rescind Is Not Justiciable Because Such Borrowers Lack Standing.

The class members, who have never even indicated an intent to rescind, do not have standing to seek a declaratory judgment about their right to rescind.  Under the MCCCDA, a rescinding borrower must affirmatively act first, by formally rescinding and committing to return the principal lent if the creditor honors the rescission.  Mass. Gen. Laws ch. 140D § 10.  Until

---

*Radian Guar., Inc.,* 199 F. Supp. 2d 311, 335 (M.D.N.C. 2002) (injunctive relief unavailable in RESPA private actions).

[9]  Plaintiffs have argued these cases do not apply here because, in some of those cases, the plaintiffs sought actual rescission on behalf of the class members, whereas Plaintiffs here merely seek a declaratory judgment that the class members have a right to rescind.  In addition to the problems of standing that this new type of class creates, *see infra*, this is a distinction without a difference and is out of line with courts nationwide that have denied certification even when the TILA claim is disguised as declaratory relief.  *See Gibbons*, 208 F.R.D. at 285; *Jefferson*, 161 F.R.D. at 69.  Couching a class claim as declaratory relief seeking rescission, instead of as a class simply seeking rescission, cannot salvage Plaintiffs' requested class.

that happens, there is nothing for this Court to adjudicate.[10]  The class members therefore do not meet the prerequisite for standing: "the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  What Plaintiffs seek here is an opinion advising the class what the law would be upon a hypothetical state of facts, *i.e.*, what would happen if a class member attempts to rescind a mortgage.  The proposed declaration does not present a concrete controversy, and thus no actual dispute.  In such an instance, this Court should heed the admonition of the First Circuit that "[c]ourts should always be hesitant to answer hypothetical questions."  *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 538 (1st Cir. 1995).

The Magistrate Judge paid scant attention to the important issue of standing and conflated standing to seek damages with standing to seek rescission.  Although acknowledging that the proposed class includes borrowers who have not sought rescission and were not actually injured, but simply "potentially injured" (R&R I at 16), she nonetheless concluded that any borrower who received the allegedly defective rescission notice, regardless of his intent to exercise the right of rescission, has standing to be a member of the class.  (R&R I at 17)  Thus, under the proposed class, the District Court would simply be advising potential plaintiffs about their right to rescind, even though they have not exercised such right, do not intend to do so, and have not been injured by any alleged wrongdoing giving rise to that right.

---

[10]     This deficiency is not remedied by the fact that the named Plaintiffs actually are seeking rescission, and their request on behalf of the absentees is ancillary to that claim.  "Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named Plaintiffs."  *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (citation omitted).  Thus, "to be a member of a class it is necessary that each individual have standing to bring the suit in his own right."  *Kister v. Ohio Board of Regents*, 365 F. Supp. 27, 33 (S.D. Ohio 1973) (citation omitted), *aff'd*, 414 U.S. 1117 (1974).  The putative class members in this case lack such standing; indeed, as Plaintiffs admit, those members have not sought rescission—for the very object of the class suit is to advise them that they can.

A borrower who has not committed to exercise a right of rescission lacks standing to seek a declaratory judgment that she has such a right, regardless of whether that borrower may have standing to seek damages.[11]  The right of rescission is a remedy separate and distinct from the right to seek damages.  *Compare* Mass. Gen. L. ch. 140 D § 10 (rescission) *with* § 32(a) (damages)*; see also Belini v. Washington Mutual Bank*, 412 F.3d 17, 24 (1st Cir. 2005) (explaining difference between damages and rescission).  What is in dispute here is whether the court can declare that unnamed class members who have never expressed an intent to rescind nonetheless, as a hypothetical matter, have the right to rescind.  It cannot and should not do so.

The Seventh Circuit in *Highsmith v. Chrysler Credit Corp*., 18 F.3d 434 (7th Cir. 1994), which the Magistrate Judge dismissed in a footnote (R&R I at 17 n.5), makes this distinction clear.  In *Highsmith*, the court held a lessee lacked standing to seek <u>declaratory relief</u> about the consequences of terminating his lease because he had not actually terminated the lease.  18 F.3d at 436-37.  The court explained "[the lessee] has merely asked this court to determine what would happen to him if he did decide to terminate his lease at some unknown time in the future." *Id*. at 437.

In the R&R, the Magistrate Judge ignored this holding in *Highsmith* and focused on a later portion of the *Highsmith* opinion where the court held that the lessee could seek <u>damages</u> based on disclosure violations, which is not relevant to the issue of standing for rescission claims.  So while the Magistrate may have been correct in saying "the proposed class members who received the allegedly unlawful notice have standing to sue for improper disclosure under CCCDA" (R&R I at 17) if that suit was limited to <u>damages</u>, that statement is not correct with

---

[11]    Although the Magistrate Judge did not consider whether a class should be certified to recover statutory damages, First Horizon acknowledges that class members may have standing to seek statutory damages of $2000 individually or $500,000 as a class action under Mass. Gen. Laws ch. 140D § 32.  This standing,

respect to declaratory relief about <u>rescission</u> claims.  *McIntosh* reinforces this point when it limited the class to those borrowers actually harmed by the alleged improper payment of prepayment penalties to resolve the issue of standing.  215 F.R.D. at 36 ("[T]hese actual damages create the current controversy.").

In this case, Plaintiffs rest their request for a declaration not on any actual harm, but on the bare assertion that the court has a duty to reach out to persons who have not taken the step that might trigger legal relief and tell them they have a right to do so.  This is not a normal request for a declaration between disputing parties – it is a request that the court be asked to stir up litigation where no dispute exists between the parties.  The class members have no standing – and this Court should not be drawn into inducing them to create it.

## III.    <u>The Class Sought Here Would Be Particularly Inequitable and Unnecessary, And So A Class Action Is Not A "Superior" Method Of Adjudication.</u>

### A.    *The Potential Liability to First Horizon Created by Class Certification Converts MCCCDA into a Punitive Damages Statute.*

Apart from legal barriers to the relief Plaintiffs seek, a class action in this case should be denied as improper and inequitable.[12]  Rule 23 requires that class adjudication be a "superior" method of reaching a "fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).[13]  In applying MCCCDA, the Supreme Judicial Court of Massachusetts has instructed:

---

however, does not confer standing to seek a declaratory judgment with respect to rescission rights under § 10. *See, e.g., Murry*, 2005 WL 1323364 at *10-*12; *Jefferson*, 161 F.R.D. at 69.

[12]    The fact that this class action arises in the context of a consumer protection statute does not change the class action analysis or somehow confer a presumption of class certification.  Courts routinely deny class certification in TILA cases.  *See, e.g., Kent v. Sunamerica Life Ins. Co.*, 190 F.R.D. 271, 272, 276 (D. Mass. 2000) (using "the authority and responsibility to exercise discretion" to deny class certification in TILA case for lack of typicality); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025, 1028 (11th Cir. 2001) (denial of class certification in TILA case); *Stout v. J.D. Byrider*, 228 F.3d 709, 717-18 (6th Cir. 2000) (same); *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1377 (11th Cir. 1984) (same).

[13]    First Horizon argued before the Magistrate Judge that certification in this case satisfied none of the Rule 23 requirements, and hereby adopts and incorporates those portions of its briefs filed with the Magistrate Judge. *See* Def. Opp. at 11-20.  Specifically, (1) the proposed class is unmanageable; (2) the named plaintiffs are not

> Consumer acts, such as [MCCCDA] have been passed to provide a
> more equitable balance in the relationship of consumers to persons
> conducting business activities, but such consumer legislation
> should not be construed as creating new inequities or placing
> burdens on business beyond those necessary to make required
> disclosures and to provide a balance of equities between the
> parties.

*Mechanics Nat'l Bank of Worcester v. Killeen*, 377 Mass. 100, 112 (1979) (internal citations

omitted).  Similarly, courts have long held that when TILA cases present potentially crushing

liability disproportionate to the hyper-technical nature of the alleged TILA violation, they can be

inappropriate for class certification. *E.g., Ratner v. Chem. Bank New York Trust Co.,* 54 F.R.D.

412, 416 (S.D.N.Y. 1972) (denying certification of TILA class; proposed recovery "would be a

horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or

to any benefit to defendant, for what is at most a technical and debatable violation"); *Wilcox v.

Commerce Bank of Kansas City*, 474 F.2d 336 (10th Cir. 1973) (affirmed denial of certification

of TILA class where liability could exceed $1 billion); *see also Watkins v. Simmons & Clark,

Inc.*, 618 F.2d 398, 403-04 (6th Cir. 1980) (affirming denial of class certification under TILA

where no evidence of actual harm, defendant had already discontinued using the complained of

forms, and class recovery would have been disproportionate).[14]

    The R&R's conclusion that class liability for rescission is essential as an enforcement

tool to ensure adherence to MCCCDA's disclosure requirements is baseless.  Lenders already

face class-wide liability for damages under MCCCDA, up to $500,000 plus attorneys fees.

---

    adequate class representatives; (3) and the named plaintiffs, who have already sought rescission, are not typical
of the unnamed class members.

[14]    Courts applying other consumer credit statutes have refused to certify classes that are overwhelming in scope
and potential liability, when compared to the alleged violation.  *Sampson v. Western Sierra Acceptance Corp.,*
No. 03 C1396, 2004 WL 406992 * 3 (N.D. Ill. Feb. 27, 2004) (finding "possibility of large and grossly
disproportionate damage award outweighs the benefits of a class action" under Fair Credit Reporting Act),
*rev'd on other grounds by Sampson v. Ridge Chrysler,* 2004 WL 725471 *1 (N.D. Ill. 2004); *In re Trans*

Mass. Gen. Laws ch. 140D § 32(a)(2)(b), (a)(3).  It almost goes without saying that hundreds of

millions of dollars at risk is not necessary to encourage MCCCDA compliance.  Indeed,

Plaintiffs' counsel's complaint and the filing of a single, individual rescission suit spurred First

Horizon to rewrite its prior rescission form and promulgate the one at issue in this case. [15]

Certification is not a superior method of resolving this controversy because Plaintiffs present

exactly the situation that has caused other courts to reject sweeping TILA classes—at most a

technical violation of the statute for which the potential class-wide liability is crushingly large

and out of all proportion.

**B.**    *Permitting a Rescission Class Subverts the Legislature's Intent to Limit any Potential Penalty for Defendants to $500,000 Per Class.*

As Congress and the Massachusetts Legislature recognized, rescission classes are

inappropriate because they can be – and in this case would be – overwhelmingly unfair, given

the size of the potential liability presented by such a collective suit.  Those bodies

understandably have been concerned with the often-technical and inconsequential nature of

TILA and MCCCDA violations, and the corresponding risk that such classes could amount to

killing the proverbial "gnat with a sledgehammer."  In 1995, Congress acted to amend TILA to

prevent subjecting lenders to crushing liability for disclosures that contained, at best, minor

technical violations, similar to those raised by Plaintiffs here.[16]  Congress limited recovery of

---

*Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-351 (N.D. Ill. 2002); *Wilson v. Am. Cablevision of Kansas City, Inc.*, 133 F.R.D. 573, 575-77 (W.D. Mo. 1990).

[15]    There is no particular rescission disclosure form that *must* be used.  First Horizon created this form in an effort to simplify the form and to eliminate any chance of mistakes in explaining the right to rescind *after* Plaintiffs' counsel complained about a previous form.  Deposition Transcript of Charles Covington, February 11, 2005 ("Covington Dep.") at 29-30, 40-41, relevant pages attached at Exhibit D.  Further, First Horizon no longer uses the allegedly defective form at issue here in part because of the *threat* of the type of frivolous litigation that Plaintiffs have asserted.  Thus, it is not clear what sort of additional compliance incentive Plaintiffs hope to achieve in this case.

[16]    As the sponsor of the TILA amendments explained:

damages by TILA classes to $500,000 to eliminate potentially "catastrophic" class-wide judgments for minor, technical violations of the statute. 15 U.S.C. § 1640(a)(2)(B); *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 118 & n.5 (5th Cir. 1975); *Jefferson*, 161 F.R.D. at 68; *see also,* S. Rep. No. 368, 96th Cong., 2d Sess. at 16, *reprinted in* 1980 U.S.C.C.A.N. 236.[17]  The Massachusetts Legislature followed suit, imposing its own $500,000 per case cap.  To permit a class action seeking rescission for almost 9000 borrowers that might cost First Horizon as much as $200 million contradicts that judgment.

The R&R ignores the practical realities of class certification under MCCCDA and the potential catastrophic penalty implicated by certification.  As the Magistrate Judge acknowledged, "First Horizon could be liable for approximately $190 million" if a class is certified and declaratory relief ordered.  (R&R I at 9)  In light of the fact that $500,000 is the limit of liability for damages classes, potential liability of 380 times that amount is not only grossly excessive and penal, it is unreasonable and contrary to legislative intent.

**C.**     *The Significant Windfall At Stake for Current and Former Borrowers Who Decide to Rescind Creates Ample Incentive to Bring Individual Suits.*

The class further fails the Rule 23 superiority test, because class members have an interest in controlling their own rights, and concentrating the litigation in this class forum is

---

MR. LEACH:  This bill addresses certain changes to the Truth in Lending Act due to the flood of class action lawsuits that followed the decision in *Rodash versus AIB Mortgage Co.* [16 F.3d 1142 (11th Cir. 1994)]. . . Here let me stress that this issue is not a matter of nondisclosure or industry efforts to mischievously mislead borrowers. . . . The problem is that an honest mistake of no consequence to any of the parties involved has become the subject of shark instincts of the plaintiff's bar. . . . Sometimes a litigant may be right on a small point, but desperately wrong in the big perspective.  That is the case here.  The bar that has brought this class action effort should be chastised, not rewarded.

141 CONG. REC. H9514-H9515 (1995) (commentary by the bill's sponsor); *see also*, 1995 U.S.C.C.A.N. vol. 2, Table 4 at 69.

[17]     "Under the act's current provisions, there is the possibility that a creditor could be subject to multiple class actions for the same violation, each seeking the maximum recovery of $500,000 or 1 percent of the creditor's net worth, whichever is less.  This bill would eliminate that possibility by assuring that regardless of the number of class actions brought against a creditor for a particular violation, the creditor's maximum aggregate liability would not exceed the limits mentioned above."  1980 U.S.C.C.A.N. at 285.

unnecessary. Fed. R. Civ. P. 23(b)(3)(A), (C). The rationale for consumer class actions – the often small size of the potential individual recovery – is not operative here. The Magistrate Judge's conclusion that the evidence "does not indicate whether the potential plaintiffs would be willing to proceed on an individual basis," (R&R I at 22 n.7), is completely unsupported. A review of the district court dockets in the First Circuit shows over 25 individual cases seeking rescission filed under MCCCDA or TILA since 2000. *Supra* n.5. Indeed, many of those cases have been filed by Class Counsel, who brazenly advertises for clients with promises of a $50,000 recovery. *See* Ex. C. The class members have paid tens of thousands of dollars in interest on their mortgage, not to mention thousands in finance charges at closing, and have ample incentive to bring their own individual rescission actions if they want to. That Class Counsel's advertisements have not brought enough of them forward is testament to the borrowers' satisfaction with First Horizon, not to the need for an overblown class action. *See Nelson*, 77 F.R.D. at 58; *James*, 621 F.2d at 731 n.7; *Elliott v. ITT Corp.*, 150 F.R.D. 569, 585 (N.D. Ill. 1992); *Jefferson*, 161 F.R.D. at 69; *Mayo*, 148 F.R.D. at 583.

**D.** *The McIntosh and Rodrigues Cases Do Not Direct Certification in This Case.*

In recommending class certification, the R&R relied primarily on two recent District of Massachusetts decisions that certified classes seeking declaratory rescission relief. (R&R I at 15-16, discussing *McIntosh v. Irwin Union Bank & Trust Co.*, 215 F.R.D. 26 (D. Mass. 2003); *Rodrigues v. Members Mortgage Co., Inc.*, 226 F.R.D. 147 (D. Mass. 2005)) Faced with the two orders by sitting district judges in this district, it is perhaps not surprising that the Magistrate Judge was deferential. Indeed, the Magistrate Judge adopted the cases with little independent analysis. (R&R I at 15-16; R&R II at 11-12). However, *McIntosh* and *Rodrigues* represent a departure from the well-recognized bar against rescission classes (*see supra* at 9) and should be limited to the facts of those cases.

16

Indeed, the facts of *McIntosh* are unique, such that, upon close examination, they actually support First Horizon's position here, and not Plaintiffs. In *McIntosh*, the plaintiffs claimed that the note securing their mortgage loan violated TILA (as amended by HOEPA) because it contained a prepayment penalty clause which did not disclose that no penalty would be due if the borrowers refinanced with funds provided by the original creditor. 215 F.R.D. at 28. The court initially certified the class sought by plaintiffs: all borrowers who obtained a loan containing this illegal prepayment penalty clause. *Id.* Thereafter, the defendant moved for reconsideration of that order, and Judge Young did indeed alter his class certification decision. After considering the nature of TILA, Judge Young reasoned that the statute "builds in incentives for litigation to protect classes of plaintiffs, who individually injured, would never sue to recover modest damages. It is that injury that resonates with this Court." *Id.* at 33. The Court went on to conclude:

> Based upon [this] reasoning, this Court concludes that a narrowing of the class is appropriate. ***The Court hereby further limits the potential class to those actually injured*** – specifically, those parties who, like the McIntoshes, refinanced their HOEPA loans with another lender and incurred prepayment penalties.

*Id.* (emphasis added). The court went on to say that borrowers who "have not yet refinanced and may possibly suffer harm from the allegedly inadequate loan provision" may bring individual suits, but were not part of the class action. *Id.* at 33.

In other words, Judge Young first certified a class essentially identical to the class sought here – all borrowers who had received the allegedly violative disclosure – and then thought better of it. Upon reconsideration, he excluded from the class those borrowers who had received the illegal disclosure form but had not been harmed by actual application of the prepayment penalty. The class proposed in this case, however, is made up of the very people excluded from the class in *McIntosh* – borrowers who have suffered no actual damage and have not even

indicated an intent to rescind. There is no evidence that the alleged improper disclosure form actually affected or harmed any class member. The logic of *McIntosh* certifying a class cannot be extended here because Plaintiffs seek rescission rights for everyone who received the form – including those who suffered no loss.

Moreover, Judge Young's reasoning that a class needed to be certified because borrowers would never bring suit individually in light of their "modest damages" is simply inapplicable here. *See id.* For instance, the prepayment penalty assessed against the named plaintiff in *McIntosh* was only $1516.44. *McIntosh v. Irwin Union Bank & Trust Co.*, 01-11174 WGY, Amended Complaint (D. Mass. Oct. 17, 2001). As described above, there is "real" money at stake in this case for each individual borrower (plus an award of attorneys fees), and the best evidence that individual borrowers would pursue claims in the absence of a class is the fact that there are in fact many such cases filed here and around the country.

*McIntosh* and *Rodrigues* also differ significantly from this case, in that those courts faced classes very limited in size, which ameliorated the consequences of certifying a rescission class that are present in this case. In *McIntosh,* the district court narrowed the class to those borrowers who incurred actual harm (a small fraction of the proposed class) and speculated that the named plaintiff may have been the only actual plaintiffs. 215 F.R.D. at 33; *see also* McIntosh Final Approval Order, C.A. 01-11174-WGY (D. Mass. Dec. 16, 2004) (noting 65 identifiable class members). Similarly, in *Rodrigues*, the proposed class certified in the cited opinion only involved from 40 to 100 class members. 226 F.R.D. at 150. While that court engaged in no explicit narrowing of the case, it clearly felt untroubled by the implications of its order because of the "relatively small size of the class involved." *Id.* at 153. By contrast, the class

recommended by the R&R has approximately 8900 potential class members.  *See* Iglesias Decl. at ¶ 4.

## IV.    Determining Whether Borrowers Received Sufficient Notice of the Right to Rescind is an Intensely Fact-Based Analysis That Prevents Common Issues From Predominating.

The Magistrate Judge inappropriately minimized the rigors of Rule 23(b)(3)'s requirement that Plaintiffs demonstrate predominance of common issues.  (R&R I at 18-21).  On the one hand, the Magistrate Judge acknowledged that "[i]t is not clear whether the events surrounding the circumstances of each closing where the Notice was signed will be relevant to the instant litigation."  (R&R I at 19).  The Magistrate Judge needed to decide this legal question as a prerequisite to certifying the class – quite clearly if each borrower's subjective understanding is pertinent, then individual issues would predominate.  But instead of deciding the issue, the Magistrate Judge found this legal issue could form a common question warranting class certification.  This threshold legal issue must be decided before ruling on class certification, and under *Mechanics Nat'l Bank of Worcester v. Killeen*, 377 Mass. 100 (1979), must be resolved against class certification here.

In *Killeen*, Massachusetts' highest court found that the borrower's confusion, or lack thereof, about the right to rescind was relevant to determine whether the borrower maintains a right to rescind.  *Id.* at 111-12.  In that case, the plaintiff claimed the loan should be rescinded because some of the forms at closing omitted the name of the lender, in violation of MCCCDA.  *Id.* at 111.  Nonetheless, a right to rescind did not arise because the plaintiffs "knew who the lender was, and they did not undertake seasonably to rescind the transaction, as the bank's notice advised them they could…[i]f no statutory notice at all had been given, the result would be different."  *Id.* at 111-12.  Thus, under the MCCCDA, liability is dependent on the borrower's

subjective awareness of the right to rescind, which necessitates a fact specific inquiry that cannot be done in the class action context. *See also Smith v. Highland Bank*, 108 F.3d 1325, 1327 (11th Cir. 1997) (judging lender's compliance with rescission notice provision is not mechanical and involves scrutinizing totality of circumstances).

Indeed, since Plaintiffs contend the notice was confusing—although they admit they never read the notice, knew they could rescind, and at least one of the closing attorneys explained the rescission right in detail – testimony from each class member must be had to determine whether the document was confusing to them. *See Gibbons*, 208 F.R.D. at 287 (refusing to certify a similar rescission-notice class where the notice may have been more misleading to some plaintiffs than others). Thus, despite what Plaintiffs imply, the Court's analysis of liability in this case does not end with the form of notice that a borrower received, but requires a consideration of the particular circumstances at each closing and each borrower's understanding of the right of rescission.[18]

Moreover, even if it were possible to determine as a common issue whether the notice given was adequate, common issues still would not predominate as First Horizon's defenses to individual claims allow it to delve into the specifics of each transaction. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295, 297-98 (1st Cir. 2000). Borrowers' rights to rescind can be terminated by a number of events, including by waiver. 12 C.F.R. 226.23(e). Rescission rights can also be extinguished by foreclosure, personal bankruptcy, or other loan workout settlement. *See, e.g., Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144 (10th Cir. 2004) (*Rooker-*

---

[18]    *See Contimortgage Corp. v. Delawder*, 2001 WL 884085, at *6 (Ohio Ct. App. July 30, 2001) (lawmaker comments regarding the 1995 Amendments "clearly and inexorably show the growing reticence on the part of Congress to have TILA applied in a rote and technical fashion which penalizes lenders in instances in which no harm to borrowers has occurred"); *see also Mackey v. Household Bank*, 677 So. 2d 1295, 1298 (Fla. Dist. Ct. App. 1996) (discussing strict compliance with TILA and noting that, "[l]aws should be enforced with common sense and applied without losing sight of the legislative purpose behind their enactment").

*Feldman* doctrine prevents federal court from allowing rescission after state court foreclosure judgment); *In re Smith and Kourian*, 216 B.R. 686, 690 (1st Cir. 1997) (*res judicata* effect of confirmed bankruptcy plan); *In re Larocque*, 283 B.R. 640, 642 (D.R.I. 2002) (rescission under TILA is a "core" issue to be resolved by bankruptcy court). Whether, and the extent to which, such payments or judgments bar or limit a class member's claim will depend on the particular circumstances and will require review on a case-by-case basis, making class certification improper.

**V.**     **The Magistrate Erred In Defining The Class, And Then Making A Merits Determination That Former Borrowers Who Closed Their Loan Due to Refinance or Pay Off Do Not Retain a Right of Rescission and Should Be Excluded From the Class.**

Responding to the fact First Horizon correctly pointed out it had numerous borrower-specific defenses, and that the class Plaintiffs sought was overbroad, the Magistrate Judge defined out of the class those whose right to rescind had "been extinguished for any reason." (R&R I at 3) While well-intentioned, this was error. It is settled that a court may not define a class with reference to the liability issues in the case. *See Isaacs v. Sprint Corp.*, 261 F.3d 679, 681 (7th Cir. 2001) (reversing certification of a "failsafe" class because, among other reasons, such a class is "forbidden"); *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) ("class definition . . . would result in a 'failsafe' class . . . which would be bound only by a judgment favorable to Plaintiff, but not by an adverse judgment"). There are two related reasons why this is so. First, the question of liability is for trial (or summary judgment), and defining out of the class those who would lose only forces liability to be decided in connection with class notice. Second, defining losers out of the class means the class is a fail safe enterprise – those who would win are in the case, and those who lose are out – but not with a corresponding judgment in the defendant's favor.

The Magistrate Judge then compounded the error. After receiving the initial Report & Recommendation, First Horizon requested clarification because it could not determine whether the intention was that persons who had refinanced the subject loan counted among the persons who had been discarded from the class because their rights had "been extinguished." The Magistrate Judge clarified the initial recommendation, rejecting First Horizon's defense as to those borrowers and holding that those former borrowers' rights of rescission had not "been extinguished."

This too was erroneous, for it is black letter law that a class ruling may not include a determination of the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) (holding that preliminary inquiries into the merits of a suit to determine whether to certify a class contravene Rule 23 and are prejudicial to defendant and noting that "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met." (internal citations omitted)); *In re Polymedica Corp. Sec. Litig.*, 132 F.3d 1, 5-6, 17 (1st Cir. 2005) (vacating and remanding class certification and warning against "turning the class-certification proceeding into a min-trial on the merits, which must not happen"). The clarification only underscores the original error committed by the Court in defining the class by reference to who will win and who will lose.

In addition to this error, the Magistrate Judge's ruling that persons can rescind loans already paid off is just wrong under binding Massachusetts law. In *Shepard v. Finance Assoc. of Auburn, Inc.,* 366 Mass. 182 (1974), the Supreme Judicial Court held that MCCCDA bars claims based on loans that have been refinanced or otherwise paid off. The Magistrate Judge inexplicitly disregarded *Shepard* as "case specific" and inapplicable. (R&R II at 7)

In *Shepard*, the plaintiff sought to rescind and to recover finance charges for three loans (all for the same property) based on defective notice given at three separate closings occurring over a period of several months. As the Magistrate Judge acknowledged, the plaintiff purported to rescind the "transactions" and claimed that the "loans" were void. (R&R II at 5)[19] The SJC held that rescission was appropriate for the third loan, and explained the crucial date for deciding whether the loan could be rescinded was the date the first two notes were refinanced and the new consolidated note signed, *id*. at 189; because the first two loans were discharged on the date of refinance, only the third loan was relevant to the issue of rescission. The SJC also refused to permit the plaintiff to recover in civil liability for the refinanced loans, which "were discharged long before this litigation began." *Id*. at 605. The Magistrate Judge read *Shepard* narrowly, to only apply to civil liability and not to rescission. But that construction ignored the plaintiff's effort in Shepard to rescind all three loans, and the Supreme Judicial Court's finding that only the third loan could be rescinded. Moreover, the Magistrate Judge unnecessarily distinguished *Shepard* as limited to the "unique facts of the case before it" (R&R II at 7), but none of those facts, such as whether any payment had been made on the refinanced loans and the mental health of the borrower, are relevant to determine whether rescission is appropriate under MCCCDA.[20]

A federal court is not free to disregard state law. *Shepard* makes clear that, under the MCCCDA, a loan that has been refinanced (such as the two refinanced loans in that case) may not subsequently be rescinded. At a minimum, in refusing to permit civil liability on refinanced loans – which even the Magistrate Judge acknowledges is a holding of the Supreme Judicial

---

[19]    Contrary to the Magistrate Judge's reading of the case, nothing in the opinion suggests the borrower was only attempting to rescind the third mortgage.

[20]    Moreover, if these facts are indeed relevant to whether a loan is rescindable under MCCCDA, then class certification is inappropriate because the need for fact-specific analysis means that individual issues will predominate over common ones.

Court – *Shepard* makes clear that the MCCCDA is not meant to visit adverse liability in connection with loans that no longer exist.[21]

And *Shepard* is in line with the majority of federal courts that have concluded a refinanced loan cannot be rescinded because there is nothing left to rescind.  *See, e.g., King v. California*, 784 F.2d 910, 913 (9th Cir. 1986) (denying rescission in TILA action where mortgages were refinanced and superceded); *Jenkins v. Mercantile Mortgage Co.*, 231 F.Supp.2d 737, 745 (N.D. Ill. 2002) (rejecting rescission claim for mortgage that was paid off and, thus no longer existed); *Mijo v. Avco Fin. Servs. of Hawaii, Inc.*, 937 F.2d 613, 613 (9th Cir. 1991) (holding right of rescission extinguished upon refinancing of mortgage) (unpublished opinion).[22]

Moreover, the policy reasons relied upon by the Magistrate Judge in recommending that refinanced loans may be rescinded do not justify expansion of MCCCDA liability in this case. While one policy of MCCCDA is to ensure that borrowers receive correct information (R&R II at 12), that policy is already furthered by the substantial liability imposed by the threat of rescission for active loans.  And, that policy was found to be insufficient by the Shepard court in permitting civil liability to arise under identical circumstances.

Further, the Magistrate Judge's reliance on the well-worn statement that a consumer protection statute "is to be liberally construed," does not justify the expansion of MCCCDA

---

[21]    While not binding on any court, if a federal court does not find any state law directly on point, it is entirely appropriate to refer to state law treatises to resolve the state law issues.  The Magistrate Judge nonetheless took issue with First Horizon's reliance on the Massachusetts Practice Series, even though it is a series of treatises on Massachusetts law written by experts in the field.  (R&R II at 8)  The practice guide instructs: ""[i]f the consumer pays off the mortgage loan before receiving all material truth in lending disclosures from the lender, the right of rescission is lost for the obvious reason that the loan no longer exists so there is nothing to rescind."  35A Mass. Practice § 14:19 (West Supp. 2004)

[22]    The *McIntosh* court did find that borrowers with paid off loans could be permitted to rescind, but the court came to that conclusion because the plaintiffs' "damages have <u>not</u> been fully reimbursed."  *McIntosh*, 215 F.R.D. at 31 (emphasis in original).  The court distinguished other cases where borrowers had already received reimbursement for their damages, and found that a rescission claim was a permissible vehicle for the *McIntosh* plaintiffs to recover their actual prepayment penalty damages.  *Id.*  As there is no evidence of any actual damages in this case, the *McIntosh* reasoning is simply inapplicable.

liability beyond the logic or policy of the statute. Once again, the *Shepard* court construed the same statute, and in a situation where the consumer was mentally compromised, and still found that it should not apply to refinanced loans. The contrary construction recommended by the Magistrate Judge unfairly favors the borrower but does not further the policies of MCCCDA.

FIRST HORIZON HOME LOAN CORPORATION,

By its attorneys,


_____/s/ Julie M. Wade_____
U. Gwyn Williams (BBO # 565181)
Julie M. Wade (BBO #)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Thomas M. Hefferon (BBO # 548289)
GOODWIN PROCTER LLP
901 New York Ave., NW
Washington, D.C. 20001
(202) 346-4000

Dated: January 23, 2006

LIBA/1668413.2

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 23, 2006.

_____*/s/ Julie M. Wade*_____
Julie M. Wade