**IN THE UNITED STATES DISTRICT COURT
FOR  DISTRICT OF MASSACHUSETTS**

RALPH G. MCKENNA,                          )
GLENROY A. DEANE,                          )
ILENE WILGOREN-DEANE,                      )
CHRISTOPHER J. LILLIE; and                 )
LAURIE A. LILLIE;                          )
                                           )
                 Plaintiffs,                )         04-10370-RCL
                                           )
          v.                                )
                                           )
FIRST HORIZON HOME LOAN                    )
CORPORATION,                               )
                                           )
            Defendant.                   )

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S RULE 72(a) OBJECTIONS**

        Plaintiffs respectfully submit this response in opposition to defendant First Horizon

Home Loan Corporation's Rule 72(a) objections to the Report and Recommendations on Plaintiffs'

Motion for Class Certification and Defendant's Motion for Clarification.    Plaintiffs submit that

Magistrate Judge Dein's Reports and Recommendations on Plaintiffs' Motion for Class

Certification[1] and on Defendant's Motion for Clarification[2] were correct and should be adopted by

this Court.

**I.      INTRODUCTION AND RELEVANT FACTS**

        The facts of this case are not in dispute.  In 2003, plaintiffs McKenna and Lillie

---

    [1]  *McKenna, et al. v. First Horizon Home Loan Corporation*, 04-10370 (D. Mass. November 10, 2005), Report and Recommendation on Plaintiffs' Motion for Class Certification,  referred to herein as "(R&R I)".

    [2]  *McKenna, et al. v. First Horizon Home Loan Corporation*, 04-10370 (D. Mass. January 6, 2006), Report and Recommendation on Defendant's Motion to Clarify Report and Recommendation on Plaintiffs' for Class Certification,  referred to herein as "(R&R II)".

refinanced their home mortgages through First Horizon Home Loan Corporation ("First Horizon"). Each plaintiff signed or received a Notice of Right to Cancel ("Notice"). Each Notice states "For new transactions involving us, if you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit. It will not affect the amount that you presently owe or the mortgage lien, or security interest we already have on your home."

Plaintiffs alleged that this Notice was confusing and violated the Massachusetts Consumer Credit Cost Disclosure Act, Mass. G.L. ch. 140D ("MCCCDA") because there was no explanation of what a "new transaction involving us" might be. The limited right to rescind, applicable to the additional amount of the new loan, applies where a loan issued by creditor A is refinanced by creditor A. This distinction is not apparent on First Horizon's form Notice.

Plaintiffs have given notice of their election to rescind, which First Horizon has rejected. Plaintiffs sought certification of a class of Massachusetts borrowers who were also recipients of the same Notice. The relief plaintiffs sought on behalf of the class is a declaration of the right to rescind.

The purpose of seeking a declaration of the right to rescind is to give class members notice. The declaration is simply a notice of the existence of their rights that should have been clearly and conspicuously presented to them at their closings. Defendant's garbled Notice prevented meaningful disclosure and consequently, deprived class members of their ability to make an informed decision whether to rescind their loans. Upon receipt of a notice detailing their rights, class members then have the choice to determine whether or not they will exercise their right to rescind. Plaintiffs merely seek that class members be given the choice they were deprived of at their closings.

Magistrate Dein certified a declaratory relief class of Massachusetts borrowers. The class definition was further refined in a subsequent R&R.

## II.     STANDARD OF REVIEW

First Horizon has incorrectly stated the standard of review for its Fed. R. Civ. P. 72(a) objection to R&R I and R&R II.  The standard of review for nondispositive matters pursuant to Fed. R. Civ. P. 72(a) is *clearly erroneous or contrary to law*.  28 U.S.C. § 636(b)(1)(A). First Horizon improperly stated the standard of review to be *de novo*; that is the standard of review under Fed. R. Civ. P. 72(b).

## III.     THE MCCCDA PERMITS DECLARATORY RELIEF

First Horizon argues that the MCCCDA only provides for damages classes and not declaratory rescission classes.  This argument is without merit.  First Horizon correctly states that § 1640 provides for statutory damages, while § 1635(g) specifically provides for rescission.  Mass. G.L. ch. 140D § 10 and 140D § 32, are the Massachusetts counterparts to TILA.

MCCCDA is modeled after the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA").  *In re Fidler*, 226 B.R. 734 (Bankr. D. Mass. 1998); *In re Tavares*, 298 B.R. 195, 204 (Bankr. D. Mass. 2003); *Farnsworth v. Reyes*, 1999 Mass. Super. LEXIS 55, at * 11 (Mass. 1999); *In re Desrosiers*, 212 B.R. 716, 722 (Bankr. D. Mass. 1997). "Both acts provide that a borrower whose loan is secured by his principal dwelling and who has been denied the requisite disclosures may rescind the loan transaction."  *In re Fidler,* 226 B.R. at 736 citing § 1635 and Mass. G. L. 140D, § 10.  Although Massachusetts has exempted from the TILA, Massachusetts residents are still entitled to relief via the state equivalent of the federal statute.

Since MCCCDA is modeled after TILA, TILA opinions are helpful in understanding

3

similar provisions in the MCCCDA.  15 U.S.C. § 1633; *Fluehman v. Assocs. Fin. Servs.*, 2002 U.S. Dist. LEXIS 5755 at *9, n.2 (D. Mass. 2002).  In revising TILA, Congress expressly recognized the propriety of class actions under TILA by providing special damage provisions and criteria for TILA class action cases in 15 U.S.C. § 1640(a).  In 1976, Congress increased the statutory damages for class actions in 15 U.S.C. § 1640.  Pub. L. 94-240 (90 Stat. 257).  The legislative history of the amendment clearly states:

> The chief enforcement tool will continue to be private actions for actual damages and civil penalties.  Much of the testimony received in the hearings, and much of the debate in Subcommittee and Committee centered on the adequacy of the recovery ceiling for civil penalties in class actions...

Sen. R. No. 94-590, 94th Cong., 2d Sess., p. 8, 1976 USCCAN 438.

In revising 15 U.S.C. § 1640 to expressly refer to class actions, Congress recognized that "potential class action liability is an important encouragement to the voluntary compliance which is necessary to insure nationwide adherence to uniform disclosure."  *Bantolina v. Aloha Motors*, 419 F.Supp. 1116, 1120 (D. Haw. 1976).  "The possibility of class action exposure is essential to the prophylactic intent of the Act, and is necessary to elevate truth-in-lending lawsuits from the ineffective nuisance category to the type of suit which has enough sting to insure that management will strive with diligence to achieve compliance."  *Id.* at 1120 citing the 1972 Federal Reserve Board Annual Report on TILA.

Likewise, MCCCDA, Mass. G.L. 140D, § 32(a)(2)(b), provides for class actions. This provision is nearly identical to TILA.  Massachusetts has exemptions from the disclosure requirements of TILA.  *Bizier v. Globe Fin. Servs., Inc.*, 654 F.2d 1, 2 (1st Cir. 1981).  However, "TILA cases brought in Massachusetts are not 'exempted' from the provision of the Federal TILA which limits the damages recoverable in a class action suit."  *Kaminski v. Shawmut Credit Union*,

416 F.Supp. 1119 (D. Mass. 1976). Additionally, "[i]f a lender fails to make the required disclosure and fails to provide notice of the right to rescind, the consumer may exercise his or her right to rescind." *In re Maxwell*, 281 B.R. 101, 124 (Bankr. D. Mass. 2002).

Numerous declaratory rescission class cases have been certified by Massachusetts Federal Courts. *McIntosh v. Irwin Union Bank & Trust, Co.*, 215 F.R.D. 26 (D. Mass. 2003) (granting class certification where plaintiffs seek a declaratory judgment that the class members are entitled to rescind); *Rodrigues v. Members Mortgage Co., Inc.*, 2005 U.S. Dist. LEXIS 2159 (D. Mass. Feb. 3, 2005), *petition for leave to appeal denied,* No. 05-8001 (1ˢᵗ Cir. July 26, 2005) (granting class certification where plaintiffs seek a declaratory judgment that the class members are entitled to rescind).

First Horizon argues that § 1635 and Mass. G. L. 140D, § 10's silence on class actions should be construed as an exclusion to bring a declaratory rescission class. (Obj. pp. 5-8) However, this position is without merit, especially in light of the fact that several declaratory rescission classes have previously been granted. *McIntosh*, *supra*; *Rodrigues, supra*; *Williams v. Empire Funding Corp.*, 183 F.R.D. 428 (E.D. Pa. 1998); *Tower v. Moss*, 625 F.2d 1161 (5ᵗʰ Cir. 1980). "This court does not find it significant that Congress expressly referred to class actions in connection with setting a damages cap, but did not make a comparable amendment to the rescission statute." (R&R I, p. 15).

First Horizon argues that the Court failed to follow a rule of statutory construction in reaching this decision. First Horizon is wrong. In *Pastore v. Medford Sav. Bank*, 186 B.R. 553, 555 (D. Mass. 1995), this Court quoted *Middlesex Cty. Sewerage Authority v. Sea Clammers*, 453 U. S. 1, 14-15 (1981) in stating a canon of statutory construction. "In the absence of strong indicia

of a contrary congressional intent, [a court should] conclude that Congress provided precisely the remedies it considered appropriate." In this case, there is no "conflict" with this instruction because it is clear that the congressional intent was only to allow states to exempt from TILA's disclosure requirements.

There is strong support for the position that the right to rescind under § 1635 is a remedy that is not affected by a state exemption. In *Ives v. W.T. Grant Co.*, 522 F.2d 749 (2d Cir. 1975), the Second Circuit held that the Board's exemption power under § 1633 only applies to *requirements* of the law, not to *remedies*. After reviewing the legislative history of this section in detail, the Court concluded:

> But the civil liability section of the federal Truth in Lending law, 15 U.S.C. § 1640, is not a requirement, it is a remedy. As such, it was not intended to be eliminated by any exemption granted under section 1633. Congress apparently did not want federal agencies, such as the Federal Reserve Board and the Federal Trade Commission, to intrude upon the state's operation of its own truth in lending law if that law warranted the grant of an exemption. The limited exemption of Connecticut by the Board here insures that no such intrusion will occur ... . Federal court jurisdiction, on the other hand, is not the type of federal involvement that interferes with a state's control of its own law.

*Ives*, 522 F.2d at 755. The First Circuit cited *Ives* favorably in *Bizier* v. *Globe Financial Services, Inc.*, 654 F.2d at 2.

The rescission provisions under TILA, § 1635 and Mass. G.L. ch. 140D § 10, contain both requirements and remedies. For example, both require notice to the borrower of the right to rescind. 15 U.S.C. § 1635(a); Mass. G.L. ch. 140D § 10(a). Since Massachusetts did not adopt its own unique disclosure requirements for the rescission notice, to satisfy the rescission notice requirements under Massachusetts law, a creditor must provide a notice that conforms with the model federal forms in Appendix H of Regulation Z as adopted by the Federal Reserve Board. 209

6

C.M.R. § 32.23(2)(a)(5). Both § 1635 and Mass. G.L. ch. 140D § 10 contain remedies - specifically, the borrower's right to rescind the transaction under certain circumstances. This potent remedy is available even after the usual three-day period for the most egregious violations. That rescission is a remedy is confirmed by Mass. G.L. ch. 140D § 32(f), which refers to "any remedy permitted by section ten." Compare to similar provision in § 1640(g) ("any remedy permitted by section 1635." Since rescission is a remedy rather than a requirement, it is not displaced by the Massachusetts exemption, but continues to be enforceable in federal court.

The reference to "rescission under section ten" in Mass. G.L. ch. 140D § 32(a)(3) is better interpreted as *incorporating* the right to rescind into Mass. G.L. ch. 140D § 32(a), rather than excluding it from that section. This interpretation is more consistent with the Second Circuit's decision in *Ives*. *Ives* stresses that Congress and the Federal Reserve Board wanted to preserve the borrower's civil remedies in any states that obtained an exemption. This interpretation is also mandated by the principle that consumer protection statutes, like the MCCCDA must be liberally construed.[3] For these reasons, the interpretation of Mass. G.L. ch. 140D § 32(a)(3) that is most consistent with Congressional intent is that it incorporates the right of rescission.

Since other courts have held that appropriate relief under TILA includes a declaration that class members who desire to rescind a transaction have a continuing right to do so, the same reasoning should apply to MCCCDA declaratory rescission classes.[4]

---

[3]  *Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 171 (1st Cir. 2004) (consumer protection statutes are to be liberally construed in favor of consumer); *Bizier v. Globe Financial Services, Inc.*, 654 F.2d at 3. *Accord, Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 621 (6thCir. 2002); *Rossman v. Fleet Bank*, 280 F.3d 384, 390 (3d Cir. 2002).

[4]  *Williams,* 183 F.R.D. at 435-36 (E.D. Pa. 1998) ("there is nothing in the language of TILA which precludes the use of the class action mechanism provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission"); *Tower; supra* (class certified under TILA with option to rescind offered after settlement of common claim); *Vasquez v. Superior Court of San Joaquin County*, 4 Cal.3d 800, 484 P.2d 964 (1971) (class action

Magistrate Dein's findings of fact and conclusions of law are well supported by the case law of this jurisdiction. Magistrate Dein's findings are based on the Court's assessment of *Rodrigues*, *supra*; *McIntosh*, *supra*; *Latham v. Residential Loan Ctrs. of America, Inc.*, and *Williams*, *supra*. (R&R I pp. 13-16). First Horizon has failed to demonstrate that any mistake was made.

## IV.     A DECLARATION OF THE RIGHT TO RESCIND IS AVAILABLE TO A CLASS

First Horizon argues that rescission is a personal remedy and again relies on *James v. Home Constr. Co.*, 621 F.2d 727 (5th Cir. 1980), to support its argument. (Obj. p. 8) However, *James* is plainly distinguishable because it sought actual rescission, whereas here Magistrate Dein certified a class which seeks a declaration of the right to rescind. First Horizon argues that "this is a distinction without a difference." (Obj. p. 9, n. 9) However, the rationale behind the holding of *James* was that the rescission process on a class basis did not offer the creditor the opportunity to return finance charges and cancel the security interest in a timely manner in accordance with 15 U.S.C. § 1635(b). Therefore, using a declaration of the right to rescind alleviates the *James*' court's concern that creditors would not have an adequate opportunity to respond to those class members who do choose to exercise their right to rescind.

---

seeking declaration that class members were entitled to rescind contracts for the purchase of a food freezer and a frozen food package); *Richmond v. Dart Industries, Inc.*, 29 Cal.3d 462, 629 P.2d 23 (1981) (class action sought declaration that class members had right to rescind land purchase contracts); *Bryan v. Amrep Corp.*, 429 F.Supp. 313 (S.D.N.Y. 1977) (class certified in case arising under the anti-fraud provisions of Interstate Land Sales Full Disclosures Act despite objection that relief sought for each class member was either damages or rescission, as that person might elect); *Olive v. Graceland Sales Corp.*, 293 A.2d 658 (1982) (permitting a class action for relief including rescission to be maintained, as long as each member was specifically asked if he or she desired rescission); *Tcherepnin v. Franz*, 461 F.2d 544 (7th Cir. 1972) (affirming class-wide judgment providing that "the plaintiffs and their class had been defrauded within the meaning of the anti-fraud provisions of the securities exchange act" and that "[a]s defrauded purchasers of securities, they had a right to rescind their purchase agreements and, upon the rescission, were entitled to assert a claim against [certain funds]").

A declaration of rescission is the proper method to use to inform class members of their right to rescind.  Upon receipt of that notice, class members then are able to decide whether they will rescind their loans.  The sending of the notice of the right to rescind does not by itself trigger rescission.  Other steps need to be taken to exercise that right.[5]

Additionally, *Murry v. America's Mortgage Banc, Inc.*, 2005 WL 1323364 (N.D. Ill. May 5, 2005), and *Jefferson v. Security Pac. Fin. Servs.*, 161 F.R.D. 63, 70 (N.D. Ill. 1995), also relied on by defendant, are not binding precedent and are merely persuasive authority.

Notably, *Nelson v. United Credit Plan, Inc.*, 77 F.R.D. 54 (E.D. La. 1978), also relied on by First Horizon, strictly sought rescission on behalf of a class and not a declaration of entitlement to rescission.  Moreover, *Nelson* also denied class certification because the adequacy requirement was not met.  *Id*. at 57.

Finally, First Horizon argues that a borrower may not be better off as a result of plaintiffs bringing this suit on his/her behalf.  (Obj. p. 9) On the contrary, each class member had a right to cancel which First Horizon deprived them of by issuing a faulty Notice. Giving class members the declaration of the right to rescind is simply reinstating a right to them that they originally had and giving them an opportunity to exercise it.   The only party who would be better off if no borrowers rescinded is First Horizon.

## V.    CLASS MEMBERS HAVE STANDING

First Horizon argues that Magistrate Dein did not pay sufficient attention to the issue of standing in R&R I.  The Court did pay sufficient attention to this issue; First Horizon

---

[5]   See also Quern v. Jordan, 440 U.S. 332, 347-48 (1979) (In welfare benefits case involving 11th Amendment arguments, the Court held notice to the class simply informs class members of their rights.  "Whether a recipient of notice decides to take advantage of those available state procedures is left completely to the discretion of that particular class member; the federal court plays no role in that decision.")

simply does not agree with what the Court held.   The Court held that "Section 10 of the CCCDA establishes an enforceable right to the clear and conspicuous disclosure of the right to rescind....Therefore, the proposed class members who received the allegedly unlawful notice have standing to sue for improper disclosure under the CCCDA." (R&R I, pp. 14, 17). The Court found the filing of the class action complaint sufficient to constitute notice of the right to rescind. This holding is supported by *McIntosh*, *supra*; *Elliott v. ITT Corp.*, 764 F.Supp. 102, 105-06 (N.D. Ill. 1991); *Taylor v. Domestic Remodeling*, 97 F.3d 96, 99-100 (5th Cir. 1996); *In re Rodrigues*, 278 B.R. 683, 689 (Bankr. D.R.I. 2002).

The injury the borrowers suffered that gives them standing is First Horizon's violation of the MCCCDA by providing an inadequate Notice.  It is not necessary that the borrowers exercise their right to rescind to have standing. All the rights of the class members were protected when the class action complaint was filed.  *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983); *Appleton Electric Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 610 (7th Cir. 1980).  The filing of the class action complaint is an expression of each class members declaration of entitlement to rescission. It is not necessary that a <u>judgment</u> of rescission be entered within 4 years pursuant to MCCCDA.

Additionally, all of the plaintiffs in this case have submitted written notices of rescission to defendant.  They have alleged in their amended complaint their intentions of seeking a declaration of rescission both individually and on behalf of a class of similarly situated persons, who all received similarly defective Notices at their closings.  Certainly, at least some of the class members will exercise their right to rescind, upon receipt of notice.

First Horizon argues that the Magistrate's references to those "potentially injured" borrowers acknowledges that there are class members who have not suffered any actual injury. However, when this phrase is read in the context of the opinion as a whole, it is clear that the Court simply meant to refer to the more narrower class certified. (Compare "[T]his court also finds that the proposed class is much too broad in that it includes persons for whom the challenged notice admittedly is not inaccurate, as well as those who are not entitled to rescission as a matter of law." (R&R I, pp. 2-3) with "[I]n view of the fact that the class has been limited to only those who were potentially injured" (R&R I, p. 16)).

First Horizon's efforts to use *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994) to illustrate lack of standing are disingenuous. In *Highsmith*, the plaintiff alleged, *inter alia*, that the disclosure of the early termination charges in his lease was different than the practical application of the early termination charges calculated. The Seventh Circuit held that the plaintiff had stated a claim on his disclosure violations for which relief could be granted. *Id.* at 438-39.

Magistrate Dein had found *Highsmith* to support standing in this case because the disclosure violations at issue in that case were found to have been sufficiently plead by plaintiffs, and the Seventh Circuit did not address standing as it related to those disclosure violations, presumably because it was unquestioned. (R&R I, p. 17, n.5). First Horizon, however, focuses on the part of the opinion in *Highsmith* dealing with the validity of the early termination clause under state and federal law and addressing standing to assert those causes of action. Notably, *Highsmith* is an appeal of a ruling on a motion to dismiss, dealing with the sufficiency of plaintiffs' complaint. In this case, on a motion for class certification, inquiry into the validity of the declaratory relief sought by plaintiffs would be a decision on the merits, which is prohibited when ruling on a motion

for class certification because a court only needs to consider if Fed. R. Civ. P. 23 requirements have been met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 1778-78 (1974).

## VI.  CLASS CERTIFICATION IS NOT INEQUITABLE AND IS A SUPERIOR METHOD OF ADJUDICATING THIS CONTROVERSY

### A.  Class Certification is Not Inequitable

First Horizon argues that the liability it faces in the event this Court adopts R&R I is inequitable.  This argument is untenable.  Providing a defective Notice is equivalent to forcing a waiver of a borrower's rights.  This practice essentially inhibits the borrower from knowingly deciding whether or not to rescind, because it does not accurately disclose the borrower's rights.  However, instead of considering the borrower's rights, First Horizon is only concerned about its balance sheet.   It would be unfair to permit First Horizon to violate the law and keep the interest they have collected and give consumers less than what they are statutorily entitled to receive.

First Horizon labels its potential liability in this case as "crushing" and "catastrophic," yet this argument is without merit when evaluated against First Horizon's proclamations on its website: "First Horizon Home Loans [i]s one of the nation's leading home financing companies."  (*Exhibit A*); "First Horizon Home Loans is a full-service mortgage company ranking among the nation's largest in both origination and servicing....First Horizon Home Loans (which originated over $51 billion in loans in 2003), and as of December 31, 2003, held a servicing portfolio over $68.9 billion."  (*Exhibit B*).  Moreover, First Horizon's Form 10-Q[6] for the quarterly period ending September 30, 2005 shows a net worth in excess of $2 billion. (*Exhibit C*) First Horizon is by no means of modest net worth.

---

[6] "First Horizon Home Loan Corporation is a part of the First Horizon National Corporation family and is a wholly owned subsidiary of First Tennessee Bank National Association, whose parent company is First Horizon National Corporation..."  (*Exhibit A*)

First Horizon's potential liability in this rescission case is less than 10% of its net worth. "[W]hat might be 'ruinous' to a company of modest size might be merely unpleasant to a behemoth." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000). Certification of a class does not create an irresistible pressure to settle for a corporation like First Horizon. First Horizon has not made any attempts to even discuss settlement with plaintiffs' counsel at any stage during this litigation, even after Magistrate Dein's rulings.

Magistrate Dein specifically addressed First Horizon's potential liability in certifying this class and held that the balance was struck in favor of policy considerations in enforcing consumer protection statutes like the MCCCDA. "[A]lthough First Horizon could face significant liability if the proposed class members are able to establish a right to rescind, that possibility must be balanced against the policy considerations underlying Rule 23(b)(3) and the CCCDA." (R&R I, p. 23). As the Seventh Circuit recently held:

> The reason that damages can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person, 15 U.S.C. § 1681n(a)(1)(B), combined with GMACM's decision to obtain the credit scores of more than a million persons....[After a class is certified,] a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently – so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims – has little to recommend it.

*Murray v. GMAC Mortgage*, 2006 U.S. App. LEXIS 1028, at *10-12 (7th Cir. Jan. 17, 2006).

Creditors are required under MCCCDA and TILA to provide clear and conspicuous disclosures. Using a garbled form of Notice is a disclosure violation. Any money returned to persons who exercise the right is only a return of what the law provides in the first place. "The customers, in fact, were supposed to have the right to rescind under the statute – it is not a right being created by this litigation." (R&R I, p. 23).

Next, First Horizon argues that there should be limited or no liability for what they have styled as hypertechnical statutory violations. However, the First Circuit has disagreed with defendant's argument stating "[A]ny violation of TILA, regardless of the technical nature of the violation, must result in a finding of liability against the lender." *Barnes v. Fleet National Bank, N.A.*, 370 F.3d 164, 171 (1st Cir. 2004).

It is not contrary to legislative intent to certify a class that seeks a declaration of the right to rescind. Class actions under TILA and the MCCCDA can seek equitable relief in the form of a declaration of the right to rescind. There is no reason to resort to the canons of construction to resolve this "dispute." The cap the lesser of $500,000 or 1% of the defendant's net worth First Horizon continues to refer to throughout its Objection applies *only* to statutory damages in a class action case. It does not apply to actual damages and does not apply to rescission cases. "This court does not find it significant that Congress expressly referred to class actions in connection with setting a damages cap, but did not make a comparable amendment to the rescission statute." (R&R I, p. 15).

## B. Superiority Exists

First Horizon challenges the Magistrate's finding of superiority by arguing that there is a potential for recovery of higher damages in an individual case as opposed to the recovery in a class action. This is not the case here. The recovery here is declaratory and the receipt of a lawful Notice. Each class member would then have the right to elect rescission. If that election is exercised, it is not a part of this case.

The superiority requirement is also met because many borrowers do not even know that their rights have been violated. This point is further illustrated by First Horizon's

demonstration that in the past five years only 26 lawsuits seeking rescission were filed in the First Circuit.  (Obj. pp. 5, 16)  These 26 cases filed in the past five years in the First Circuit account for less than one percent of the amount of loans First Horizon originated in Massachusetts alone during the time period at issue in this case, April, 2003-February, 2004.  (26/8,900=.0029)  Moreover, any court reviewing Fed. R. Civ. P. 23 requirements must determine the "best" available method for the "poor or uninformed to enforce their rights, and [consider] the improbability that large numbers of class members would possess the initiative to litigate individually."  *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).  Magistrate Dein has done so here.

Additionally, through the class action device a group of individuals are able to receive the benefits of counsel without directly paying counsel attorney's fees and costs.  Most importantly, efficiency is a primary concern in determining whether a class action is a superior method of resolving the controversy.  Magistrate Dein agreed with this in holding:  "One of the purposes of Rule 23 is to 'achieve economies of time, effort, and expense, and promote. . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. . . . In light of the common issues in this case, class certification will further these goals.'"  (R&R I, p. 21) (citations omitted).  Ironically, what First Horizon seems to be arguing is that the inefficiencies and inconsistencies of multiple suits would be more beneficial.  Such logic is nonsensical, especially in the context of dealing with potentially 8,900 individual lawsuits in Massachusetts.

## VII.    *RODRIGUES* AND *MCINTOSH* SHOULD NOT BE LIMITED TO THEIR FACTS

First Horizon argues that Magistrate Dein should not have relied on *Rodrigues* and *McIntosh* in certifying this class, and instead should have issued an inconsistent opinion with other cases in this District and followed a handful of non-controlling cases. Plaintiffs assert that *Rodrigues* and *McIntosh* are persuasive authorities that Magistrate Dein properly considered in ruling on plaintiffs' motion for class certification.

First Horizon departs from what it had argued in its opposition to class certification brief. In its opposition, First Horizon argued that the *McIntosh* Court erred in certifying a declaratory rescission class by rejecting what the Fifth Circuit held in *James*. Now defendant argues that *McIntosh* supports its position because the court limited the class definition to those "actually injured" by paying the prepayment penalty at issue. Regardless of what position First Horizon takes with *McIntosh*, it should be followed here.

The *McIntosh* Court specifically addressed the issue of whether paying off a loan extinguishes rescission rights and in holding, specifically relied on 12 C.F.R. § 226.23(a)(3) which does "not include the payment in full of the loan" as an event that terminates ones right of rescission. *McIntosh*, 215 F.R.D. at 31. The plaintiffs in *McIntosh,* already refinanced their loan prior to rescinding and filing suit. The *McIntosh* plaintiffs also had actual damages because they had paid a prepayment penalty when they refinanced their loan. The *McIntosh* plaintiffs also paid interest and finance charges on their loan. Those actual damages were not fully reimbursed, similar to the plaintiffs in this case, whose actual damages include with rescission a refund of all interest and finance charges paid. Based on *McIntosh*, defendant is simply wrong when it argues that those borrowers were not "harmed" and did not "suffer a loss" by receipt of an inadequate Notice. These

borrowers were deprived because they received a confusing Notice regarding the ability to exercise their right to rescind. That is a cognizable injury.

Magistrate Dein was not concerned about the size of the class in this case. Comparatively, this class is larger to those certified in *McIntosh* and *Rodrigues*. However, the class size in *Rodrigues* was uncertain at the time of class certification as defendant Plymouth Savings Bank merely stipulated to numerosity in that case without offering precise numbers. First Horizon has stated that approximately 8,900 Massachusetts loans were at issue. However, First Horizon has not confirmed that all of the 8,900 loans are included in the class definition and not excluded because of their bankruptcies (chapter 7s or confirmed chapter 13s) or foreclosure sales which would terminate their rescission rights. Moreover, there is no guarantee that all persons will rescind. "Whether the individual plaintiffs will actually seek to rescind remains an open question." (R&R I, p. 23). In fact, the low response rates in most class actions to class notices, and the results of the *Tower* case suggest that there is no danger of a devastating result to First Horizon caused by class certification in this case.

## VIII.   COMMON ISSUES PREDOMINATE

First Horizon incorrectly argues that individual inquiry is necessary to determine each borrower's subjective understanding of the Notice at issue. This position lacks merit and is unsupported by case law. "An objective standard is used to determine violations of the TILA, based on the representations contained in the relevant disclosure documents; it is unnecessary to inquire as to the subjective deception or misunderstanding of particular consumers....We cannot allow the appellees to evade the requirements of the TILA and Regulation Z on the fortuity that

some consumers are better able to evaluate the information than others." *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir. 1982).[7]

First Horizon's reliance on *Mechanics Nat'l Bank of Worcester v. Killeen*, 377 Mass. 100 (1979), and *Smith v. Highland Bank*, 108 F.3d 1325 (11th Cir. 1997) is misplaced. Both cases came before each court on appeals on rulings on motions for summary judgment, which decide merits issues, not issues regarding the sufficiency of a class meeting Rule 23 requirements. If First Horizon wanted the outstanding legal issues resolved first, it should have filed a motion for summary judgment. Magistrate Dein properly focused on only the Rule 23 requirements which explains the appropriateness of the statement "[i]t is not clear whether the events surrounding the circumstances of each closing where the Notice was signed will be relevant to the instant litigation." (R&R I, p. 19). The declaration of the right to elect rescission gives class members the choice to exercise this remedy and gives First Horizon an opportunity to respond to each class member who chooses to rescind. Plaintiffs agree that First Horizon has defenses to those borrowers who bankruptcies (chapter 7s or confirmed chapter 13s) or foreclosure sales terminated their rescission rights; those persons should be excluded from the class.

The quotes First Horizons plucks out of *Killeen* and *Smith* should be taken in context of the full opinion. In *Killeen*, First Horizon tries to illustrate that the SJC held that the borrower's subjective understanding of the transaction was relevant to determining whether the borrower retained a right to rescind pursuant to the MCCCDA. Later in that same paragraph the

---

[7] See *Wright v. Tower Loan of Mississippi, Inc.*, 679 F.2d 436, 445 (5th Cir. 1982); *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142 (11th Cir. 1994); *Diaz v. Westgate Lincoln Mercury*, 1994 U.S. Dist. LEXIS 16300 (N.D. Ill. Nov. 14, 1994); *Wiggins v. Avco Fin. Servs.*, 62 F.Supp.2d 90 (D.D.C. 1999); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D. Tex. 2000); *Helton v. World Wide Fin. Servs.*, 2003 U.S. Dist. LEXIS 26156 (E.D. Mich. 2003). *See also Murray v. GMAC Mortgage*, 2006 U.S. App. LEXIS 1028, at *15-18 (7th Cir. Jan. 17, 2006) (Objective standard used to determine violation of FCRA).

convenient omission of "the name of the lender was disclosed, and thus relief under G.L. c.

140C, § 10(b), is not available." does not illustrate that the borrower's subjective understanding

was examined but rather supports plaintiffs' position that the SJC looked to the documents to

determine if there was a violation of the MCCCDA. *Killeen*, 377 Mass. at 112. Likewise in

*Smith*, the "totality of the circumstances" the Court is referring to is based solely on an objective

review of the documents read together. *Smith*, 108 F.3d at 1327. There is no mention or

consideration of the borrower's understanding of what each document means.

Predominance exists because the violation at issue is identical for each consumer,

inadequate Notice. The substance of each Notice is identical and that is the basis for the

violation of the MCCCDA. "Thus, '[t]he common factual basis is found in the terms of the

[Notice], which are identical for all class members.'" (R&R I, p. 18) (internal citation omitted).

*See also Rodrigues*, 226 F.R.D. at 153 (class certified met predominance requirement because all

consumer transactions involved the same inadequate Notice). Standardized documents are used

to give "a consistent uniform interpretation." *Sharon Steel Corp. v. Chase Manhattan Bank*, 691

F.3d 1039, 1048 (2d Cir. 1982) *cert. denied*, 460 U.S. 1012 (1983); *Leverso v. Southtrust Bank*,

18 F.3d 1527 (11th Cir. 1994). Uniform documents and closing instructions are issued to ensure

that an intense, fact-based analysis need not be conducted in every instance but that uniform

procedures can be relied upon for compliance. To argue otherwise would be akin to arguing that

additional oral or written instructions could change the substance of each agreement, so First

Horizon would never be certain of what its rights or its borrower's rights would be in every

transaction. Such construction could devastate a business and result in high and uncertain

liability for such a massive corporation.

IX.     **THE CLASS DEFINITION MUST STAND**

The class certified in R&R I and more specifically defined in R&R II must stand. First Horizon filed a motion to clarify the class definition as an attempt to restrict the class definition.  In its motion, First Horizon "request[ed that] the court clarify that the quoted portion of the class definition exclude[] from the class those whose loans have been extinguished by a refinance or pay off."  (Def. Motion, p. 1) The quoted portion of the class definition referred to is "any person whose legal right to rescind has been extinguished for any reason."  (R&R I, pp. 3, 27).  First Horizon now argues that Magistrate Dein made an error in ruling on the merits in defining the class, despite the fact that much of First Horizon's Objection is asking this Court to make merits decisions on plaintiffs' motion for class certification.  Nevertheless, Magistrate Dein did not make a merits decision in defining and refining the class.[8]

The class as defined limits inclusion to those whose legal right to rescind has not been extinguished.  First Horizon requested that those persons who refinanced or otherwise paid off their loan be excluded from the class arguing that their legal right to rescind had been extinguished.  Plaintiffs championed their inclusion in the class definition.  Magistrate Dein held that those persons' legal right to rescind had not been terminated and included them in the class

---

[8] "Nothing herein or in the original R&R addresses the merits of the plaintiffs' claims." (R&R II, p. 13, n. 7).

definition.[9]  "[N]othing in section 10 or in any other provision of the statute addresses whether

the right of rescission expires upon refinancing or payoff of the subject loan."  (R&R II, p. 5).

First Horizon relies on *Isaacs v. Sprint Corp.*, 261 F.3d 679 (7th Cir. 2001), and

*Adashunas v. Negley*, 626 F.2d 600 (7th Cir. 1980) to demonstrate that class definitions may not

be solely based on liability in the suit.  Both cases show that each class certified failed to meet

Rule 23 requirements in addition to problems with the class definition.  In *Adashunas*, the class

certified "consists of children entitled to a public education who have learning disabilities and

'who are not properly identified and/or who are not receiving' special education."  *Id*. at 603.

The court held that "the proposed class of plaintiffs is so highly diverse and so difficult to

identify that it is not adequately defined or nearly ascertainable....since the proposed class is so

amorphous and diverse, it cannot be reasonably clear that the proposed class members have all

suffered a constitutional or statutory violation warranting some relief."  *Id*. at 604.

In *Isaacs*, the Seventh Circuit held that the class definition was improper and that

the class certified did not meet Rule 23 requirements.  *Isaacs*, 261 F.3d at 682-83.  The court

certified the class in a manner where a case management plan was imposed upon the parties, in

an "if this, then this" fashion –  there were several steps and determinations that had to be made

prior to determining who would be bound by a judgment.  *Id*. at 681.  Additionally, the class in

*Isaacs* involved numerous landowners from 40 different states, all with different property

statutes, over the time span of a century.

---

[9]  The "issue" First Horizon is really arguing about is predominance.  In some class actions, there may be
issues as to whether certain borrowers fall within the class definition.  However, this is not an impediment to class
certification and if necessary, these "issues" can be resolved after the legal issues are resolved.  The only legal issue
that can be raised in support of excluding paid off or refinanced loans from the class definition, which First Horizon
has not raised, is that a particular loan was outside the statutory time period.  As discussed above, plaintiffs have
satisfied the predominance requirement.

These cases are simply not comparable to this case. Although this action may involve 8,900 transactions over a period of less than one year, the offending document at issue, the inadequate Notice, is identical in all transactions. First Horizon is a common party in all 8,900 transactions and can identify the recipients of the Notice. In addition, the law governing the transaction at issue, the MCCCDA, is consistently applied to all class members. There are no legal or factual issues to resolve here remotely similar to those presented in *Isaacs* or *Adashunas*.

First Horizon argues that the SJC in *Shepard v. Fin. Assoc. of Auburn, Inc.*, 316 N.E.2d 597 (1974), decided that a borrower's legal right to rescind terminates pursuant to the MCCCDA when the loan is refinanced or otherwise paid off. Magistrate Dein held that "the issue of whether the plaintiff retained a right to rescind the first two loans under § 8, although they had been discharged by the third loan, was not presented to the court and was not addressed by the court in its opinion....it is clear from the context of the statement that the <u>Shepard</u> court was construing the damages provision of the CCCDA, and not the rescission provision." (R&R II, pp. 6-7).

First Horizon's reliance on *Shepard v. Fin. Assocs. of Auburn, Inc.*, 316 N.E.2d 597 (Mass. 1974) is in any event, misplaced because it is distinguishable from the case at bar. In *Shepard*, the plaintiff obtained three loans within four months from the same lender. *Id*. at 600. No payments were made on the first two loans and the third loan consolidated, discharged and superseded the earlier two loans. *Id*. The *Shepard* Court held that, "Two of the notes were discharged long before this litigation began, and without any payment ever having been made on either of them. We do not believe the statute contemplated civil liability to ensue from such a transaction, whatever the defects in notice." *Id*. at 605. This may or may not be covered under the former statute, Mass. Gen. Laws ch. 140C, and the facts presented do not support the

proposition that a loan which is financed after payments are made is not rescindable under TILA and the current Massachusetts statute, Mass. Gen. Laws ch. 140D.

First Horizon is certain that *Shepard* carries the day for it but it has not been followed by any court in this District, after Simplification, for the proposition First Horizon argues today. In addition, other courts First Horizon relies on have summarily and conclusively held that a consumer is not entitled to rescind a loan previously paid off. *Mijo v. Avco Financial Services of Hawaii, Inc.*, 937 F.2d 613 (9th Cir. 1991) (unpublished); *King v. California*, 784 F.2d 910 (9th Cir. 1986); *Coleman v. Equicredit*, 2002 U.S. Dist. LEXIS 969 (N.D. Ill. 2002); and *Jenkins v. Mercantile Mortgage Corp.*, 231 F.Supp.2d 737 (N.D. Ill. 2002). In each of these cases, the courts assume without analysis of or reference to TILA (or the MCCCDA) that a consumer cannot rescind a loan which has already been paid off. These courts simply ignore the fact that rescission does not just void the security interest in the mortgage, but it also entitles the borrower to a refund of all finance charges. There is no reason that paying off a mortgage should deprive the consumer of the right to that refund, even if the security interest has already been eliminated.

Magistrate Dein considered defendant's authorities and rejected them (R&R II, pp. 9-10) and held that "the analysis of those cases concluding that refinancing does not preclude rescission to be persuasive." This decision was deeply rooted in TILA, Regulation Z and its counterparts in the MCCCDA and is also supported by additional authority. *See also McIntosh*, *supra*; *Duren v. First Government Mortgage and Investors Corp.*, 2000 U.S. App. LEXIS 15469, at *7 (D.D.C. 2000)(unpublished) (The Court distinguished *King* and held that rescission is still available to those who have refinanced their loans); *Payton v. New Century Mortgage Corp.*, 2003 U.S. Dist. LEXIS 18366 (N.D. Ill. 2003); *In re Wright*, 127 B.R. 766, 770 (Bankr. E.D.Pa.

1991); *Nichols v. Mid-Penn Consumer Discount Co.*, 1989 U.S. Dist. LEXIS 4796 (E.D. Pa. 1989) and *Pulphus v. Sullivan*, 2003 U.S. Dist. LEXIS 7080 (N.D. Ill. 2003) (The Courts permitted recision even though the loans at issue had been extinguished).

"It might make sense to read loan payment into the list if elimination of the security interest were the only effect of rescission. But it is not. According to the statute, a lender served with a notice of rescission must, in addition to voiding the security interest, return any money or property the consumer has given to it. 15 U.S.C. § 1635(b)." *Pulphus v. Sullivan*, 2003 U.S. Dist. LEXIS 7080, at *52-53 (N.D. Ill. 2003); (R&R II, p. 11).

Additionally, there are policy reasons to include those who refinanced or otherwise paid off their loans in the class. In addition to protecting borrowers from foreclosure, the overarching policies behind consumer protection statutes like the MCCCDA and TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit..." *In re Fidler*, 226 B.R. 734, 736 (Bankr. D. Mass. 1998) (quoting § 1601(a) of TILA); (R&R II, p. 12).

TILA and the MCCCDA are the legislatures efforts to guarantee accurate and meaningful information is given to consumers in connection with credit transactions. Moreover, these statutes are designed to put consumers on equal footing with creditors and that is why consumer statutes are liberally construed. *Shepard*, 316 Mass. at 191; *Adams v. Plaza Finance Co.*, 168 F.3d 932 (7th Cir. 1999); (R&R II, p. 13). It is totally unfounded for First Horizon to argue that the class definitions in R&R I and refined in R&R II are inconsistent with the policies of the MCCCDA.

## X.     CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court adopt

Magistrate Judge Dein's Report and Recommendations on Plaintiffs' Motion for Class

Certification[10] and on Defendant's Motion for Clarification[11].

Respectfully submitted,


s/Heather Kolbus
_____
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, IL  60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre, BBO No. 629056
CLAUDE LEFEBVRE, P.C.
P.O. Box 479
Pawtucket, RI  02862
(401) 728-6060
(401) 728-6534 (FAX)

---

[10]   *McKenna, et al. v. First Horizon Home Loan Corporation*, 04-10370 (D. Mass. November 10, 2005), Report and Recommendation on Plaintiffs' Motion for Class Certification,  referred to herein as "(R&R I)".

[11]   *McKenna, et al. v. First Horizon Home Loan Corporation*, 04-10370 (D. Mass. January 6, 2006), Report and Recommendation on Defendant's Motion to Clarify Report and Recommendation on Plaintiffs' for Class Certification,  referred to herein as "(R&R II)".

## <u>CERTIFICATE OF SERVICE</u>

I, Heather Kolbus, hereby certify that on February 6, 2006, a copy of the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 72(a) OBJECTIONS** was filed electronically. Notice of this filing will be sent to the registered participants identified on the Notice of Electronic Filing by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>   s/ Heather Kolbus   </u>
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER
         & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)