# United States Court of Appeals
## For the First Circuit

No. 06-8018

RALPH McKENNA ET AL.,

Plaintiffs, Appellees,

v.

FIRST HORIZON HOME LOAN CORP.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Reginald C. Lindsay, U.S. District Judge]
[Hon. Judith G. Dein, U.S. Magistrate Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Thomas M. Hefferon, with whom U. Gwyn Williams, Alisha R. Bloom, and Goodwin Procter LLP were on brief, for appellant.
Robert B. Serino and Buckley Kolar LLP on brief for American Bankers Association, American Financial Services Association, America's Community Bankers, Consumer Bankers Association, Consumer Mortgage Coalition, Housing Policy Council of the Financial Services Roundtable, and Mortgage Bankers Association, amici curiae.
Christopher M. Lefebvre, with whom Claude Lefebvre, P.C., Daniel A. Edelman, Heather A. Kolbus, and Edelman, Combs, Latturner & Goodwin, LLC were on brief, for appellees.

January 29, 2007

**SELYA, Circuit Judge.** This interlocutory appeal requires us to explore, for the first time, the crossroads at which class-action rules intersect with the rescission provisions of the federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667, and its Massachusetts counterpart, the Massachusetts Consumer Credit Cost Disclosure Act (MCCCDA), Mass. Gen. Laws ch. 140D. After careful consideration of this nuanced terrain, we conclude that the district court lacked the authority to certify a class of residential borrowers who might potentially be eligible for rescissionary relief. Consequently, we reverse the decision appealed from, vacate the class certification order, and remand for further proceedings.

## I.  BACKGROUND

In March 2004, the plaintiffs, Ralph G. McKenna, Glenroy and Ilene Deane, and Christopher and Laurie Lillie, all Massachusetts homeowners, filed a complaint in the United States District Court for the District of Massachusetts alleging that the defendant, First Horizon Home Loan Corporation (First Horizon), had violated both the TILA and the MCCCDA in the course of various Massachusetts home-refinancing transactions. Specifically, the plaintiffs contended that First Horizon had inaccurately disclosed information pertaining to consumers' statutory rescission rights and, subsequently, had failed to respond appropriately to requests for the rescission of residential refinancings. In the plaintiffs'

view, these violations of the TILA and the MCCCDA entitled them to
rescission of their loans and statutory damages.

To that point, the action seems unremarkable. What makes
it unusual is that, in addition to their claims for individualized
relief, the plaintiffs asserted that First Horizon's practices had
victimized countless others. Based on this premise, they purposed
to sue on behalf of a class of Massachusetts consumers who had
received similar loans and similar (allegedly defective) notices of
rescissionary rights from First Horizon during a particular time
frame. With respect to the putative class, the plaintiffs sought
a declaration that any class member who elected to do so could
rescind his or her credit transaction with First Horizon at any
time during the extended three-year statutory default period
(notwithstanding the expiration of the shorter three-day period
described in the rescission notices). First Horizon denied the
material allegations of the complaint and resisted any suggestion
that class certification might be appropriate.

In due season, certain of the plaintiffs (McKenna and
Laurie Lillie) moved for class certification. See Fed. R. Civ. P.
23. First Horizon opposed the motion. The district court referred
the matter to a magistrate judge. After some skirmishing over the
definition of the class, the magistrate judge recommended, in a
clarifying report, that a class be certified as follows:

> All natural persons who obtained non-purchase
> money loans from First Horizon . . . on or

>           after April 1, 2003 and who received a Notice
>           of Right to Cancel in [a described] form . . .
>           where; (1) the loans were secured by the
>           borrower's Massachusetts residence; (2) the
>           loan was for purposes other than the initial
>           construction or acquisition of the residence;
>           and (3) all or part of the loan proceeds were
>           used to refinance a loan made by someone other
>           than First Horizon . . . . .

McKenna v. First Horizon Home Loan Corp., 429 F. Supp. 2d 291, 316

(D. Mass. 2006).[1]   The class definition contained certain

exclusions, not material here; it also provided that "no person

shall be excluded from the class simply because that person has

refinanced or paid off the subject loan." Id. Finally, the

magistrate judge's recommended order stipulated that, if the action

succeeded, class relief would take the form of a "declaration that

any class member who so desires may seek to rescind their

transaction." Id. (quoting plaintiffs' amended complaint). Should

such a declaration issue, members of the class who then elected to

rescind could proceed to seek reimbursement of amounts previously

paid, statutory damages, and attorneys' fees. See id. at 297.

        First Horizon objected on divers grounds, but the

district court nonetheless adopted the magistrate judge's clarified

recommendation in full. See id. at 294. Undaunted, First Horizon

---

[1]In a somewhat unorthodox arrangement, the magistrate judge's
original report and recommendation, her clarifying report and
recommendation, and the district court's adoption of the clarifying
report and recommendation are reported together in serial (but not
chronological) fashion. We therefore cite to these decisions as if
they constituted a seamless whole.

sought interlocutory review of the class certification order pursuant to Fed. R. Civ. P. 23(f). Because of the important and unsettled legal issues involved and the substantial financial impact that the order portended, we granted the Rule 23(f) petition in the exercise of our discretion. See Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 293-94 (1st Cir. 2000). We then issued an expedited briefing schedule and heard oral argument on December 6, 2006.

## II. THE STATUTORY SCHEME

We begin our odyssey through the class-action wilderness by summarizing the statutory provisions that undergird the plaintiffs' claims. Congress enacted the TILA in 1968 "to assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit . . . practices." 15 U.S.C. § 1601(a). To accomplish this goal, the TILA requires creditors to disclose, clearly and accurately, all the material terms of consumer credit transactions. See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998). When creditors transgress this baseline rule, they are subject both to criminal penalties for willful and knowing violations, see 15 U.S.C. § 1611, and to debtors' claims for damages, see id. § 1640(a).

The TILA provides further protection to consumers by guaranteeing them a three-day cooling-off period within which they may, for any reason or for no reason, rescind certain types of

-5-

credit transactions (including residential refinancings). See id. § 1635. Rescission essentially restores the status quo ante; the creditor terminates its security interest and returns any monies paid by the debtor in exchange for the latter's return of all disbursed funds or property interests. See id. § 1635(b). If the right to rescind is not adequately disclosed, however, the period within which the debtor may elect to rescind is extended for up to three years after consummation of the transaction. See Palmer v. Champion Mortg., 465 F.3d 24, 27 (1st Cir. 2006); see also 12 C.F.R. § 226.23(a)(3). The plaintiffs claim that this elongated rescission period applies in this case.

The rescission process is intended to be private, with the creditor and debtor working out the logistics of a given rescission. See Belini v. Wash. Mut. Bank, 412 F.3d 17, 25 (1st Cir. 2005). Not all debtors who suspect (or know) that they have been subjected to a TILA violation will choose to rescind, in large part because rescission entails the return of loan proceeds to the creditor. See Ralph J. Rohner & Fred H. Miller, Truth in Lending ¶ 12.08, at 881 (2000). If, however, a debtor elects to rescind, the mechanics of rescission are uncomplicated: the debtor notifies the creditor in writing of his or her desire to rescind, and the creditor must respond to that election within twenty days. See 15 U.S.C. § 1635(b). During this response period, the creditor may comply with the request, resist rescission entirely, or agree to

-6-

rescission while seeking equitable modifications. See Rohner & Miller, supra ¶ 8.04, at 648-49. Should disagreements ensue or problems arise, either party may repair to a federal court. See Large v. Conseco Fin. Svcg. Corp., 292 F.3d 49, 52-53 (1st Cir. 2002).

In addition to individual claims for rescission and statutory damages, the TILA expressly acknowledges the potential for damages class actions by capping statutory damages for a single violation, repeated in multiple cases, at the lesser of $500,000 or one percent of the creditor's net worth. See 15 U.S.C. § 1640(a)(2)(B). There is no comparable class-action provision in 15 U.S.C. § 1635 (the section of the TILA that deals with rescission).

Except for a modest variance in regard to the limitation period — a variance that is of no consequence here — the MCCCDA mirrors its federal counterpart. This is not an accident; the Massachusetts legislature closely modeled the state law after the TILA. See Lynch v. Signal Fin. Co., 327 N.E. 2d 732, 734 (Mass. 1975). It is, therefore, common ground that the MCCCDA should be construed in accordance with the TILA. See In re Desrosiers, 212 B.R. 716, 722 (Bankr. D. Mass. 1997); Mayo v. Key Fin. Servs., Inc., 678 N.E.2d 1311, 1313 (Mass. 1997). Thus, even though the parties agree that the rescission claims in this case invoke the MCCCDA, they also agree that, given the congruence between the two statutes, the TILA supplies the applicable rules of decision.

-7-

## III.  ANALYSIS

We turn now to the operation of these statutes in the class-action context.  On appeal, First Horizon advances a wide-ranging asseverational array.  Its flagship claim is that the district court erred in certifying the class because, as a matter of law, class actions for rescission are unavailable under the TILA (and, therefore, under the MCCCDA).  The amici, whose assistance we appreciate, have filed an erudite brief in support of this claim.  We start there.

We review orders granting or denying class certification for abuse of discretion.  See Tilley v. TJX Cos., 345 F.3d 34, 39 (1st Cir. 2003).  "[A] district court abuses its discretion when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales."  Dopp v. Pritzker, 38 F.3d 1239, 1253 (1st Cir. 1994) (quoting United States v. Roberts, 978 F.2d 17, 21 (1st Cir. 1992)).  Within this rubric, a district court necessarily abuses its discretion when its decision or judgment depends upon an incorrect view of the law.  Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 221 (1st Cir. 2003).  And, finally, a district court's answer to an abstract legal question, even though made in the course of reaching a

-8-

generally discretionary judgment, engenders de novo review. See Tardiff v. Knox County, 365 F.3d 1, 4 (1st Cir. 2004).

The putative class in this case is aimed at clearing the way for rescission claims. Thus, the principal issue before us is whether TILA claims focused on rescission are maintainable in a class-action format. This issue is one of first impression here. The Fifth Circuit has addressed it, however, holding squarely that rescission class actions are not maintainable under the TILA. See James v. Home Constr. Co. of Mobile, Inc., 621 F.2d 727, 731 (5th Cir. 1980).

The James court based its holding primarily on a conclusion that Congress intended rescission to be a "purely personal remedy" — a status inconsistent with the class-action mechanism. Id. A number of district courts have echoed this refrain. These courts have emphasized that rescission claims, unlike damages claims, are not subject to any aggregate statutory cap and, therefore, rescission class actions, if permitted, could easily render a creditor insolvent. See, e.g., Gibbons v. Interbank Funding Group, 208 F.R.D. 278, 285-86 (N.D. Cal. 2002). They also have noted the absence of any necessity for deployment of the class-action vehicle in this context due to the availability of substantial monetary recoveries and attorneys' fees in individual rescission cases. See, e.g., Jefferson v. Sec. Pac. Fin. Servs., Inc., 161 F.R.D. 63, 68-70 (N.D. Ill. 1995).

-9-

This case law notwithstanding, the question is not free from doubt. Some district courts, like the court below, have certified TILA rescission classes on the theory that nothing in the language of the TILA expressly prohibits the maintenance of rescission class actions. See, e.g., Rodrigues v. Members Mortg. Co., 226 F.R.D. 147, 153 (D. Mass. 2005); McIntosh v. Irwin Union Bank & Trust, Co., 215 F.R.D. 26, 32-33 (D. Mass. 2003); Williams v. Empire Funding Corp., 183 F.R.D. 428, 435-36 (E.D. Pa. 1998).

We follow James and hold today that, as a matter of law, class certification is not available for rescission claims, direct or declaratory, under the TILA (and, thus, under the MCCCDA). We ground this holding primarily on our conclusion that Congress did not intend rescission suits to receive class-action treatment.

"In determining congressional intent, we employ the traditional tools of statutory construction, including a consideration of the language, structure, purpose, and history of the statute." Estey v. Comm'r, Me. Dep't of Human Servs., 21 F.3d 1198, 1201 (1st Cir. 1994). Thus, we begin the present inquiry with the TILA's text.

Class actions are specifically addressed in the section of the TILA relating to damages. See 15 U.S.C. § 1640(a)(2)(B). There is, however, no comparable mention of the class-action mechanism in the section that deals with rescission. See id. § 1635. We long have recognized that, under ordinary circumstances,

the inclusion of a specific provision in one part of a statute and the exclusion of the same sort of provision in another part of the same statute should be treated as deliberate. See United States v. Green, 407 F.3d 434, 443 (1st Cir. 2005). Consequently, the variation in the treatment of class actions in the two relevant sections of the TILA strongly suggests that Congress did not intend to include a class-action mechanism within the compass of section 1635. See id.; see also Duncan v. Walker, 533 U.S. 167, 173 (2001) (applying this principle of statutory construction in an analogous context).

Of course, the class-action provision in the TILA's damages section is in the nature of a cap. Thus, the exclusion of any mention of class actions from the rescission provision could conceivably lead to one of two conflicting conclusions: Congress either may have intended rescission to be totally unavailable as a class remedy in the TILA milieu or it may have intended rescission class actions to be available unrestrainedly in TILA cases, not subject to any special limiting conditions. We find the first alternative much more likely.

It is nose-on-the-face plain that unrestricted class action availability for rescission claims would open the door for vast recoveries. First Horizon estimates that its exposure in this case, should the district court's class certification order remain

-11-

intact, would be approximately $200,000,000.[2]  This is considerably in excess of the cap (the lesser of $500,000 or one percent of net worth) that Congress painstakingly established for damages class actions.  See 15 U.S.C. § 1640(a)(2)(B).  The notion that Congress would limit liability to $500,000 with respect to one remedy while allowing the sky to be the limit with respect to another remedy for the same violation strains credulity.

Here, moreover, we have the benefit of confirmatory evidence of Congress's intent.  In Rodash v. AIB Mortg. Co., 16 F.3d 1142 (11th Cir. 1994), the Eleventh Circuit held that a creditor's TILA violation justified rescission of a mortgage loan. See id. at 1147.  Responding to that decision, Congress enacted a moratorium on class actions for what it characterized as relatively minor violations (including the selection of an incorrect form for disclosure of rescission rights — the precise type of violation at issue here).  See Truth in Lending Class Action Relief Act of 1995, Pub. L. No. 104-12, § 2, 109 Stat. 161, 161-62.  Congress proceeded to amend the TILA to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations.

---

[2]The $200,000,000 estimate appears to be based on a recovery of approximately $22,000 for each of the estimated 8,900 members of the putative class. As the plaintiffs point out, this estimate may be high. But even if only five percent of the class members elect to rescind and recover only an average of $10,000 apiece, First Horizon would be liable for $4,450,000. That figure would still dwarf the $500,000 ceiling placed on damages class actions.

See Truth in Lending Act Amendments of 1995, Pub. L. No. 104-29, §
3, 109 Stat. 271, 272-73.

In taking this step, Congress made manifest that although
it had designed the TILA to protect consumers, it had not intended
that lenders would be made to face overwhelming liability for
relatively minor violations. A key proponent of the legislation
expressed an awareness, acknowledged by others during the floor
debate, that the "threat of wholesale rescissions present[s] a real
danger to our modern system of home financing." 141 Cong. Rec.
S14566, 14567 (statement of Sen. D'Amato). The amendments, Senator
D'Amato stated, were specifically "intended to curtail the
devastating liability that threaten[s] our housing finance system."
Id. The senator attributed that prospect — "devastating liability"
— to the onslaught of suits demanding "the most draconian remedy
available under Truth in Lending — rescission." Id. Viewed
against this backdrop, it becomes readily evident that providing
higher tolerance levels for minor violations was "critical to
avert[ing] what could [have] be[en] a financial disaster in the
mortgage industry." Id. at 14568 (statement of Sen. Mack).

The personal nature of the rescission remedy gives this
legislative history a compelling quality. The highly
individualized character of this process and the range of
variations that may occur render rescission largely incompatible
with a sensible deployment of the class-action mechanism.

-13-

The plaintiffs attempt to blunt the force of this reasoning both directly and indirectly. In a frontal assault on what we have gleaned from the legislative history, they point out that Congress, in the 1995 amendments, acted to limit the contours of the TILA's compilation of substantive violations rather than to restrict available remedies. From this, they reason that Congress's actions are not evidence of an intent to circumscribe rescission liability.

This is wishful thinking. While Congress did not spell out that class actions were forbidden in the rescission context, it is risky business to attribute much significance to congressional inaction. See Estey, 21 F.3d at 1206. What we know, to a virtual certainty, is that Congress was responding to a troubling decision: Rodash. See 141 Cong. Rec. S14566, 14567 (statement of Sen. Sarbanes) ("The Rodash problem arose from a court decision last year in which small violations of the disclosure requirements of the Truth in Lending Act triggered the right of rescission provided by the act."). That decision was a merits decision, not a class certification decision. Amendment of the TILA's substantive provisions was a predictable reaction to Rodash — one that promised to ameliorate "the threat of wholesale rescissions." Id. Every indication is that Congress, while making no provision for class actions in the rescission context, intended to keep at bay the

ominous prospect of large-scale liability that would be inherent in rescission class actions.

The plaintiffs' indirect attempt to avoid an adverse construction of the TILA begins with the Supreme Court's statement that "[i]n the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court." Califano v. Yamasaki, 442 U.S. 682, 700 (1979) (quoting Fed. R. Civ. P. 1). Building on this foundation, they posit that because Congress did not express such an intent in the text of the TILA's rescission provision, rescission class actions are permissible.

The problem, however, is that the plaintiffs wrest the quoted statement from its contextual moorings. When viewed within its natural environment, the Yamasaki Court's pronouncement is not in conflict with our construction of the TILA. We explain briefly.

The Yamasaki Court was interpreting a jurisdictional statute that explicitly delineated the procedure through which an individual could obtain judicial review of an administrative decision. See id. at 698 n.12. An argument was made that the statute's authorization of suit by "any individual" evinced an intent on Congress's part to provide judicial review on a case-by-case basis and not by means of class actions. Id. at 698-99. The Court rejected this argument, explaining that jurisdictional

-15-

statutes often speak in terms of individual plaintiffs and that the use of such terminology, without more, does not create an exemption from the usual class-action rules. Id. at 700.

This case is quite different. The TILA's rescission provision "is written with the goal of making the rescission process a private one, worked out between creditor and debtor without the intervention of the courts." Belini, 412 F.3d at 25. Unlike the statute at issue in Yamasaki, the TILA contains no language describing the process by which parties may sue in federal court to enforce rescission rights. We would not expect Congress expressly to exempt from class-action rules a process for which it never fully delineated an individual right of action.[3]

Last — but not least — we note that the TILA already includes significant incentives for creditor compliance with its strictures, thus casting serious doubt on the need for a class-action mechanism with respect to rescission.[4] The statute grants

_____

[3] We add, moreover, that even though it is not memorialized in the text of the statute, we find an express congressional intent to exempt rescission actions from class treatment in the TILA's structure and its legislative history. Cf. Yamasaki, 442 U.S. at 699 & n.13 (implying that legislative history may properly inform judicial analysis on such an issue); Walsh v. Ford Motor Co., 807 F.2d 1000, 1009-10 (D.C. Cir. 1986) (reviewing legislative history for this purpose).

[4] One indicator of the effectiveness of these incentives is that First Horizon already has responded to complaints about the disputed notice and has stopped using it in home-refinancing transactions.

substantial enforcement authority to the federal agencies with jurisdiction over lending institutions, see 15 U.S.C. § 1607(a), including the power to impose substantial monetary penalties for each violation (and even greater penalties for patterns of misconduct), as well as the power to suspend and remove directors and officers. See 6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 21:1, at 405 (2002); see also 12 U.S.C. §§ 1818(e), 1818(i).

Moreover, debtors enjoy an array of private remedies. Most notably, they may pursue rescission claims on their own — a course of action that the TILA facilitates. Should a debtor follow this course, his or her monetary recovery is apt to be sizable. This case illustrates the point. First Horizon estimates that putative class members stand to recover between $15,000 and $25,000 each. Although the plaintiffs try to downplay the overall financial impact of a class action like this one, deeds speak louder than words. The plaintiffs' attorneys, in an effort to recruit additional claimants, have placed advertisements holding out the prospect of recoveries of up to $50,000 per person. Figures on this order of magnitude, when combined with the attorneys' fees normally awarded to successful plaintiffs in TILA rescission cases, see Belini, 412 F.3d at 25; see also 15 U.S.C. § 1640(a)(3), afford

a powerful incentive to debtors to sue individually if a creditor refuses to honor a timely, well-founded rescission request.[5]

The plaintiffs have a fallback position. Even if rescission class actions simpliciter are unavailable under the TILA, they insist that the case at hand escapes that prohibition because the members of the putative class, by definition, do not seek rescission as such but merely seek a declaration of rights referable to rescission. See, e.g., Williams, 183 F.R.D. at 435-36. This bit of legal legerdemain does not get the plaintiffs very far.

In the final analysis, the professed distinction between a suit for a declaratory judgment that rescission is possible and a suit for rescission simpliciter elevates form over substance. See Gibbons, 208 F.R.D. at 285. Both of the primary reasons for denying class treatment to actual rescission claims — Congress's manifest intent to shield residential lenders from crushing liability and the highly personal nature of the rescission remedy — apply with equal force to the proposed formation of declaratory rescission classes. Indeed, the patent insubstantiality of the distinction between declaratory and non-declaratory rescission claims is vividly illustrated by the district court's certification

---

[5]Of course, should aggrieved debtors wish to sue collaboratively, a class action for statutory damages is available to them, subject, however, to the statutory cap. See 15 U.S.C. § 1640(a)(2)(B).

of the instant class as a Rule 23(b)(3) class. See McKenna, 429 F. Supp. 2d at 296-97. A Rule 23(b)(2) class ordinarily is used when broad, class-wide injunctive or declaratory relief is appropriate. See Allison v. Citgo Petro. Corp., 151 F.3d 402, 412 (5th Cir. 1998); Holmes v. Continental Can Co., 706 F.2d 1144, 1155 (11th Cir. 1983).

If more were needed — and we doubt that it is — the justifications for class treatment are significantly diminished when the remedy sought is a declaration of the right to rescind. Among the primary rationales behind the class action mechanism are judicial economy and efficiency. See 1 Conte & Newberg, supra § 1:1, at 3. Here, as the district court observed:

> [P]laintiffs only seek a declaration that the notices of rescission . . . violate TILA, and thus that each member of the class is entitled to seek rescission. Should the Court declare that, indeed, plaintiffs are entitled to seek rescission because of certain infirmities in the TILA disclosure documents, then each class member, individually, and not as a member of the class, would have the option to exercise his or her right to seek rescission. As to any member of the class who triggered the statutory right to rescission, [the] defendants would have, in turn, the opportunity to exercise their rights to cure under TILA.

McKenna, 429 F. Supp. 2d at 304 (quoting Williams, 183 F.R.D. at 435). In other words, absent class members would have the same right to seek rescission after a declaratory judgment was rendered as they had previously. Thus, should the need arise for an absent class member to resort to the courts for enforcement of his or her

-19-

right to rescind, the declaratory judgment would serve that end no more effectively than would a non-class-action suit brought by named plaintiffs alleging identical TILA violations. So viewed, a class declaratory judgment would work against judicial economy and disserve efficiency concerns.[6]

To say more would be supererogatory. For the reasons elucidated above, we hold that class certification is unavailable as a matter of law for TILA rescission claims (including declaratory rescission claims).

## IV. CONCLUSION

We summarize succinctly. Given the unavailability of class-action treatment for rescission claims (including declaratory rescission claims) under the TILA and, thus, under the MCCCDA, we reverse the district court's class certification decision, vacate its class certification order, and remand the case for further proceedings consistent with this opinion. We take no view on whether the district court, if requested to do so, may or should

---

[6]Although the point is not before us, see Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974), we question whether a declaratory judgment is an appropriate remedy even for the named plaintiffs. For one thing, a declaratory judgment plainly would not settle the controversy. That is a basis for questioning the appropriateness of declaratory relief. 10B Charles Alan Wright et al., Federal Practice and Procedure § 2759, at 543 (3d ed. 1998). The controversy almost certainly would continue notwithstanding a declaration that the named plaintiffs were entitled to rescind. After all, the equitable nature of rescission generally entitles the affected creditor to judicial consideration of the individual circumstances of the particular transaction. See Rohner & Miller, supra ¶ 8.04, at 649.

attempt to certify a damages class. We point out, however, that any
such certification would bring into play the statutory cap. <u>See</u> 15
U.S.C. § 1640(a)(2)(B).

        We need go no further.[7]  Judgment shall enter as provided
herein, and costs shall be taxed in favor of First Horizon.

**So Ordered**.

---

[7]Because we vacate the class certification order on the ground
stated, we need not address First Horizon's other arguments,
including arguments that general declaratory relief is unavailable
under the TILA; that absent class members lack standing to seek a
declaratory remedy; that certification of the instant class fails
to meet the requirements limned in Fed. R. Civ. P. 23 (especially
the superiority requirement of Rule 23(b)(3)); and that debtors who
have paid off or refinanced their loans should have been excluded
from the putative class.