# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

RALPH G. MCKENNA,
GLENROY A. DEANE,
ILENE WILGOREN-DEANE,
CHRISTOPHER J. LILLIE, AND
LAURA A. LILLIE,
          Plaintiffs,

    v.

FIRST HORIZON HOME LOAN
CORPORATION,
          Defendant.

Civil Action No. 04-10370-PBS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
FIRST HORIZON HOME LOAN CORPORATION'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

PROCEDURAL HISTORY ................................................................................. 3

STATEMENT OF FACTS .................................................................................. 5

ARGUMENT .................................................................................................... 7

I.      Summary Judgment Standard ................................................................. 7

II.     MCCCDA and TILA Background ............................................................ 7

A.      The Interplay Between TILA and MCCCDA ............................................. 7

B.      MCCCDA's Disclosure Requirements ..................................................... 10

C.      Clear and Conspicuous Standard ............................................................ 11

III.    First Horizon Is Entitled to Summary Judgment Because It Fulfilled
        Its Obligation to Provide a Clear and Conspicuous Notice of
        Rescission Rights ................................................................................... 12

IV.     First Horizon Is Entitled to Summary Judgment Against the Plaintiffs
        Because They Were Not Confused About Their Rights ................................ 18

CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*American Mortg. Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007) ...................... 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 7

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410 (1998) ............................................................ 8

*Belini v. Wash. Mut. Bank, FA*, 412 F.3d 17 (1st Cir. 2005) ....................................... 8, 10

*Dixon v. D.H. Holmes Co.*, 566 F.2d 571 (5th Cir. 1978) ............................................... 14

*Gambardella v. G. Fox & Co.*, 716 F.2d 104 (2d Cir. 1983)..................................... 14, 17

*Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir.2006) ................................... 11

*Ives v. W.T. Grant Co.*, 522 F.2d 749 (2d Cir. 1975)..................................................... 10

*Lynch v. Signal Finance Co. of Quincy*, 367 Mass. 503 (Mass. 1975)............................ 8

*Mayo v. Key Fin. Servs., Inc.*, 424 Mass. 862 (Mass. 1997)........................................ 14

*McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418 (1st Cir. 2007)....... 2, 4, 8, 14

*Mechanics Nat'l Bank of Worcester v. Killeen*, 377 Mass. 100 (1979)................. 3, 18, 19

*Mills v. Equicredit Corp.*, 172 Fed. Appx. 652, 2006 WL 455158 (6th Cir. Feb.
    24, 2006) .............................................................................................................. 12, 16

*Palmer v. Champion Mortgage*, 465 F.3d 24 (1st Cir. 2006)................................... 14, 18

*Rodrigues v. Members Mortgage Co., Inc.*, 226 F.R.D. 147 (D. Mass. 2005) ................ 18

*Santos-Rodriguez v. Doral Mortgage Co.*, 485 F.3d 12 (1st Cir. 2007).................. passim

*Smith v. Chapman*, 614 F.2d 968 (5th Cir. 1980) ......................................................... 12

*Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996)........................................... 12, 16

**Statutes**

15 U.S.C. § 1601 .............................................................................................................. 7

15 U.S.C. § 1604 .............................................................................................................. 9

15 U.S.C. § 1633 .............................................................................................................. 8

15 U.S.C. § 1635 ........................................................................................................... 8, 9

15 U.S.C. § 1640 .............................................................................................................. 9

MASS. GEN. LAWS ch. 140D § 10 .................................................................................. 8, 9

MASS. GEN. LAWS ch. 140D § 18 ..................................................................................... 9

MASS. GEN. LAWS ch. 140D § 32 ..................................................................................... 9

**Rules**

FED R. CIV. P. 56............................................................................................................... 7

**Regulations**

12 C.F.R. § 226, Supp. I ................................................................................................... 8

12 C.F.R. § 226.23 ........................................................................................ 9, 10, 11, 15

12 C.F.R. § 226.29 .......................................................................................................... 10

209 C.M.R. 32.23.................................................................................................... passim

Defendant First Horizon Home Loan Corporation ("First Horizon") respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## INTRODUCTION

This truth-in-lending case arises out of refinancing loans that plaintiffs Ralph McKenna, Christopher and Laura Lillie, and Glenroy Deane and Ilene Wilgoren-Deane obtained from First Horizon between June 2003 and November 2003. First Horizon provided each of the Plaintiffs with a Notice of Right to Cancel when they closed on their loan. In fulfillment of First Horizon's obligations under state and federal truth-in-lending laws, this notice (1) informed them that First Horizon was acquiring a security interest in their homes and that they had a right to rescind their loans within three days; (2) told them what they needed to do in order to exercise that right; and (3) explained that, if they rescinded their loans, the transaction would be unwound and the mortgage that would have arisen would be cancelled. None of the Plaintiffs rescinded their loans during the three-day window.

Some months later, long after their rescission rights had already expired, the Plaintiffs responded to a solicitation from Attorney Lefebvre, who now acts as their counsel in this lawsuit. Attorney Lefebvre convinced the Plaintiffs to attempt to belatedly rescind their loans. When First Horizon refused to agree to rescission of the Plaintiffs' loans, the Plaintiffs filed a class action lawsuit, claiming that certain language in the Notice of Right to Cancel was "confusing" in violation of state and federal truth-in-lending disclosure requirements, entitling them to statutory damages and belated rescission of their loans. The prior order certifying this case as a class action was reversed, *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 427 (1st Cir.

2007), and this remains only an individual case brought by these three sets of borrowers. First Horizon now seeks summary judgment on the Plaintiffs' individual claims for rescission and statutory damages.

As explained below, First Horizon is entitled to summary judgment for two reasons. First, the notice of rescission rights that First Horizon provided to the Plaintiffs sufficiently fulfilled First Horizon's disclosure obligations, as a matter of law. The First Circuit recently held in *Santos-Rodriguez v. Doral Mortgage Co.*, under similar circumstances, that a technically incorrect notice nonetheless "informed the consumer clearly and conspicuously of his rights and obligations" and therefore met the test for compliance. 485 F.3d 12, 18 n.7 (1st Cir. 2007). There is no dispute that First Horizon met most of the truth-in-lending disclosure requirements. First Horizon's notice clearly disclosed (1) that it was acquiring a security interest in the Plaintiffs' homes; (2) that the Plaintiffs had the right to rescind the transaction; (3) how the Plaintiffs should exercise their right to rescind, should they so choose, including an appropriate form designating First Horizon's place of business; and (4) the date the rescission period expired. The only requirement that the Plaintiffs are complaining about is the disclosure of the effects of rescission. The legal issue for the Court to decide thus boils down to whether a reasonable borrower would correctly understand the effects of rescinding his or her loan from First Horizon's Notice of Right to Cancel. In light of the First Circuit's analysis in *Doral*, the Plaintiffs' crabbed interpretation of the allegedly "confusing" language in First Horizon's notice of rescission rights is simply not reasonable. Even if First Horizon's notice was technically incorrect under the Plaintiffs' wooden reading of the truth-in-

lending laws, the Plaintiffs are not entitled either to statutory damages or to rescission of their loans. First Horizon is entitled to judgment without trial on this basis.

Second, the Plaintiffs are not entitled to damages or belated rescission in any event because each admits that they understood their rights and chose not to rescind when they had the opportunity. In *Mechanics Nat'l Bank of Worcester v. Killeen*, the Supreme Judicial Court found that even if a notice of rescission rights was technically flawed, the lender cannot be held liable to the borrowers if they were not misled or confused by the notice. 377 Mass. 100, 111-12 (1979). Here, it is undisputed that the Plaintiffs Ralph McKenna, Christopher Lillie, Laura Lillie, and Ilene Wilgoren-Deane all testified under oath that they correctly understood their right to rescind after receiving First Horizon's notice, and they chose not to timely exercise that right. Glenroy Deane testified that he had never read the Notice prior to his deposition and therefore could not possibly have been confused by it. None of the Plaintiffs have alleged that they were confused by the language that they assert is "confusing," or that the alleged infirmity in any way affected their decision not to timely rescind their loans. Accordingly, the Plaintiffs are not entitled to claim damages and may not belatedly rescind their loans.

## PROCEDURAL HISTORY

Ralph McKenna filed this class action lawsuit on February 24, 2004. Compl. ¶ 3. The Complaint was amended on March 23, 2004 to add plaintiffs Christopher and Laura Lillie, and Glenroy Deane and Ilene Wilgoren-Deane. Am. Compl. ¶¶ 4-5.

Each of the Plaintiffs had refinanced their home mortgage loans with First Horizon.  JSOF ¶¶ 1-3.[1]  They now claim that First Horizon's Notice of Right to Cancel form, which was provided to each of them at closing, did not clearly disclose their right to rescission, as required by state and federal truth-in-lending laws.  2d Am. Compl. ¶¶ 14-15.

Initially, on March 18, 2005, the Plaintiffs moved to certify a class seeking a declaration of the class members' right to rescind their loans if they so chose.  Am. Compl. ¶ 41; Pls.' Mot. for Class Cert.  On March 31, 2006, this Court, by Judge Lindsay, certified a class of Massachusetts borrowers who had received the complained-of form from First Horizon.[2]  Order on Mot. for Class Cert., March 31, 2006, at 6.  First Horizon appealed pursuant to Fed. R. App. P. 23(f).  On January 29, 2007, the First Circuit reversed the class certification decision and vacated the class certification order, holding that the class action mechanism is not available for rescission claims (including declaratory rescission claims) under the state or federal truth in lending statutes.  *McKenna*, 475 F.3d at 427.  The First Circuit remanded the case, where it was subsequently transferred to this Court.

On May 7, 2007, the Plaintiffs amended their complaint a second time, and filed a new motion for certification of a statutory damages class only.  2d Am. Compl.; Pls.'

---

[1] References to the Joint Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment shall hereinafter be cited as "JSOF ¶ __."  References to the Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment shall hereinafter be cited as "SOF ¶ __."  References to the Joint Appendix of Exhibits to Defendant's Statement of Undisputed Material Facts and the Parties' Joint Statement of Undisputed Material Facts shall hereinafter be cited as "App. Ex. __."

[2] The class certification here was made on the same basis as the class that was certified in *Rodrigues v. Members Mortgage Co.*, 226 F.R.D. 147, 153 (D. Mass. 2005).

Am. Mot. for Class Cert. ¶ 3. The parties agreed to defer the class issues, and move straight to summary judgment. Jt. Mot. for Entry of Scheduling Order, June 13, 2007.

## STATEMENT OF FACTS

Plaintiffs Ralph McKenna, Glenroy Deane and Ilene Wilgoren-Deane ("the Deanes"), and Christopher and Laura Lillie all obtained mortgage loans on their Massachusetts residences from First Horizon between June and November 2003. JSOF ¶¶ 1-3. The Plaintiffs used most of the proceeds of their First Horizon loans to refinance prior mortgages that they had held with other lenders. *Id.* In connection with these transactions, each of the Plaintiffs received at closing a Notice of Right to Cancel ("Notice"). *Id.*

The Notice's description of "Your Right To Cancel" reads, in its entirety:

> You are entering into a transaction that will result in a mortgage/deed of trust on your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occur last: (1) the date of the transaction, which is [date]; or (2) the date you received your Truth-in-Lending disclosures; or (3) the date which you received this notice of your right to cancel.

> If you cancel the transaction, the mortgage/deed of trust is also canceled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/deed of trust on your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

> For new transactions involving us, if you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit. It will not affect the amount that you presently owe or the mortgage lien, or security interest we already have on your home. If you cancel the mortgage, lien, or security interest as it applies to the increased amount is also canceled. Within 20 calendar days after we receive your notice of cancellation of the new transaction, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on your home no longer applies to the increase of credit. We must also return any money you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

JSOF ¶ 4.

After receiving this Notice, the Plaintiffs all correctly understood that they could rescind their loans within three days of the closing.[3] SOF ¶¶ 1-4. None of them chose to do so. *Id.* Several months later, long after their rescission rights had expired, each of them received a solicitation in the mail from Attorney Lefebvre. *Id.* After each of them spoke with Attorney Lefebvre, they became convinced of an alleged technical flaw in the Notice's disclosure of the effects of rescinding their loans and decided to seek rescission of their loans. *Id.* Although the Plaintiffs allege in the Complaint that certain language in the Notice is "confusing" in the abstract, 2d Am. Compl. ¶ 15, none of the Plaintiffs have

---

[3] Unlike the other Plaintiffs, Glenroy Deane testified at his deposition that he never read or reviewed the Notice of Right to Cancel that First Horizon provided to him at closing. When questioned about his claim and his rights and obligations arising under the truth-in-lending laws, he betrayed a profound lack of understanding and repeatedly deferred to his wife. *E.g.*, Deposition of Glenroy Deane, February 18, 2005, at 49:23-50:7 ("Q. Are you now unhappy with the servicing on the First Horizon loan? A. Yes. Q. Why? A. I'm here today going through this deposition, which my wife takes care of all my financial stuff. I don't know why I'm here. Do you know what I mean? I thought we'd been through this already."), 57:24-58:8 ("Q. Can you tell me what your claim is against First Horizon in this lawsuit? A. My wife has the claim. Q. Can you tell me what it is? A. I don't know exactly what it is. Q. Do you also have a claim in this lawsuit against First Horizon? A. I assume so since my signature's on the paperwork."), App. Ex. 14 (Defendant's Statement of Undisputed Material Facts ¶ 5). First Horizon is therefore entitled to summary judgment against Mr. Deane because any confusion about his rescission rights cannot be linked to First Horizon's Notice. References to the Plaintiffs' lack of confusion about their rights apply only to the other four plaintiffs: Ralph McKenna, Christopher and Laura Lillie, and Ilene Wilgoren-Deane.

ever claimed that they were actually confused by the Notice or that it affected their decision not to timely rescind their loans.  SOF ¶ 7.

## ARGUMENT

### I.    Summary Judgment Standard

First Horizon is entitled to summary judgment because the undisputed record demonstrates that there is no genuine issue of material fact regarding the adequacy of First Horizon's Notice of Right to Cancel, and the Notice is sufficient as a matter of law. FED R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  First Horizon is also entitled to summary judgment against plaintiffs Ralph McKenna, Christopher Lillie, Laura Lillie, and Ilene Wilgoren-Deane because it is undisputed that they correctly understood their rescission rights after receiving First Horizon's Notice at their loan closings.  Furthermore, it is undisputed that Glenroy Deane never read the Notice prior to his deposition and therefore cannot possibly have been confused by it. The controlling Massachusetts case law is clear that under such circumstances, First Horizon is not liable to any of the Plaintiffs for any unintentional violation of Massachusetts' truth-in-lending statute.

### II.    MCCCDA and TILA Background

### A.    The Interplay Between TILA and MCCCDA

The federal Truth In Lending Act ("TILA") was enacted in 1968 in order to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a).  TILA requires creditors to make "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage

rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410,

412 (1998). TILA's associated regulations are known as Regulation Z.

The Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA") was

"closely modeled" on TILA, *Lynch v. Signal Finance Co. of Quincy*, 367 Mass. 503, 505

(Mass. 1975), and generally "mirrors its federal counterpart." *McKenna*, 475 F.3d at 422.

TILA allows the Federal Reserve Board (FRB) to exempt states from certain

federal truth-in-lending requirements if it finds that a state has "substantially similar"

requirements. 15 U.S.C. § 1633. Massachusetts is one of five states to which an

exemption has been granted. 12 C.F.R. § 226, Supp. I. "Because of the Massachusetts

exemption, the substantive requirements of state law are the requirements that creditors

must follow. This includes any disclosure requirements. The federal requirements on the

mechanics of rescission, found in 15 U.S.C. § 1635, are also superceded by state

requirements: these include how a creditor must notify a debtor of the right to rescind,

how a debtor should notify a creditor if he is taking advantage of his right to rescind, and

how long and what steps a creditor must take to respond to that request." *Belini v. Wash.

Mut. Bank, FA*, 412 F.3d 17, 26-27 (1st Cir. 2005).

Of importance here, TILA and MCCCDA both allow borrowers three business

days in which to rescind any consumer credit transaction where a security interest is

taken out against the borrower's principal dwelling. 15 U.S.C. § 1635(a); Mass. Gen.

Laws ch. 140D § 10(a). Both statutes require lenders to "clearly and conspicuously"

disclose to borrowers this right to rescission, how to exercise it, and what happens if a

borrower should choose to do so. *Compare* 15 U.S.C. § 1635(a)-(b) *with* Mass. Gen.

LAWS ch. 140D § 10(a)-(b); *compare* 12 C.F.R. § 226.23(b)(1) *with* 209 C.M.R. 32.23(2)(a); *compare* 12 C.F.R. § 226.23(d) *with* 209 C.M.R. 32.23(4).

Pursuant to Regulation Z, the Federal Reserve Board has developed model forms designed to meet TILA's disclosure requirements, describing the impact of rescission slightly differently depending on the circumstances of the transaction. *See* 12 C.F.R. § 226.23 (app. H-8) (model form H-8 for refinancing with a creditor other than the original lender), (app. H-9) (model form H-9 for obtaining an extension of credit from the original lender). Although MCCCDA deems use of the FRB forms to be compliant, lenders are not required to use either of the FRB forms; rather, TILA and MCCCDA allow lenders to use any form they wish, so long as the right to rescind and the effects of choosing to do so are clearly and conspicuously disclosed. 15 U.S.C. § 1604(b); MASS. GEN. LAWS ch. 140D, § 18; *see also Doral*, 485 F.3d at 15 ("TILA plainly states that use of the model forms is not obligatory."). MCCCDA specifically allows lenders to modify the FRB forms by deleting unnecessary information or rearranging the format, so long as "the creditor does not affect the substance, clarity or meaningful sequence of the disclosure." MASS. GEN. LAWS ch. 140D, § 18.

This case concerns only the notice of the right to rescind; it is conceded that First Horizon otherwise complied with MCCCDA. If a lender fails to provide the required notice of the right to rescind, borrowers may seek statutory and/or actual damages, and the window within which borrowers may rescind is extended from the statutory three days to the shorter of (1) the date an effective notice is given, or (2) four years under the MCCCDA (three years for TILA). *Compare* 15 U.S.C. § 1640(a) *with* MASS. GEN. LAWS ch. 140D § 32(a); 15 U.S.C. § 1635(f) *with* MASS. GEN. LAWS ch. 140D § 10(f).

Although it is impossible to "violate" TILA with respect to notifying Massachusetts borrowers of their rescission rights because the federal requirements have been pre-empted by MCCCDA's requirements, *Belini*, 412 F.3d at 26; *see also Ives v. W.T. Grant Co.*, 522 F.2d 749, 753-54 (2d Cir. 1975), TILA entitles Massachusetts borrowers to bring a claim for damages under 15 U.S.C. § 1640 if MCCCDA's disclosure requirements are not met. 12 C.F.R. § 226.29(b)(2) ("If an exemption has been granted, the disclosures required by the applicable state law (except any additional requirements not imposed by federal law) shall constitute the disclosures required by this Act" for purposes of section 1640.).

### B.    MCCCDA's Disclosure Requirements

MCCCDA requires the following information to be clearly and conspicuously disclosed to borrowers in a notice of the right to rescind:

> <u>Notice of Right to Rescind</u>. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> > (1) The retention or acquisition of a security interest in the consumer's principal dwelling.
> >
> > (2) The consumer's right to rescind the transaction.
> >
> > (3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
> >
> > (4) The effects of rescission, as described in 209 CMR 32.23(4).
> >
> > (5) The date the rescission period expires.

209 C.M.R. 32.23(2)(a). These five requirements are identical to their TILA counterparts. *Compare* 209 C.M.R. 32.23(2)(a) *with* 12 C.F.R. § 226.23(b)(1). There is no dispute that First Horizon's Notice met the requirements of (1)-(3) and (5).

The fourth requirement, disclosure of the "effects of rescission," obliges lenders to disclose the following information to borrowers:

> (a) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

> (b) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

> (c) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under 209 CMR 32.23(4)(b). When the creditor has complied with 209 CMR 32.23(4)(b), the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

209 C.M.R. 32.23(4). These elements are also identical to their TILA counterparts. *Compare* 209 C.M.R. 32.23(4) *with* 12 C.F.R. § 226.23(d).

## C.    Clear and Conspicuous Standard

The legal issue in this case is whether First Horizon's Notice met the MCCCDA's requirement that First Horizon clearly and conspicuously disclose the effects of rescission. 209 C.M.R. 32.23(2)(a). The First Circuit recently rejected the Seventh Circuit's "rule of hyper-technicality," *see Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir.2006), and joined most other courts in concluding that the truth-in-lending laws' "clear and conspicuous standard is less demanding than a requirement of perfect notice." *Doral*, 485 F.3d at 16 & n.6. Under the clear and conspicuous standard, even a technically incorrect notice complies with MCCCDA or TILA if it substantially informs the borrower of the right to cancel the loan transaction. *Id.*; *see also American*

*Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) ("[T]his Court believes that Amnet <u>substantially complied</u> with all requirements of TILA in notifying the Sheltons of their right of rescission, [and] this Court need not address each alleged hyper-technical violation …."); *Mills v. Equicredit Corp.*, 172 Fed. Appx. 652, 657, 2006 WL 455158, at *5 (6th Cir. Feb. 24, 2006) ("<u>technically incorrect</u>" form "nonetheless <u>informed</u> Appellants of their right to cancel the loan transaction," warranting dismissal of TILA damages and rescission claims); *Smith v. Chapman*, 614 F.2d 968, 972 (5th Cir. 1980) ("Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation.").[4]

### III.    First Horizon Is Entitled to Summary Judgment Because It Fulfilled Its Obligation to Provide a Clear and Conspicuous Notice of Rescission Rights

The First Circuit recently held that when determining if a lender's truth-in-lending disclosures were legally sufficient, "the key question … is whether [the lender] clearly and conspicuously informed plaintiffs of their right of rescission and the effects thereof, in compliance with the requirements laid out in Regulation Z." *Doral*, 485 F.3d at 17. First Horizon's form meets this standard. The first paragraph of First Horizon's Notice, JSOF ¶ 4, includes the required elements (1) (acquisition of security interest on borrower's home), (2) (right to rescind) and (5) (expiry of rescission right) set out in 209 C.M.R. 32.23(2)(a). The second paragraph explains the effects of rescission described in 209 C.M.R. 32.23(4)(a) and (b). The third paragraph explains in more detail the effects

---

[4] *See also Veale v. Citibank, F.S.B.*, 85 F.3d 577, 581 (11th Cir. 1996) ("TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescision [sic] rights."); *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 118 (2d Cir. 1983) ("perfect disclosure" not required).

of rescinding a transaction in which a borrower obtains an extension of credit on a pre-existing First Horizon loan.  The fourth paragraph explains the effects of rescission described in 209 C.M.R. 32.23(4)(c), and, in conjunction with the second paragraph, meets required element (4) (effects of rescission) set out in 209 C.M.R. 32.23(2)(a).  First Horizon's form includes a second section, "How to Cancel," which discloses the information required by 209 C.M.R. 32.23(2)(a)(3) (how to rescind, and lender's address).  App. Exs. 1-3.  First Horizon's Notice thus clearly and accurately disclosed to the Plaintiffs all the information they were legally entitled to have.

A borrower's right to rescind arises in two distinct situations:  (1) when a borrower refinances another lender's loan, and (2) when a borrower increases the amount of a previous extension of credit by the same lender.  First Horizon uses a single Notice to explain to its borrowers their right of rescission, a right which, contrary to the Plaintiffs' implication, 2d Am. Compl. ¶¶ 12-15, does not vary with the circumstances.  In either situation, the mortgage/security interest that is created by the transaction is cancelled, leaving undisturbed the mortgage/security interest that existed prior to the cancellation of the transaction.

The Plaintiffs assert that the following language in the third paragraph of the Notice is confusing:  "For new transactions involving us, if you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit.  It will not affect the amount that you presently owe or the mortgage lien, or security interest we already have on your home."  (2d Am. Compl. ¶¶ 14-15.)  The Plaintiffs allege that First Horizon's single-form Notice required additional explanation of what is meant by "new transactions involving us" for the Notice to clearly disclose that when a borrower

13

refinances another lender's loan she may cancel the entire amount of that loan, but when a borrower increases the amount of a previous extension of credit from First Horizon she may cancel only the amount representing the increase in credit.  (2d Am. Compl. ¶ 15.)

However, the Plaintiffs were not entitled to further explication of the meaning of "new transactions involving us."  "The question is not whether [a truth-in-lending notice] is capable of semantic improvement but whether it contains a substantial and accurate disclosure ...."  *Dixon v. D.H. Holmes Co.*, 566 F.2d 571, 573 (5th Cir. 1978).  A TILA disclosure that "requires the consumer to exercise some degree of care and study" will suffice.  *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 118 (2d Cir. 1983).  First Horizon's Notice is, therefore, sufficient as a matter of law.

In evaluating whether a lender's disclosure of a borrower's rescission rights is in compliance with applicable truth-in-lending statutes, there is no Massachusetts law setting out a standard specifically applicable to the MCCCDA.  Since TILA's and MCCCDA's disclosure requirements are the same, it is appropriate to look to interpretations of TILA on this issue for guidance.  *McKenna*, 475 F.3d at 422; *Mayo v. Key Fin. Servs., Inc.*, 424 Mass. 862, 864 (Mass. 1997) (federal court decisions involving TILA are "instructive" in construing the parallel provisions of MCCCDA).  In *Palmer v. Champion Mortgage*, the First Circuit adopted an "objective reasonableness" standard for evaluating the adequacy of TILA disclosures.  465 F.3d 24, 28 (1st Cir. 2006).  This Court should therefore evaluate the adequacy of First Horizon's notice "from the vantage point of a hypothetical average consumer—a consumer who is neither particularly sophisticated nor particularly dense," *Id.*, as the First Circuit did in *Doral*.  *Doral*, 485 F.3d at 18-19.

14

In *Santos-Rodriguez v. Doral Mortgage Corp*, 485 F.3d 12 (1st Cir. 2007), the First Circuit recently held in circumstances similar to the Plaintiffs' that a technically incorrect notice nevertheless complied with TILA's disclosure requirements, as a matter of law. The plaintiffs in *Doral* had refinanced the loans they already had with Doral Mortgage Co.—a "same-lender" refinance—and received extensions of credit, giving rise to a statutory right of rescission. *Id.* at 13-14. The lender provided them with a form that described the general right to rescind and did not provide additional details about the effects of rescinding an additional extension of credit financed by the same lender.[5] *Id.* at 14. The court concluded that the lender had nonetheless met its legal obligations, because "[t]he form plaintiffs received explained, among other things, that (1) they were entering a transaction that would result in a mortgage on their home; (2) they had a legal right to rescind 'this transaction,' without cost, within three days; and (3) if they were to rescind the transaction, the mortgage that would have been created by the refinancing transaction would also be cancelled." *Id.* at 17. Thus, "because Doral's disclosure correctly stated that rescission of the refinance loan would cancel the security interest contemplated by that loan, and would impact only the refinance transaction, it satisfactorily disclosed the effects of rescission as required by 12 C.F.R. § 226.23(d)." *Id.* at 18. The court reiterated that use of a particular model form is not required, and that "the only test for compliance is whether the notice actually given informed the consumer clearly and conspicuously of his rights and obligations …." *Id.* at 18 n.7. The plaintiffs were not entitled to be "affirmatively inform[ed] … that rescission of the refinance

---

[5] In other words, the lender provided the refinancing borrowers with a form patterned on FRB model form H-8, which is designed for general transactions, instead of a form patterned on FRB model form H-9, which is designed for same-lender refinancing transactions. *Doral*, 485 F.3d at 15.

transaction would not also rescind their original mortgage." *Id.*; *see also Veale*, 85 F.3d at 580 ("We hold that ... the H-8 form provides sufficient notice that the current transaction may be canceled but that previous transactions, including previous mortgages, may not be rescinded."); *Mills*, 172 Fed.Appx. at 656 (approving of the district court's conclusion that "assuming that the form used by EquiCredit was technically incorrect ... the form nonetheless informed Appellants of their right to cancel the loan transaction").

*Doral* dictates summary judgment for First Horizon. As in *Doral*, the Plaintiffs received a form that clearly and accurately explained their rights, informing them that: (1) they were entering a transaction that would result in a mortgage on their home; (2) they had a legal right to rescind the transaction, without cost, within three days; and (3) if they were to rescind the transaction, the mortgage that would have been created by the transaction would also be cancelled. JSOF ¶ 4; App. Exs. 1-3. The Plaintiffs are not entitled to anything more under the MCCCDA.

The Plaintiffs allege that these legally sufficient disclosures in paragraphs 1 and 2 of the Notice were overshadowed by "confusing" language appearing later in the Notice that supposedly did not clearly indicate its inapplicability to the Plaintiffs. App. Exs. 1-3; 2d Am. Compl. ¶¶ 14-15. As an initial matter, this contention does not state a claim under the MCCCDA. That the Notice could perhaps have been clearer does not make it defective. After Plaintiffs' counsel complained about a previous version of the Notice, First Horizon created the version of the Notice that is at issue in this case in an effort to simplify it and eliminate an opportunity for mistakes in disclosing to borrowers their right to rescind. SOF ¶ 6.

16

Moreover, the Plaintiffs' strained interpretation is unreasonable, both because it takes the language out of context and because it ignores the plain meaning of the allegedly "confusing" language.  The second sentence cited by the Plaintiffs states that cancelling "will not affect the amount that you presently owe <u>or the mortgage lien, or security interest we already have on your home</u>."  (2d Am. Compl. ¶ 14.)  Since First Horizon would not "already have" a mortgage lien or security interest on the home of a borrower who was refinancing another lender's loan, a reasonable borrower in the Plaintiffs' position would think that the effects of rescission were described in the second paragraph of the Notice, and that the third paragraph was inapplicable.[6]  Furthermore, only a borrower who not only already had a mortgage with First Horizon but also was obtaining an increase in credit would reasonably apply the allegedly confusing language to their situation, since it also refers to an "increase in the amount of credit."  JSOF ¶ 4.  These are exactly the borrowers to whom this paragraph actually applied.  Since an MCCCDA disclosure that that "requires the consumer to exercise some degree of care and study" will suffice if, when "<u>read as a whole</u>, … the imperfections in format did not violate the law," *Gambardella*, 716 F.2d at 118, the Plaintiffs' interpretation is unreasonable.  First Horizon's Notice provided sufficient disclosures as a matter of law, and no additional explanation of what was meant by "new transactions involving us" was required.  First Horizon is entitled to summary judgment that its Notice complied with MCCCDA's disclosure requirements, as a matter of law.

---

[6] It is thus entirely unsurprising that the Plaintiffs correctly understood their rights after receiving the Notice at closing and were not actually confused by the language in the Notice.  SOF ¶¶ 1-4, 7.

**IV.    First Horizon Is Entitled to Summary Judgment Against the Plaintiffs Because First Horizon's Notice Did Not Confuse Them About Their Rescission Rights**

The Plaintiffs all testified under oath that they were not confused by the Notice they received when they closed on their loans.  SOF ¶¶ 1-4.  Based on these undisputed facts, there is no violation of MCCCDA under these circumstances.

Although as discussed above, the lack of Massachusetts case law with respect to whether a particular form violates MCCCDA makes it appropriate to look to federal interpretations of TILA such as *Palmer*, there is controlling Massachusetts case law regarding whether a lender's technical violation of MCCCDA will result in liability to a particular borrower.  *Palmer*'s objective standard of reasonableness governs determinations of whether a disclosure of rescission rights violates TILA (technically or otherwise), but it must give way to Massachusetts' own interpretation of the appropriate standard by which lenders' liability under MCCCDA is determined.  Thus, *Palmer* does not apply to a determination of "whether the subjective understanding of the borrowers with respect to their rights negates a prima facie [truth-in-lending] violation."  *Rodrigues v. Members Mortgage Co., Inc.*, 226 F.R.D. 147, 152 (D. Mass. 2005) (Saris, J.).  Rather, in *Mechanics Nat'l Bank of Worcester v. Killeen*, 377 Mass. 100, 384 N.E.2d 1231 (1979), Massachusetts' Supreme Judicial Court found that when a rescission notice did not comply with the law but the borrowers were not confused by it, the borrowers could not maintain a claim for damages or seek rescission.  *Id*. at 111-12, 384 N.E.2d at 1238; *see also* Report & Recommendation on Pls.' Mot. for Class Cert. at 20 (quoting *Rodrigues*, 226 F.R.D. at 152 (question of law existed regarding "whether the subjective understanding of the borrowers with respect to their rights negates a prima facie TILA violation")).  In *Killeen*, the plaintiffs claimed a violation of MCCCDA entitling them to

18

damages and to an extension of their three-day rescission window because some of the forms they received at closing omitted the name of the lender. *Id.* 377 Mass. at 111, 384 N.E.2d at 1238. The omission of the lender was indisputably a violation of MCCCDA and meant the notice did not legally comply with MCCCDA's disclosure requirements. Notwithstanding the technical violation, the Court held that neither damages nor an extended rescission right were available to the Killeens, because "[t]he Killeens knew who the lender was, and they did not undertake seasonably to rescind the transaction, as the bank's notice advised them they could." *Id.* at 111-12. Thus, under MCCCDA, a lender's liability for a technically improper rescission notice depends on the borrower's subjective awareness of the right to rescind.

Here, plaintiffs Ralph McKenna, Laura Lillie, Christopher Lillie, and Ilene Wilgoren-Deane each testified under oath that they were not confused by the Notice that First Horizon provided when they closed on their loans.[7] Like the plaintiffs in *Killeen*, these Plaintiffs clearly knew what their rescission rights were and understood how to exercise those rights, yet they knowingly chose not to rescind their loans within the three-day window, as First Horizon's notice advised them they could. (SOF ¶¶ 1-4; App. Exs. 1-3.)[8] Glenroy Deane testified that he had never read First Horizon's Notice prior to his deposition, and therefore could not possibly have been confused by the Notice. (SOF

---

[7] Although the Plaintiffs allege that the Notice "is confusing" in the abstract and that it "obfuscates rather than discloses the borrower's rights," 2d Am. Compl. ¶ 15, they have never claimed that they or anyone else were actually confused by First Horizon's Notice.

[8] Contrary to the Magistrate's analysis in the Report & Recommendation of the applicability of *Killeen*, this is not a situation where "the consumer's fundamental right to rescind was confusing." Report & Recommendation at 20 n.6. Rather, it is undisputed that First Horizon correctly notified the Plaintiffs that they had a right to rescind, and the only issue is whether First Horizon's disclosure of the effects of rescission sufficiently complied with MCCCDA's requirements.

¶ 5.) Therefore, even if this Court finds that First Horizon's Notice technically violated MCCCDA, First Horizon is entitled to summary judgment against the Plaintiffs because First Horizon did not violate their rights.

## CONCLUSION

For the foregoing reasons, First Horizon respectfully requests that the Court grant summary judgment that First Horizon complied with the disclosure requirements of MCCCDA and its associated regulations. In the alternative, First Horizon respectfully requests that the Court grant summary judgment against the Plaintiffs that, due to their lack of confusion about their rescission rights, First Horizon is not liable to them for any violation of MCCCDA, and that therefore they may not bring claims for rescission under MCCCDA or damages under MCCCDA or TILA.

Respectfully submitted,

/s/ Alisha R. Bloom
U. Gwyn Williams (BBO # 565181)
Alisha R. Bloom (BBO # 662261)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Thomas M. Hefferon (BBO # 548289)
GOODWIN PROCTER LLP
901 New York Ave., NW
Washington, D.C. 20001
(202) 346-4000

Attorneys for Defendant

FIRST HORIZON HOME LOAN
CORPORATION

Dated: July 19, 2007

20

## <u>CERTIFICATE OF SERVICE</u>

  The undersigned hereby certifies that the foregoing document is being filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 19, 2007.  The foregoing document will be available for viewing and downloading from the ECF system.

       /s/ Alisha R. Bloom_____

       Alisha R. Bloom

LIBA/1804550.9

21