UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RALPH G. MCKENNA,
GLENROY A. DEANE,
ILENE WILGOREN-DEANE,
CHRISTOPHER J. LILLIE, AND
LAURA A. LILLIE,
        Plaintiffs,

v.

FIRST HORIZON HOME LOAN
CORPORATION,
        Defendant.

Civil Action No. 04-10370-PBS

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendant First Horizon Home Loans Corp. ("First Horizon") hereby submits the following Statement of Undisputed Material Facts in support of Defendant's motion for summary judgment:

1. At her deposition, Laura Lillie testified that the day after the closing, she and her husband read through the documents they received at the closing, including a Notice of Right to Cancel ("Notice"). (Deposition of Laura Lillie, December 16, 2004 ("L. Lillie Dep.") 57:12-59:4, App. Ex. 9[1].) Based on these documents, the Lillies correctly understood that they had a three-day window in which to cancel their entire transaction. (L. Lillie Dep. 46:8-47:13, 58:7-59:4, 60:10-13, 62:6-10 ("Q. At the time,

---

[1] Pursuant to Local Rule 56.1, First Horizon refers the Court to the Joint Appendix of Exhibits to Defendant's Statement of Undisputed Material Facts and the Parties' Joint Statement of Undisputed Material Facts, submitted herewith, hereinafter cited as "App. Ex. __."

1

back in August of 2003, was it your understanding, after you looked at this document, that you had the right to cancel the loan? A. I assumed we had the right to cancel the entire loan."), 63:2-15, App. Ex. 9.) However, after receiving and responding to a solicitation by Attorney Lefebvre several months later (L. Lillie Dep. 16:10-17:16, App. Ex. 9), Mrs. Lillie felt that "the document was incorrect that we received for the type of loan that we did get." (L. Lillie Dep. 62:13-63:1, App. Ex. 9.) The Lillies decided to seek rescission of their loan only after speaking with Attorney Lefebvre. (L. Lillie Dep. 60:14-24, 63:18-64:9, App. Ex. 9.)

      2.    At his deposition, Ralph McKenna testified that although he received a Notice at closing, he did not read it. (Deposition of Ralph McKenna, January 14, 2005 ("McKenna Dep.") 50:18-51:6, App. Ex. 10.) Nonetheless, he correctly understood that he had three days in which to cancel the transaction for any reason. (McKenna Dep. 27:12-29:2, App. Ex. 10.) He only decided that the Notice was confusing after responding to a solicitation by Attorney Lefebvre several months later. (McKenna Dep., 16:13-17:17, 52:16-23 ("Q. Mr. McKenna, when was it that you first decided you wanted to cancel your loan? A. After I spoke to my attorney, Chris Lefebvre. Q. Before that time, you had no desire to cancel? A. I didn't know there was any problem with it."), 54:12-57:10, 58:16-23, App. Ex. 10.) Because he was "unhappy with the language" in the Notice, Mr. McKenna decided to seek rescission of his loan. (McKenna Dep. 64:11-65:7, App. Ex. 10.)

      3.    At her deposition, Ilene Wilgoren-Deane testified that she looked at the Notice at the closing and signed it. (Deposition of Ilene Wilgoren-Deane, January 14, 2005 ("Wilgoren-Deane Dep.") 66:20-23, App. Ex. 11.) At the closing, she understood

that she and her husband had a right to cancel the loan, and that if they did cancel the loan, the entire transaction would be cancelled. (Wilgoren-Deane Dep. 66:24-67:10 ("Q. Is it correct that at the closing that you understood that you had a right to cancel the loan? A. Correct. Q. Was it your understanding that if you cancelled the loan, the whole transaction was cancelled? A. Correct."), App. Ex. 11.) Mrs. Wilgoren-Deane only concluded that the language in the Notice was "unclear" after responding to a solicitation by Attorney Lefebvre several months later. (Wilgoren-Deane Dep. 14:13-15:7, 64:18-65:3 ("Q. Mrs. Deane, can you tell me what it is that you think First Horizon did wrong in this case? A. They were unclear often on the notice to cancel, two paragraphs. One paragraph said the right to cancel the whole loan. The other one said something to the effect, going off the top of my head, just the amount, change the amount. <u>It was unclear as to what it was saying when it was brought to my attention.</u>"), App. Ex. 11.) The Deanes subsequently decided to seek rescission of their loan. (Wilgoren-Deane Dep. 59:15-24 ("Q. Mrs. Deane, when was it that you first decided that you wanted to cancel the loan? A. After speaking to my attorney, after hiring him. Q. So is it correct that before you hired your attorney you had no desire to cancel the loan? A. Correct."), App. Ex. 11.)

    4.  At his deposition, Christopher Lillie testified that he did not read his Notice of Right to Cancel until several weeks after he and his wife closed on their loan. (Deposition of Christopher Lillie, December 16, 2004 ("C. Lillie Dep.") 58:4-58:12, App. Ex. 10.) However, he correctly understood from previous closings in which he had participated that he had three business days in which to cancel the loan and nullify the transaction. (C. Lillie Dep. 60:11-61:5 ("Q. Now, at the closing, what was your

3

understanding of what the right to cancel was?  A.  Like previous closings, I guess my understanding was that I had three business days.... Q.  So is it correct that you understood that within that three-day period, you could nullify the transaction?  A.  Yes.  That would be my understanding.  Q.  Now, several weeks later, when you were reviewing the document, was that still your understanding at that time, about what the right to rescind was?  A.  Yes."), App. Ex. 10.)  It was not until he received and responded to a solicitation by Attorney Lefebvre that he decided to pursue rescission of his and his wife's loan.  (C. Lillie Dep. 62:18-63:24, App. Ex. 10.)  Although Mr. Lillie could clearly—and correctly—articulate what his understanding of his right of rescission was at the time he and his wife closed on their loan (C. Lillie Dep. 64:9-20, App. Ex. 10), he was unable to explain what he believed was wrong with First Horizon's Notice such that his right to cancel had not been "acknowledged to him properly."  (C. Lillie Dep. 64:1-8, App. Ex. 10.)

5. Unlike the other four plaintiffs, Glenroy Deane testified at his deposition that he never read the Notice of Right to Cancel that he was provided with at closing.  (Deposition of Glenroy Deane, January 14, 2005 ("Deane Dep."), 56:2-56:18, 62:5-12, App. Ex. 14.).  His understanding of his rights and obligations regarding the rescission of his loan is not consistent with TILA or MCCCDA.  (E.g., Deane Dep. 24:24-25:9 ("Q.  Now, with regard to a refinancing transaction, the same question about a time period:  Do you think there is some time period during which you have to express your desire to cancel?  A.  I would assume within six months to a year you can cancel anything through the proper procedures.  Q.  And is that your understanding for all refinancing transactions?  A.  Yes."), 53:10-54:5, 66:18-21 ("Q.  So do you believe that you would be

4

able to keep the amount that was provided to you under the loan that you are trying to cancel?  A.  Yes.", App. Ex. 14.)  Mr. Deane did not know his attorney's name (Deane Dep. 51:6-9, App. Ex. 14), could not explain what his claims were (Deane Dep. 57:24-58:8 ("Q.  Can you tell me what your claim is against First Horizon in this lawsuit?  A.  My wife has the claim.  Q.  Can you tell me what it is?  A.  I don't know exactly what it is.  Q.  Do you also have a claim in this lawsuit against First Horizon?  A.  I assume so since my signature's on the paperwork."), App. Ex. 14), and could not articulate why he wanted to rescind his loan, deferring instead to his wife (Deane Dep. 49:23-50:7, 51:13-16 ("Q.  Okay.  For what reason did you want to cancel the loan?  A.  I don't know.  You'll have to talk to my wife on that legal issue."), App. Ex. 14).

      6.      After Plaintiffs' counsel complained about a previous version of the Notice, First Horizon created the version of the Notice that is at issue in this case in an effort to simplify it and eliminate an opportunity for mistakes in disclosing to borrowers their right to rescind.  (Deposition of Charles Covington, February 11, 2005, 29:15-30:10, 40:9-13, App. Ex. 12; Report & Recommendation on Pls.' Mot. for Class Cert., at 5.)

      7.      None of the Plaintiffs have claimed that they were actually confused by the Notice at or near the time of their transactions, or that the language in the Notice had any effect on their decision not to timely rescind their loans.

        Respectfully submitted,

        /s/ Alisha R. Bloom_____
        U. Gwyn Williams (BBO # 565181)
        Alisha R. Bloom (BBO # 662261)
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, MA 02109-2881
        (617) 570-1000

        Thomas M. Hefferon (BBO # 548289)
        GOODWIN PROCTER LLP
        901 New York Ave., NW
        Washington, D.C. 20001
        (202) 346-4000

        Attorneys for Defendant

        FIRST HORIZON HOME LOAN
        CORPORATION

        Dated: July 19, 2007

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that the foregoing document is being filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 19, 2007. The foregoing document will be available for viewing and downloading from the ECF system.

        /s/ Alisha R. Bloom_____
        Alisha R. Bloom

LIBA/1808993.3