# IN THE UNITED STATES DISTRICT COURT
## FOR  DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RALPH G. MCKENNA, | ) | |
| GLENROY A. DEANE, | ) | |
| ILENE WILGOREN-DEANE, | ) | |
| CHRISTOPHER J. LILLIE; and | ) | 04-10370-PBS |
| LAURIE A. LILLIE; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST HORIZON HOME LOAN | ) | |
| CORPORATION, | ) | |
| | ) | **JURY DEMANDED** |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
CROSS MOTION FOR SUMMARY JUDGMENT AND RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STANDARD OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  TILA AND MCCCDA DISCLOSURE
      REQUIREMENTS ARE IDENTICAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   FIRST HORIZON'S NOTICE IS
      CONFUSING AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.    WHERE MORE THAN ONE INTERPRETATION
      OF A CONSUMER'S RIGHTS ARE POSSIBLE,
      THE NOTICE CANNOT BE CLEAR AND CONSPICUOUS  . . . . . . . . . . . . . . . 12

VI.   *PALMER* APPLIES TO MCCCDA VIOLATIONS  . . . . . . . . . . . . . . . . . . . . . . . 15

VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

## TABLE OF AUTHORITIES

<u>Cases</u>

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*Barnes v. Fleet National Bank*,
    370 F.3d 164 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Belini v. Washington Mutual Bank, FA*,
    412 F.3d 17 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
*Bizier v. Globe Fin.  Servs., Inc.*,
    654 F.2d 1 (1st Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*Central Int'l Co. v. Kemper Nat'l Ins. Cos.*,
    202 F.3d 372 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Daigneault v. Public Finance Corp.*,
    562 F.Supp. 194 (D.R.I. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
*Farnsworth v. Reyes*,
    1999 Mass. Super. LEXIS 55 (Mass. Super. Feb. 5, 1999) . . . . . . . . . . . . . . . . . . . . . . 5
*First Nat'l Bank v. Cities Services Co.*,
    391 U.S. 253 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*Fluehman v. Assocs. Fin. Servs.*,
    2002 U.S. Dist. LEXIS 5755 (D. Mass. March 29, 2002) . . . . . . . . . . . . . . . . . . . . . . . 7
*Gibbons v. Interbank Funding Group*,
    208 F.R.D 278 (N.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Gomez v. Rivera Rodriguez*,
    344 F.3d 103 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Hahn v. Sargent*,
    523 F.2d 461 (1st Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*Handy v. Anchor Mortgage Corp.*,
    2006 U.S. App. LEXIS 24639 (7th Cir. Sept. 29, 2006) . . . . . . . . . . . . . . 9, 10, 11, 13, 15
*In re Botelho*,
    195 B.R. 558 (Bankr. D. Mass. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16
*In re Desrosiers*,
    212 B.R. 716 (Bankr. D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*In re Fidler*,
    226 B.R. 734 (Bankr. D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*In re Rodrigues*,
    278 B.R. 683 (D.R.I. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Tavares*,
    298 B.R. 195 (Bankr. D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*In re Whitley*,
    177 B.R. 142 (D. Mass. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Lembo v. Waters*,
    294 N.E.2d 566 (Mass. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Mandel v. GMAC Mortgage Corp.*,
    2004 Bankr. LEXIS 2367 (Bankr. E.D. Wisc. Nov. 8, 2004) . . . . . . . . . . . . . . . . . . . . 14
*Matsushita Electrical Industrial Co. v. Zenith Radio*,
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*Mayo v. Key Financial Services, Inc.*,
    1994 Mass. Super. LEXIS 549 (Mass. Super. June 22, 1994) . . . . . . . . . . . . . . . . . . . 16
*Mechanics Nat'l Bank of Worcester v. Killeen*,
    384 N.E.2d 1231 (Mass. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17
*New Maine Nat'l Bank v. Gendron*,
    780 F.Supp. 52 (D. Me. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Palmer v. Champion Mortgage*,
    465 F.3d 24 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12, 15, 18
*Porter v. Mid-Penn Consumer Discount Co.*,
    961 F.2d 1066 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12-15
*Ritter v. Durand Chevrolet*,
    945 F.Supp. 381 (D. Mass. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Rodrigues v. Members Mortgage Co., Inc.*,
    323 F.Supp.2d 202 (D. Mass.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15
*Rodrigues v. Members Mortgage Co., Inc.*,
    226 F.R.D. 147 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
*Santos-Rodriguez v. Doral Mortgage Corp.*,
    485 F.3d 12 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-15
*Smith v. Check-N-Go of Ill., Inc.*,
    200 F.3d 511 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Stephanischen v. Merchants Despatch Trans*,
    722 F.2d 922 (1st Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
*The Lexington Insurance Co. v. All Regions Chemical Labs, Inc.*,
    647 N.E.2d 399 (Mass. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Therrien v. Resource Financial Group, Inc.*,
    704 F.Supp. 322 (D.N.H. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*Veale v. Citibank*,
    85 F.3d 577 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Weeden v. Auto Workers Credit Union, Inc.*,
    1999 U.S. App. LEXIS 5272 (6th Cir. Mar. 19, 1999) . . . . . . . . . . . . . . . . . . . . . . . . 17

## **Statutes**

15 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5
15 U.S.C. § 1604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
15 U.S.C. § 1633 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
15 U.S.C. § 1635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
15 U.S.C. § 1666 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Mass. G.L. ch.140C § 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Mass. G.L. ch.140D § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

## **Rules**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## **Regulations**

12 C.F.R. § 226, Appendix H . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
12 C.F.R. § 226.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9
12 C.F.R. § 226.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
12 C.F.R. § 226.29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
209 C.M.R. 32.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
209 C.M.R. 32.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8, 12, 15

## **Additional Authority**

Renuart, Elizabeth & Kathleen Keest,
      *Truth In Lending* § 4.2.4 (5th ed 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**IN THE UNITED STATES DISTRICT COURT
FOR  DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| RALPH G. MCKENNA, | ) | |
| GLENROY A. DEANE, | ) | |
| ILENE WILGOREN-DEANE, | ) | |
| CHRISTOPHER J. LILLIE; and | ) | 04-10370-PBS |
| LAURIE A. LILLIE; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST HORIZON HOME LOAN | ) | |
| CORPORATION, | ) | |
| | ) | **JURY DEMANDED** |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
CROSS MOTION FOR SUMMARY JUDGMENT AND RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Ralph G. McKenna, Glenroy A. Deane, Ilene Wilgoren-Deane, Christopher J. Lillie and Laurie A. Lillie respectfully submit this memorandum in support of their cross motion for summary judgment and response in opposition to defendant First Horizon Home Loan Corporation's ("First Horizon") motion for summary judgment.

**I.     STATEMENT OF FACTS**

During 2003, all plaintiffs, residents of Massachusetts, obtained residential home loans from First Horizon which were used to refinance a prior mortgage with a lender other than First Horizon.  (JSOF ¶¶ 1-3)[1] As part of the refinance transaction with First Horizon, plaintiffs each received a form Notice of Right to Cancel ("Notice").  (JSOF ¶¶ 1-3) The Notice described

---

[1] Consistent with the abbreviations used in Defendant's brief, "JSOF" will herein be used to refer to the Joint Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment.

1

the effects of rescission in two consecutive paragraphs.[2] (JSOF ¶ 4) First Horizon's Notice

states:

> If you cancel the transaction, the mortgage/deed of trust is also canceled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/deed of trust on your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

> For new transactions involving us, if you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit. It will not affect the amount that you presently owe or the mortgage lien, or security interest we already have on your home. If you cancel the mortgage, lien, or security interest as it applies to the increased amount is also canceled. Within 20 calendar days after we receive your notice of cancellation of the new transaction, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on your home no longer applies to the increase of credit. We must also return any money you have given to us or anyone else in connection with this transaction.

First Horizon had previously used a form Notice which was designed so that an

appropriate box was checked "depending on the rescission rights the customer had." (JSOF ¶

13, p. 23) The old form is attached hereto as *Appendix A*. (PSOF ¶ 2, Deposition Exhibit 2)[3]

First Horizon's "new form" removed the check box spaces. *Compare Deposition Exhibit 2 of*

*PSOF ¶ 2 to Deposition Exhibit 3 (a/k/a JSOF ¶ 4)* When the old form was used it was a First

Horizon employee that checked a box. (JSOF ¶ 13, p. 24) First Horizon was having difficulty

getting its closing agents to check the correct box, and removed the boxes in order to "eliminate

an opportunity to make a mistake." (JSOF ¶ 13, p. 24) Nothing in the new Notice informs the

---

[2] In discussing the Notice, these paragraphs will sometimes be referred to as "paragraph 1" or the "first paragraph" and "paragraph 2" or the "second paragraph."

[3] The paraphrase "PSOF" refers to Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Cross Motion for Summary Judgment.

recipient that only one of the two paragraphs is applicable to his or her mortgage transaction. (JSOF ¶ 4)

The content of the Notice each plaintiff received at their closings combines language from the Appendix H to Regulation Z ("Reg. Z"), 12 C.F.R. § 226, H-8 and H-9. (JSOF ¶ 4) Since all plaintiffs were refinancing with a new lender (First Horizon) that was different from their original creditors, each plaintiff should have received a general notice, similar to Reg. Z form H-8.[4]  Reg. Z form H-8 is the general notice of right to cancel and allows the borrower to rescind the entire loan.  On the other hand, Reg. Z form H-9 is used in situations where the original creditor extends a refinancing loan to the borrower and allows the borrower to rescind only the additional amount borrowed.  Although lenders are not required to use the model forms H-8 and H-9, Notices must be "substantially similar" to the model forms.  12 C.F.R. § 226.23(b)(2); 15 U.S.C. § 1604(b); 209 CMR 32.23(2)(b).  Form H-9 may *not* be interchanged with form H-8.  The language in the forms are exclusive; otherwise there would be no purpose of having two forms.

Plaintiffs second amended complaint alleges violations of the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, and the Massachusetts counterparts of those statutes,  the Massachusetts Consumer Credit Cost Disclosure Act, Mass. G.L. ch. 140D and 209 CMR part 32, ("MCCCDA").  Plaintiffs sent their notices of rescission to First Horizon in February and March,

---

[4]  Plaintiffs do not argue that First Horizon was required to use model forms in Appendix H to Regulation Z, H8 or H9.  The law clearly permits Notices "substantially similar" to the Reg. Z forms.  12 C.F.R. § 226.23(b)(2); 15 U.S.C. § 1604(b); 209 CMR 32.23(2)(b).  However, plaintiffs will use the language "H8" and "H9" throughout for sake of reference.

2004.  (JSOF ¶¶ 5-7)  Plaintiffs allege in their second amended complaint, that the Notices they received were defective because they confuse rather than inform the borrowers of the effects of rescission.  Plaintiffs seek rescission individually and also seek statutory damages both individually and on behalf of a class of similarly situated Massachusetts borrowers.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  In deciding a summary judgment motion, "the court must look at the record in the light most favorable to the party opposing the motion and must indulge in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stephanischen v. Merchants Despatch Trans*, 722 F.2d 922, 928 (1st Cir. 1983).  To survive a summary judgment on the basis of disputed material facts, the party opposing the motion must produce substantial evidence, going beyond the allegations of the complaint and supporting the claimed dispute, which would require a judge or a jury to resolve the conflicting versions of the truth at trial. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975); *Matsushita Electrical Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations or denials of its pleadings. *First Nat'l Bank v. Cities Services Co.*, 391 U.S. 253, 289 (1968).

4

Numerous courts have approved motions for summary judgment on TILA claims, as they often turn on the content of loan documents and disclosures. *Ritter v. Durand Chevrolet*, 945 F.Supp. 381 (D. Mass. 1996); *New Maine Nat'l Bank v. Gendron*, 780 F.Supp. 52 (D. Me. 1991); *In re Rodrigues*, 278 B.R. 683 (D.R.I. 2002); *Therrien v. Resource Financial Group, Inc.*, 704 F.Supp. 322 (D.N.H. 1989); *Daigneault v. Public Finance Corp.*, 562 F.Supp. 194 (D.R.I. 1983); *In re Whitley*, 177 B.R. 142 (D. Mass. 1995).

## III.     TILA AND MCCCDA DISCLOSURE REQUIREMENTS ARE IDENTICAL

MCCCDA is modeled after the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"). *In re Fidler*, 226 B.R. 734 (Bankr. D. Mass. 1998); *In re Tavares*, 298 B.R. 195, 204 (Bankr. D. Mass. 2003); *Farnsworth v. Reyes*, 1999 Mass. Super. LEXIS 55, at * 11 (Mass. Super. Feb. 5, 1999); *In re Desrosiers*, 212 B.R. 716, 722 (Bankr. D. Mass. 1997). "Both acts provide that a borrower whose loan is secured by his principal dwelling and who has been denied the requisite disclosures may rescind the loan transaction." *In re Fidler,* 226 B.R. at 736, citing § 1635. *See* Mass. G. L. 140D, § 10.

TILA and the MCCCDA require certain material disclosures be made to the consumer. Moreover, certain terms must be disclosed "clearly and conspicuously." 12 C.F.R. § 226.17(a)(1); 209 CMR 32.17. "If a disclosure is capable of more than one plausible interpretation, it is not clear." Elizabeth Renuart & Kathleen Keest, *Truth In Lending* § 4.2.4 (5th ed 2003). "A misleading disclosure is as much a violation of TILA as a failure to disclose at all." *Barnes v. Fleet National Bank*, 370 F.3d 164, 174 (1st Cir. 2004).

Those consumers who received compliant disclosures and wish to cancel their transactions, must do so within three business days. In the event the creditor does not comply with

the statutory disclosure requirements, the right to rescind is extended to three years for TILA and

four years for MCCCDA violations.  12 C.F.R. § 226.23(a)(3); 209 CMR 32.23(1)(c); 15 U.S.C. §

1635(f); Mass. G.L. ch.140D § 10(f).

Although Massachusetts has been exempted from the TILA, Massachusetts

residents are still entitled to relief (1) in federal court for violations of the state equivalent of the

federal statute, and (2) under the state remedial provisions. Regulation Z, 12 C.F.R. § 226.29(b),

provides that state exemptions are conditioned upon state law being similar to and affording no

less protection than federal law.  *See* 15 U.S.C. § 1633; 15 U.S.C. § 1666j(b).   Thus, the state

law must afford at least as much protection as federal law to operate at all, and the disclosures

and damages remedies at issue must be construed to provide at least as much protection as the

federal law.

"Because of the Massachusetts exemption, the substantive requirements of state

law are the requirements that creditors must follow.  This includes any disclosure requirements."

*Belini v. Washington Mutual Bank, FA*, 412 F.3d 17, 25-26 (1st Cir. 2005).  "The disclosure

requirements of TILA and CCCDA are essentially the same and generally do not require

separate analysis."  *Rodrigues v. Members Mortgage Co., Inc.*,  323 F.Supp.2d 202, 210 (D.

Mass. 2004) *citing Bizier v. Globe Fin.  Servs., Inc.*, 654 F.2d 1, 2 (1st Cir. 1981). "The relevant

substantive disclosure requirements under federal and [Massachusetts] state law are generally the

same."  *Belini v. Washington Mutual Bank, FA*, 412 F.3d 17, 27 (1st Cir. 2005).  "The remedial

provisions accompanying suits for rescission under TILA are essentially identical to the remedial

provisions accompanying suits for rescission under Massachusetts law."  *Id*. at 30.

Pursuant to Regulation Z, 12 C.F.R. § 226.23(b)(1)(iv), a Notice must disclose,

6

"The effects of rescission...." The Notice requirements set forth in 209 CMR 32.23(2)(a)(4) are

virtually identical. Regulation Z, 12 C.F.R. § 226.23(b)(2) provides: "To satisfy the disclosure

requirements of paragraph (b)(1) of this section, the *creditor* shall provide *the appropriate* model

*form* in Appendix H of this part or a substantially similar notice."  (emphasis added) Similarly,

209 CMR 32.23(2)(b) provides: "To satisfy the disclosure requirements of 209 CMR

32.23(2)(a), the creditor shall provide *a notice* that *conforms with the model forms in Appendix H*

*of Regulation Z*, as appropriate, or a substantially similar notice." (emphasis added)

      Since MCCCDA is modeled after TILA, TILA opinions are helpful in

understanding similar provision in the MCCCDA.  15 U.S.C. § 1633; *Fluehman v. Assocs. Fin.*

*Servs.*, 2002 U.S. Dist. LEXIS 5755 at *9, n.2 (D. Mass. Mar. 29, 2002).  Federal courts will

look to opinions interpreting TILA to determine the interpretations of the MCCCDA.

## IV.     FIRST HORIZON'S NOTICE IS CONFUSING AS A MATTER OF LAW

      The Notice must disclose the consumer's right to rescind and state the effects of

rescission.  There are different effects of rescission depending on whether the lender is

refinancing a loan from another lender or is financing an addition to an existing loan with the

same lender.  12 C.F.R. § 226.23(a)(1), n. 47.   Different Notices are required for each situation.

Regulation Z makes it clear that the creditor must provide *one* form of Notice. 12 C.F.R. §

226.23(b)(2);  209 CMR 32.23(2)(b).

      Regulation Z provides Model Forms of the Notice in Appendix H.  The

Regulation Z, form H-8 ("General"), is appropriate when there is a new loan with a new lender

and rescission cancels the entire new loan. The Regulation Z, form H-9 ("Refinancing with

Original Creditor") is only appropriate, where a new loan is obtained from the same lender, and

the borrower may only rescind the amount of the second loan that exceeds the amount of the first loan.  Thus, depending on the transaction at issue, only one form of the Notice is to be given, either the general form H-8 or the refinancing with the original creditor form H-9.  "To satisfy the disclosure requirements of 209 CMR 32.23(2)(a), the creditor shall provide *a notice* that *conforms with the model forms in Appendix H of Regulation Z*, as appropriate, or a substantially similar notice." 209 CMR 32.23(2)(b) (emphasis added)

First Horizon chose not to use the model forms.  The first of the pertinent paragraphs in the First Horizon Notice tracks model form H-8 (general).  The second paragraph substantially paraphrases model form H-9 (refinance with original creditor), but clearly states that the rescission will only apply to the increase in the amount of credit.

The two paragraphs in First Horizon's Notice involve substantially different results. For example, Mr. McKenna's obtained a $244,600 mortgage loan from First Horizon. (JSOF ¶ 1); (PSOF ¶ 1)  This loan refinanced the following debts: $211,192.72 to Chase Manhattan Mortgage Corp. and $604.94 to 1Q R.E. Tax to Town of Braintree. (PSOF ¶1) According to defendant's Notice, Mr. McKenna would believe he was entitled to rescind the $33,407.28, the additional amount borrowed.  In fact, he is entitled to rescind the entire $244,600 amount borrowed.   However, paragraph 2 of defendant's Notice tells Mr. McKenna that he is only entitled to exercise a limited rescission right in the amount of $33,407.28, as opposed to the full amount of the loan, which is wrong.

By making disclosures for both a general refinance with a different creditor and a refinancing with the original creditor, First Horizon has violated the 12 C.F.R. § 226.23(b)(2) and 209 CMR 32.23(2)(b) requirements to provide an appropriate form notice.

The loan is a contract between the lender and the borrower.  Accordingly, it is appropriate to look to principles of contract interpretation to determine the meaning of the language in the Notice.  "The disclosures shall reflect the terms of the legal obligation between the parties."  12 C.F.R. § 226.17(c)(1).  A contract "should be construed in such a way that no word or phrase is made meaningless by interpreting another word or phrase..."  *The Lexington Insurance Co. v. All Regions Chemical Labs, Inc.*, 647 N.E.2d 399, 400 (Mass. 1995). "As a matter of interpretation, specific terms typically trump general ones."  *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 121 (1st Cir. 2003).  *See Central Int'l Co. v. Kemper Nat'l Ins. Cos.*, 202 F.3d 372, 374 (1st Cir. 2000) (same); *Lembo v. Waters*, 294 N.E.2d 566, 569 (Mass. 1973) (same).

Borrowers attempting to interpret the First Horizon Notice in accordance with established contract interpretation principles would reach the wrong conclusion because they would give meaning to the second paragraph which is more specific than the first paragraph.

The second paragraph is also confusing because there is no explanation of what a "new transactions involving us" might be.  Since "new transactions involving us" is not defined, it is likely that a person reading defendant's notice will assume that that paragraph determines their rights "if you cancel." A loan refinancing a mortgage loan made by a lender other than First Horizon is "a new transaction involving" First Horizon.  The second paragraph reads that the plaintiffs will still owe something on the loan and that First Horizon will retain a security interest on the home if they elect to rescind; this ultimately could have dissuaded borrowers from rescinding.

In *Handy v. Anchor Mortgage Corp.*, 2006 U.S. App. LEXIS 24639 (7th Cir. Sept.

9

29, 2006), Ms. Handy refinanced her residential home loan with a new lender that was different

from her original lender and received five Notices of Right to Cancel; four of which were in a

format similar to Reg. Z, form H-9 (refinance with original creditor) and one Notice in a format

similar to Reg. Z, form H-8 (general).  Based on the type of transaction, Ms. Handy, like

plaintiffs here, should have received only the general notice (Reg. Z, form H-8).  Ms. Handy

sought rescission since Anchor had provided her with contradictory forms of Notice, and

therefore, failed to clearly and conspicuously disclose her right to rescind.

   The Seventh Circuit adopting an objective review of the disclosures held,

"Anchor's simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's

clear and conspicuous disclosure requirement, especially with regard to the 'effects of

rescission.'" *Id.* at *10**.**

   *Handy* is directly on point here.  Ms. Handy sought to rescind although she, like

the plaintiffs here, had received a proper general disclosure.  However, Ms. Handy also received

an improper disclosure, placing her in the position of having to determine which form Notice

applied to her situation.  Similarly in this case, plaintiffs were presented with the functional

equivalent of two Notices, a hybrid general form and a refinance with an original lender form,

and were likewise forced to determine which disclosure detailed their rights.  Furthermore, the

*Handy* Court held that "Where more than one reading of a rescission form is 'plausible,' the

form does not provide the borrower 'with a clear notice of what her right to rescind entail[s].'"

*Id*. citing *Porter v. Mid-Penn Consumer Disc. Co.*, 961 F.2d 1066, 1077 (3d Cir. 1992).

   Pursuant to *Palmer v. Champion Mortgage*, 465 F.3d 24, 28 (1st Cir. 2006), an

objective standard of review is applied in determining whether a TILA violation occurred.  First

Horizon has not clearly and conspicuously disclosed the consumer's right to rescind and the effects of rescission. Accordingly, plaintiffs are entitled to summary judgment as a matter of law.

Defendant's assertion that the plaintiffs' subjective understanding of the terms provided in the Notice is the determinative factor in analyzing whether a violation exists is simply erroneous. Whether a Notice is clear and conspicuous is an objective legal question. *Palmer v. Champion*, *supra*; *Handy v. Anchor Mortgage Corp.*, *supra*. It does not matter whether the plaintiffs were confused because the Court only needs to look at the contents of the form Notice in evaluating whether a violation exists.

Defendant argues that the Plaintiffs should know by reading the Notice in its entirety, which paragraph applies to them. (Def. Brief, pp. 16-17) But that argument is belied by defendant's own practices.

First, nothing in defendant's notice suggests that only one of the two paragraphs applies to a given loan. Second, defendant "created the version of the Notice that is at issue in this case in an effort to simplify it and eliminate an opportunity for mistakes in disclosing to borrowers their right to rescind." (Def. Brief, p. 16) When First Horizon's check box form Notice was used, which is ***virtually identical*** to the Notice at issue in this case, save the check box spaces, First Horizon's trained closing agents could not determine which box to check and mistakes were made checking the wrong box or failing to check a box at all. (JSOF ¶ 13, pp. 23-24) If defendant's trained, experienced closing agents were confused by the two paragraphs, certainly a lay borrower would also be confused. This is precisely why Reg. Z and the CMR require the *creditor* to select the "appropriate" form. The *borrower* should not have to guess.

11

The fact that First Horizon's employees or agents were making mistakes using the old form, is an admission of confusion. First Horizon cannot possibly think that consumers are more sophisticated than its own employees! Yet that is precisely what defendant argues here. Indeed, its argument would justify handing a copy of Appendix H to a consumer and telling her to make correct disclosures to herself. This is not what "disclosure" means.

Additionally, Defendant's argument is at odds with the "objective" standard of review set forth in *Palmer*. First Horizon's argument places the burden on the consumer to determine their rights, despite the clear mandate of Regulation Z and the CMR which obligate *creditors to notify borrowers* of their rescission rights, the effects of rescission and how to exercise those rights. 12 C.F.R. § 226.23(b)(2); 209 CMR 32.23(2)(b). Defendant's form Notice fails to provide an adequate disclosure to plaintiffs of their rescission rights and the effects of rescission. Accordingly, plaintiffs are entitled to summary judgment as a matter of law.

## V.    WHERE MORE THAN ONE INTERPRETATION OF A CONSUMER'S RIGHTS ARE POSSIBLE, THE NOTICE CANNOT BE CLEAR AND CONSPICUOUS

The First Circuit held in *Santos-Rodriguez v. Doral Mortgage Corp.*, 485 F.3d 12 (1st Cir. 2007), that the content of the Notice determined whether the disclosures made to the borrowers were clear and conspicuous. Similarly, the Third Circuit in *Porter v. Mid-Penn Consumer Discount Co.*, 961 F.2d 1066 (3d Cir. 1992), held that where more than one interpretation of a consumer's rights are possible, the Notice cannot be clear and conspicuous. In the case at bar, the content of the Notice reveals two incongruous disclosures in one form and therefore, the Notice is not clear and conspicuous as a matter of law.

In *Doral*, the consumers were provided with a form H-8 (general) notice rather than a form H-9 (limited) notice, which was the appropriate form for a same lender refinance.

*Doral* held that when only the general form notice is provided to the consumers in a refinance with an original creditor transaction, the notice is not misleading, but compliant with 12 C.F.R. § 226.23(b)(1) and (d). *Id*. at 17.   In reaching its conclusion, the Court analyzed whether the disclosures required by Regulation Z, 12 C.F.R. § 226.23(b), were clear and conspicuous.  The Court relied in part on *Veale v. Citibank*, 85 F.3d 577 (11th Cir. 1996),[5] in holding that although the consumers were not provided with "perfect" notice, they were provided with clear and conspicuous disclosures.  *Id*. at 18-19.  *Doral* did not discuss the contrary opinion in *Porter v. Mid-Penn Consumer Discount Co.*, 961 F.2d 1066 (3d Cir. 1992).

        *Doral* stands for the proposition that provision of only a general form notice H-8 when a limited form notice H-9 is required does not violate the TILA because it is a general notice.  But the reverse is different.  This was explicitly recognized in *Doral*, which distinguished *Handy* because: "*Handy's* facts are quite different from those here.  In *Handy*, the court concluded that the consumer was not clearly informed her rescission rights where she received **both** Model Form H-8 and H-9, and her loan was an original transaction, rather than a refinance."  *Doral*, 485 F.3d at 19, n. 9.  (emphasis added) Provision of the H-9 Notice - "Refinancing with Original Creditor" in an H-8 - "General" transaction is a violation because the consumer's rescission rights are narrowed.  Here, defendant's hybrid form notice is even worse than providing two contradicting forms of Notice -- at least the latter suggests a mistake;

_____

        [5]  Contrary to the facts presented in *Veale*, plaintiffs' transactions did not involve consolidation and refinancing but instead were simple, straightforward refinancing transactions with a new lender.  The peculiar facts before the Court in *Veale* do not exist here, and the Notice provided here unlike *Veale,* did not provide clear and conspicuous disclosures for the plaintiffs' transactions.   Simply put, the H-8 form was the correct form to use, and no hybrid form was necessary.  The provision of a hybrid form here made it unclear to the plaintiffs what their rescission rights were and what were the effects of exercising those rights.

13

defendant's notice simply misleads.

Contrary to defendant's arguments, *Doral* does not suggest that any "technically incorrect" notice is appropriate. (Def. Brief, p. 2) In fact, to adopt such an argument would render the distinction between forms H-8 and H-9 meaningless.  Other courts have held that provision of the limited form Notice H-9 instead of the general form Notice H-8 is a TILA violation.  *Mandel v. GMAC Mortgage Corp.*, 2004 Bankr. LEXIS 2367 (Bankr. E.D. Wisc. Nov. 8, 2004) (Court denied a defendant's motion to dismiss where consumer received H-9 instead of H-8 form Notice); *Gibbons v. Interbank Funding Group*, 208 F.R.D 278 (N.D. Cal. 2002 (Creditor's use of a H-9 form in an H-8 transaction violated TILA); *In re Botelho*, 195 B.R. 558, 568 (Bankr. D. Mass. 1996) (same but in the context of a home equity loan).

In *Porter v. Mid-Penn Consumer Discount Co.*, 961 F.2d 1066 (3d Cir. 1992), the Court analyzed the Notice at issue in two parts: first, it determined what rescission rights Porter had; and second, it determined whether the notice Porter received was clear and conspicuous.  *Id*. After reviewing the notice, it held that the Notice provided to Porter did not clearly and conspicuously disclose the effects of rescission.  Because the Court was able to ascertain two interpretations of the Notice, one which a consumer who rescinded would have limited rescission rights, being able to rescind only the increase in the amount of credit and the other where a consumer would be able to rescind the entire amount of the loan, the Court held that the Notice violated TILA.  *Id*. at 1077.

Similarly, in this case, a two-part inquiry should occur.  First, it must be determined what rescission rights the plaintiffs had.  Second, the Court must determine whether the Notice the plaintiffs received clearly and conspicuously disclosed their rights.

14

As stated above, each plaintiff was refinancing transactions with a new lender (First Horizon) that was different than their original lender.  In this type of transaction, a Notice "substantially similar" to the general Notice, Reg. Z form H-8 should have been provided to plaintiffs.  12 C.F.R. § 226.23(b)(2); 209 CMR 32.23(2)(b).  Because plaintiffs were refinancing with a new lender, they were entitled to rescind the <u>entire</u> amount of the new loan.

In First Horizon's Notice, Plaintiffs are told that they only have the right to cancel the increase in the amount of credit obtained, which is wrong.  Analogous to the Courts' analyses in *Doral*, *Handy* and *Porter*, if there is more than one interpretation of the borrowers' rights, then the Notice is not clear and conspicuous as a matter of law.   This is not a case where an incorrect notice clearly and conspicuously disclosed the plaintiffs' rights anyway.

## VI.    *PALMER* APPLIES TO MCCCDA VIOLATIONS

In examining TILA and MCCCDA violations, courts in the First Circuit "have focused the lens of our inquiry on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings."  *Palmer v. Champion Mortgage*, 465 F.3d 24, 28 (1st Cir. 2006).  Thus, it is undisputed that an objective standard of review is applied to TILA and MCCCDA cases.  "Whether a particular disclosure is clear for purposes of TILA is a question of law that 'depends on the contents of the form, not on how it affect any particular reader.'"  *Handy v. Anchor Mortgage Corp.*, 2006 U.S. App. LEXIS 24639, at *9 (7th Cir. Sept. 29, 2006) *citing Smith v. Check-N-Go of Ill., Inc.*, 200 F.3d 511, 515 (7th Cir. 1999).  "The sufficiency of TILA-mandated disclosures must be analyzed from the vantage point of an ordinary consumer."  *Rodrigues v. Members Mortgage Co., Inc.*,  323 F.Supp.2d 202, 206 (D. Mass.2004).  "Because the provisions of the CCCDA parallel those of TILA, CCCDA 'should be

construed in accordance with federal law.'" *In re Botelho*, 195 B.R. 558, 565 (Bankr. D. Mass. 1996) *citing Mayo v. Key Financial Services, Inc.*, 1994 Mass. Super. LEXIS 549, at *8 (Mass. Super. June 22, 1994).

First Horizon argues that the MCCCDA provides for a subjective standard of review. In an attempt to bolster its faltering argument, First Horizon relies on *Rodrigues v. Members Mortgage Co., Inc.*, 226 F.R.D. 147 (D. Mass. 2005) and *Mechanics Nat'l Bank of Worcester v. Killeen*, 384 N.E.2d 1231 (Mass. 1979). Defendant's reliance on *Rodrigues* is misplaced. The quote Defendant cites in its brief (p. 18) is taken from an opinion ruling on plaintiffs' motion for class certification. Merits issues are not resolved on motions for class certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Nevertheless, in summarizing Defendant's arguments, this Court stated:

> Defendants seem to be arguing that the validity of each post-dated Confirmation signed at a closing depends on the subjective understanding of the borrower. For example, defendants assert that TILA was not violated if a borrower understood that she still could rescind within three days, even though she had already signed the Confirmation form. However, the legal question is common: whether the subjective understanding of the borrowers with respect to their rights negates a prima facie TILA violation.

*Rodrigues*, 226 F.R.D. at 152. Thus, this was not a holding of this Court, but merely a recitation of an argument raised by Defendant in that case.

Defendant's reliance on *Mechanics Nat'l Bank of Worcester v. Killeen*, 384 N.E.2d 1231 (Mass. 1979), is equally unavailing. In *Killeen*, the SJC looked to the documents to determine whether the proper disclosures were made. One of the two forms at issue in *Killeen* did not disclose the name of the lender. *Id*. at 1238. The facts suggest that the two documents were carbon copies of each other and although the handwriting on the two forms were identical,

16

a stamp bearing the bank's name did not carbon copy onto one of the copies the borrower

received. *Id*. at 1238-39. The borrower sought to rescind the mortgage based on *inter alia*, a

violation of Mass. G.L. ch.140C, arguing that the name of the lender was not disclosed. After

review of the documents, the SJC held that the lender's name was disclosed and that the

borrower was not entitled to rescission. *Id*. Thus, the SJC specifically rejected the argument

that a borrower's subjective understanding determined if there was a violation and looked to the

documents to determine if there was a violation of the MCCCDA.

Defendant has again taken a few lines out of the *Killeen* opinion and contorted

them to fit its arguments. A more complete recitation of the paragraph states:

> One of the two statutory forms of notice required by G.L. c. 140C, § 8(b), as to a
> mortgage on a borrower's principal residence, did not have the bank's name on it.
> Although handwriting recorded through carbon paper onto all copies of the form,
> a stamp with the bank's name on it did not. The Killeens claim that the mortgage
> therefore must be forfeited. This omission was insignificant and unintended. The
> Killeens knew who the lender was, and they did not undertake seasonably to
> rescind the transactions, as the bank's notice advised them they could. Section
> 10(b) of G.L. c. 140C provides penalties for failure to disclose any information
> required under G.L. c. 140C. Here the name of the lender was disclosed, and thus
> relief under G.L. c. 140 C, § 10(b), is not available.

*Id*. at 1238.

In this case, the violation at issue appears on the face of the document (Notice).

Therefore, there is no need to ever look to the subjective understanding of any borrower because

it is irrelevant. Indeed, to hold otherwise would give creditors the ability to avoid liability based

on the fortuitous circumstances of each borrower. *Weeden v. Auto Workers Credit Union, Inc.*,

1999 U.S. App. LEXIS 5272, at *12-13 (6th Cir. Mar. 19, 1999) (borrower had a real estate

license and sought rescission and the court held that creating an exception for borrowers who

have knowledge of their rights undermines the purpose of TILA).

17

Moreover, there cannot be a difference in analyzing TILA and MCCCDA violations.  The First Circuit has clearly spoken on this issue in *Palmer* and held that it is an objective standard that will determine whether a violation of TILA has occurred.  Likewise, since there is no difference in the disclosure requirements between the MCCCDA and TILA, coupled with the fact that the Massachusetts' exemption from TILA must provide the same level of protection as the federal law, there is no reasonable basis to conclude that a different and narrower standard of review would be applied in analyzing MCCCDA violations.  To hold that a subjective standard of review applies to MCCCDA violations would not only lead to inconsistent results but would favor lenders and offer borrowers *less* protection than what the federal statute provides.

Thus, any discussion of plaintiffs' subjective understanding of their rights is not only irrelevant and distracting, but in discord with the law of this Circuit and the policy reasons behind consumer protection statutes such as the TILA and MCCCDA.

## VII.    CONCLUSION

Based on the foregoing reasons, plaintiffs respectfully request that this Court grant plaintiffs' cross motion for summary judgment and deny defendant's motion for summary judgment.

Respectfully submitted,

  /s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC

18

120 S. LaSalle Street, 18th floor
Chicago, IL  60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre, BBO No. 629056
CLAUDE LEFEBVRE, P.C.
P.O. Box 479
Pawtucket, RI  02862
(401) 728-6060
(401) 728-6534 (FAX)

## <u>CERTIFICATE OF SERVICE</u>

I, Heather Kolbus, certify that on August 17, 2007, I caused a true and accurate copy of the foregoing document to be served upon the parties listed below via the court's CM/ECF system.

Alisha R. Bloom
abloom@goodwinprocter.com

U. Gwyn Williams
gwilliams@goodwinprocter.com

Christopher M. Lefebvre
lefeblaw@aol.com


s/ Heather Kolbus
Heather Kolbus

# APPENDIX A

From: PAWTUCKET LEGAL CLINIC    4017286534    02/11/2005 12:57 #525 P.002/002

## NOTICE OF RIGHT TO CANCEL

LOAN #:    Redacted

ERTY ADDRESS:    Redacted

1.  **YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage/deed of trust on your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occur last: (1) the date of the transaction, which is  November 18, 2002  ; or (2) the date you received your Truth-in-Lending disclosures; or (3) the date which you received this notice of your right to cancel.

_____ If you cancel the transaction, the mortgage/deed of trust is also canceled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/deed of trust on your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

_____ If you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit. It will not affect the amount that you presently owe on the mortgage, lien, or security interest we already have on your home. If you cancel the mortgage, lien, or security interest as it applies to the increased amount is also cancelled. Within 20 calendar days after we receive your notice of cancellation of the new transaction, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on your home no longer applies to the increase of credit. We must also return any money you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

2.  **HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing at:

    FIRST HORIZON HOME LOAN CORPORATION
    300 METRO CENTER BLVD., STE. 205
    ARWICK, RI 02886

You may use any written statement that is signed and dated by you and your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice letter not later than midnight of   11/16/2002
(or midnight of the third business day following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____        _____
Signature                Date    Signature                Date


_____        _____
Signature                Date    Signature                Date

JOINT OWNERS HAVE THE RIGHT TO RESCIND, AND A RESCISSION BY ONE IS EFFECTIVE FOR ALL.
RECEIPT
Each of the undersigned acknowledges receipt of 2 copies of this Notice of Right to Cancel.

Redacted        Redacted
_____        _____
Date                Date

_____        _____
Date                Date

DEPOSITION
EXHIBIT
2
COVINGTON

CB6D016 (7/01)