**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

RALPH G. MCKENNA,
GLENROY A. DEANE,
ILENE WILGOREN-DEANE,
CHRISTOPHER J. LILLIE, AND
LAURA A. LILLIE,
              Plaintiffs,

        v.

FIRST HORIZON HOME LOAN
CORPORATION,
              Defendant.

---

Civil Action No. 04-10370-PBS

Leave to Reply Granted 6/19/2007

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT FIRST HORIZON HOME LOAN CORPORATION'S
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION.............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.    Plaintiffs' "Statement of Facts" in Their Brief Contains Attorney
      Argument and Unsupported Assertions, and It Should Be
      Disregarded ........................................................................................................... 2

II.   First Horizon Is Entitled to Summary Judgment Because It Provided
      a Clear and Conspicuous Notice of Rescission Rights ....................................... 3

A.    First Horizon's Notice Clearly Disclosed the Effects of Rescission ................ 3

B.    First Horizon's Single-Form Notice Format Does Not Violate the
      Statutory Disclosure Requirements.................................................................... 6

C.    First Horizon's Previous Version of the Notice is Irrelevant to the
      Confusion Issue ................................................................................................... 9

D.    Principles of Contract Interpretation are Inapplicable Here, But If
      They Were They Would Dictate Summary Judgment for First
      Horizon................................................................................................................ 11

III.  Even If *Doral* Did Not Compel Summary Judgment for First
      Horizon, First Horizon Would Still Be Entitled to Summary
      Judgment Because Its Notice Did Not Confuse Plaintiffs About Their
      Rescission Rights ................................................................................................ 12

A.    In *Killeen*, the Supreme Judicial Court Used a Subjective Standard to
      Evaluate MCCCDA Claims ................................................................................ 12

B.    Massachusetts Is Entitled to Apply a Subjective Standard When
      Evaluating MCCCDA Claims.............................................................................. 14

C.    According to *Killeen*'s Subjective Standard, Plaintiffs' Admitted Lack
      of Confusion Is Dispositive................................................................................ 19

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Carmichael v. The Payment Center, Inc.*, 336 F.3d 636 (7th Cir. 2003)........................... 15
*Carye v. Long Beach Mortg. Co.*, 470 F. Supp. 2d 3 (D. Mass. 2007)............................. 15
*Cavanagh v. Cavanagh*, 33 Mass. App. Ct. 240 (1992) .................................................. 12
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................... 20
*Clemmons v. Wolfe*, 377 F.3d 322 (3d Cir. 2004)........................................................... 16
*Dixon v. D.H. Holmes Co.*, 566 F.2d 571 (5th Cir. 1978) ................................................. 5
*Donoghue v. IBC USA (Publications), Inc.*, 70 F.3d 206 (1st Cir. 1995)......................... 12
*Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983)......................................................... 20
*Fuentes v. Hampden County Sheriff's Dept.*, 429 F. Supp. 2d 253 (D. Mass. 2006) ......... 3
*Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006) ..................................... 8
*Johnson v. Chase Manhattan Bank, USA N.A.*, 2007 WL 2033833 (E.D. Pa. Jul. 11, 2007) ..................................................................................................................... 13
*Johnson v. Fankell*, 520 U.S. 911 (1997) ...................................................................... 15
*Mechanics Nat'l Bank of Worcester v. Killeen*, 377 Mass. 100 (1979)...................... 2, 13
*Mills v. Equicredit Corp.*, 172 Fed. Appx. 652, 2006 WL 455158 (6th Cir. Feb. 24, 2006) ....................................................................................................................... 8
*Nussbaum v. Mortgage Service America Co.*, 913 F. Supp. 1548 (S.D. Fla. 1995) ......... 18
*Palmer v. Champion Mortgage*, 465 F.3d 24 (1st Cir. 2006)........................................... 15
*Robert Indus., Inc. v. Spence*, 362 Mass. 751, 291 N.E.2d 407 (1973) ........................... 12
*Rodrigues v. Members Mortgage Co., Inc.*, 226 F.R.D. 147 (D. Mass. 2005) ................. 13
*Santos-Rodriguez v. Doral Mortgage Co.*, 485 F.3d 12 (1st Cir. 2007)................... passim
*Shroder v. Suburban Coastal Corp.*, 550 F. Supp. 377 (S.D. Fla. 1982) ........................... 4
*Stevens v. Rock Springs Nat. Bank*, 577 P.2d 1374 (Wyo. 1978).................................... 17
*Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996)..................................................... 8
*Williams v. Western Pac. Financial Corp.*, 643 F.2d 331 (5th Cir. 1981) ................... 6, 15

## Statutes

15 U.S.C. § 1633.......................................................................................................... 16
15 U.S.C. § 1666j.......................................................................................................... 16
MASS. GEN. LAWS ch. 140D, § 18 .................................................................................... 7
MASS. GEN. LAWS ch. 140D, § 3 ................................................................................ 17, 18

## Other Authorities

37 Fed. Reg. 24105 (Nov. 14, 1972)............................................................................... 17
48 Fed. Reg. 14882 (April 6, 1983) ................................................................................ 17

## Rules

FED. R. CIV. P. 56............................................................................................................. 3

## Regulations

12 C.F.R. § 226.29 ......................................................................................................... 16

# INTRODUCTION

There is no dispute about how the Court should proceed in order to determine whether the Notice of Right to Cancel ("Notice") that First Horizon Home Loan Corp. ("First Horizon") provided to Plaintiffs at closing was compliant with the requirements set out in the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA") and associated regulations. The parties agree that the Court must first determine "what rescission rights the plaintiffs had," and then must determine "whether the Notice the plaintiffs received clearly and conspicuously disclosed those rights." (Pls.' Br. at 14; *see also* Def.'s Br. at 11-13, 15-16.) The parties also agree that, pursuant to MCCCDA, Plaintiffs had the right every refinancing borrower has: they could rescind their transactions—in this case, the entire amount of their loans—during the three days subsequent to closing. (Pls.' Br. at 8, 15; Def.'s Br. at 13-14.) Further, the parties agree that the only disputed substantive issue is whether First Horizon's Notice clearly and conspicuously disclosed to Plaintiffs the effects of rescission. (Pls.' Br. at 4; Def.'s Br. at 2.)

In light of the First Circuit's analysis in *Santos-Rodriguez v. Doral Mortgage Co.,*[1] First Horizon's Notice met this standard, because First Horizon's interpretation of the language in the Notice is the only reasonable interpretation. But even if the Court does not grant summary judgment to First Horizon on this ground, First Horizon is entitled to summary judgment according to Massachusetts' subjective standard that applies to MCCCDA claims, set out by the Supreme Judicial Court in *Mechanics Nat'l*

---

[1] 485 F.3d 12 (1st Cir. 2007).

1

*Bank of Worcester v. Killeen*,[2] because Plaintiffs all admitted that the Notice did not

confuse them about their rights.  (Resp. to SOF ¶¶ 1-5.)

## ARGUMENT

I.    **Plaintiffs' "Statement of Facts" in Their Brief Contains Attorney Argument and Unsupported Assertions, and It Should Be Disregarded**

Plaintiffs' Statement of Facts inappropriately injects legal argument and

unsupported factual assertions that this Court should not credit.  Two areas are worth

particular mention.  First, Plaintiffs discuss a previous version of First Horizon's Notice,

mischaracterizing it and the reasons that it was changed.  (Pls.' Br. at 2 (citing Deposition

of Charles Covington, February 11, 2005 ("Covington Dep."), at 24, App. Ex. 13[3] (SOF ¶

13)).)  But the previous version of the Notice is irrelevant, because these Plaintiffs never

received it.  Plaintiffs further inappropriately assert as a fact that "Nothing in the new

Notice informs the recipient that only one of the two paragraphs is applicable to his or her

mortgage transaction." (Pls.' Br. at 2-3.)  As this is the hotly contested issue at the crux of

these dueling motions for summary judgment, it is not a "fact."

Second, plaintiffs inject legal argument into the "facts" regarding the FRB model

forms, arguing that "each plaintiff should have received a general notice" (i.e., Form

---

[2] 377 Mass. 100 (1979).

[3] References to the Joint Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment shall hereinafter be cited as "JSOF ¶ __."  References to the Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment shall hereinafter be cited as "SOF ¶ __."  References to the Joint Appendix of Exhibits to Defendant's Statement of Undisputed Material Facts and the Parties' Joint Statement of Undisputed Material Facts shall hereinafter be cited as "App. Ex. __."  References to Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts shall hereinafter be cited as "Resp. to SOF ¶ __."  References to the Statement of Undisputed Material Facts in Support of Plaintiffs' Cross Motion for Summary Judgment shall hereinafter be cited as "PSOF ¶ __."

H-8), and "Form H-9 may not be interchanged with form H-8." (Pls.' Br. at 3.) They

further argue that it is the disclosure notice—not the applicable truth in lending statute—

that "allows" a borrower to rescind his loan. (*Id.*) Again, these are not facts.

   None of this is evidence admissible as to the issue before the Court, FED. R. CIV.

P. 56(e), and as such the Court should disregard Plaintiffs' "Statement." *See, e.g.*,

*Fuentes v. Hampden County Sheriff's Dept.*, 429 F. Supp. 2d 253, 266 (D. Mass. 2006)

("Plaintiffs' 'Summary of Facts,' is … too often tinged with an inappropriate slant."); *see

also Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 2007 WL 2263955, at \*4-\*5

(D. Kan. Aug. 7, 2007).

**II.    First Horizon Is Entitled to Summary Judgment Because It Provided a Clear
and Conspicuous Notice of Rescission Rights**

**A.    First Horizon's Notice Clearly Disclosed the Effects of Rescission**

   In its motion, First Horizon explained how *Doral*—and the truth-in-lending

liability test it articulates—dictate the outcome here. (Def.'s Br. at 12-13, 15-17.) First

Horizon also explained how its Notice met *Doral*'s test because it clearly and

conspicuously disclosed to Plaintiffs their right of rescission and its associated effects

(Def.'s Br. at 17), and so First Horizon is entitled to summary judgment.

   Plaintiffs' cursory response to First Horizon's close analysis of the language in

the Notice is to argue (in their Facts section) that "Nothing in the new Notice informs the

recipient that only one of the two paragraphs is applicable to his or her mortgage

transaction," (Pls.' Br. at 2-3), allegedly because "new transactions involving us" in the

Notice's third paragraph is not sufficiently defined to include only extensions of existing

lines of credit with First Horizon, *i.e.*, new money transactions involving First Horizon.

(Pls.' Br. at 9 (citing Notice ¶ 3).) Even though Plaintiffs concede that the Notice's

second paragraph[4] provided them with the proper disclosure of the effects of rescission[5] and that Mr. McKenna admitted he was not confused by the wording of the Notice (Resp. to SOF ¶ 2), Plaintiffs nonetheless assert that based on the Notice, "Mr. McKenna would believe he was entitled to rescind" only the amount representing the difference between his original loan from Chase Manhattan Mortgage Corp. and the amount he borrowed from First Horizon, rather than the entire amount of his First Horizon loan.  (Pls.' Br. at 8.)

Plaintiffs' distorted interpretation of the Notice is neither plausible nor reasonable.  For one thing, it wrests the allegedly confusing language from the contextual moorings of the Notice, even though it is the entirety of a disclosure notice that must be analyzed for clarity.[6]  As First Horizon demonstrated in its opening brief, when read in the context of the transaction and the entirety of the disclosure notice, "For new transactions involving us" refers only to extensions of existing lines of credit, and not to loans refinancing mortgages held by a different lender.  (Def.'s Br. at 17.)

---

[4] "If you cancel the transaction, the mortgage/deed of trust is also canceled.  Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/deed of trust on your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction."  (JSOF ¶ 4.)

[5] "Ms. Handy sought to rescind although she, like the plaintiffs here, had received a proper general disclosure."  (Pls.' Br. at 10 (emphasis added).)

[6] "Applying an objective standard, the district judge should examine the provisions of the disclosure statement in the context of the specific documents and instrument reflecting the particular transaction in the case before the court, and, not reading one sentence or one line of the disclosure statement in isolation, determine whether there has been clear, substantial and accurate disclosure as required by [TILA]."  *Shroder v. Suburban Coastal Corp.*, 550 F. Supp. 377, 382 (S.D. Fla. 1982).  A truth in lending disclosure that "requires the consumer to exercise some degree of care and study" will suffice if, when "read as a whole, … the imperfections in format did not violate the law."  *Gambardella*, 716 F.2d at 118.

Additionally, when the language in the third paragraph of the Notice is compared to the language in the second paragraph, the third paragraph refers only to situations in which there has been an increase in an existing line of credit with First Horizon. (*Id.*) The second paragraph refers to the effect of rescission that the new loan will be canceled in its entirety—"we must take the steps necessary to reflect the fact that the mortgage/deed of trust on your home has been canceled." (JSOF ¶ 4, App. Exs. 1-3.) Meanwhile, the third paragraph ("For new transactions involving us") explains that, for borrowers who extended existing lines of credit with First Horizon, canceling the new loan in its entirety means that the security interest will be reduced back to the original amount—"we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on your home no longer applies to the increase of credit." (*Id.*) Under these circumstances, a reasonable borrower in Plaintiffs' position would have thought that the second paragraph accurately described their situation and that the third paragraph was inapplicable—as these Plaintiffs actually did. (Resp. to SOF ¶¶ 1-4.) And while Plaintiffs critique First Horizon's word choices, and any number of different formulations could have been used to express these same effects of rescission, "[t]he question is not whether [a truth-in-lending notice] is capable of semantic improvement but whether it contains a substantial and accurate disclosure ...." *Dixon v. D.H. Holmes Co.*, 566 F.2d 571, 573 (5th Cir. 1978). Plaintiffs cannot defeat summary judgment, or obtain it, merely by criticizing the Notice as imperfect.

Plaintiffs are further hampered in their efforts by the admitted fact that not a single one of them was confused about their rights after reading the Notice that First Horizon provided to them at closing. (Resp. to SOF ¶¶ 1-4.) Rather, they only "became

confused" after speaking with Attorney Lefebvre, several months later. (*Id.*) But the issue is not whether the complained of language in the Notice "would confuse and perhaps mislead a lawyer, … the issue is whether it would confuse or mislead a borrower." *Williams v. Western Pac. Financial Corp.*, 643 F.2d 331, 339 (5th Cir. 1981). "In determining whether a particular disclosure is clear or confusing," the Court "must be guided by probabilities rather than mere possibilities," and "must avoid reaching beyond the purpose of the TILA in search of a violation." *Id.* at 338, 339. If the Notice were objectively as confusing as Plaintiffs now claim, Plaintiffs should have themselves been confused at the time or should have been able to find someone who was actually confused by the Notice; their failure to do so is telling.

**B.    First Horizon's Single-Form Notice Format Does Not Violate the Statutory Disclosure Requirements**

Plaintiffs' cross-motion, and their response to First Horizon, largely ignores the statute and ignores *Doral* in favor of arguing about model form notices. Despite conceding multiple times that First Horizon is not required to use either of the FRB model forms (Pls.' Br. at 3 n.4, 7, 8), Plaintiffs repeatedly argue that First Horizon's use of a "hybrid" form was the truth-in-lending violation. (*Id.* at 3, 7, 8, 10, 12, 13.) Plaintiffs reason that they allegedly "should have received" a notice "substantially similar" to Form H-8, which they apparently interpret to mean a notice without any language from Form H-9 (or from anywhere else for that matter). (Pls.' Br. at 7, 8.) This theory of liability is wrong, for *Doral*'s standard for determining whether there has been a truth in lending violation is only whether there was a clear and conspicuous disclosure of rescission rights. *Doral*, 485 F.3d at 16-17. Non-use of the model forms does not lead to liability. *Id.* at 15 ("In sum, because the plain language of the statute and regulations

does not require exclusive use of the model forms, plaintiffs are incorrect to insist that Doral's alleged failure to provide the appropriate FRB form is a per se violation of 15 U.S.C. § 1635 and Regulation Z.").

Plaintiffs do not explain why it is necessarily impossible for a single-form notice to clearly and conspicuously describe borrowers' rights. Nor do they explain why a single-form notice cannot be "substantially similar" to the form they allege to be appropriate for a given situation. Nevertheless, Plaintiffs farfetchedly argue that the two forms are "exclusive" and that "depending on the transaction at issue, only one form of the Notice is to be given:" H-8 to borrowers refinancing another lender's loan, and H-9 to borrowers extending a line of credit with the original lender. (Pls.' Br. at 3, 8; *see also id.* at 7, 14.) This point not only is unsupported, it is contrary to both the truth in lending statutes themselves and the caselaw interpreting them.

MCCCDA allows lenders to use any form of disclosure notice they wish— including a single form based on the two model forms—so long as the right to rescind and the effects of choosing to do so are clearly and conspicuously disclosed to the borrower. MASS. GEN. LAWS ch. 140D, § 18; *see also Doral*, 485 F.3d at 15 ("TILA plainly states that use of the model forms is not obligatory."). In fact, MCCCDA specifically allows lenders to modify the FRB forms by rearranging the format, so long as "the creditor does not affect the substance, clarity or meaningful sequence of the disclosure." MASS. GEN. LAWS ch. 140D, § 18. Plaintiffs' attempt to elevate form over substance is simply not supported by the law.

Plaintiffs are also incorrect that forms H-8 and H-9 are "exclusive; otherwise there would be no purpose of having two forms" (Pls.' Br. at 3), as several courts have

held that form H-8's "general" language provides a sufficient disclosure to borrowers who refinanced with the same lender. *E.g.*, *Doral*, 485 F.3d at 14, 17; *Mills v. Equicredit Corp.*, 172 Fed. Appx. 652, 656, 2006 WL 455158 (6th Cir. Feb. 24, 2006); *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996). In other words, courts—including the First Circuit—have held that a lender could provide form H-8 instead of form H-9 (even where Plaintiffs suggest that a form H-9 would be required), and still be compliant with TILA—the two forms are <u>not</u> exclusive.

Borrowers are simply not entitled to receive a particular model form, despite Plaintiffs' repeated insinuations to the contrary (Pls.' Br. at 3, 7-8, 12, 13 n.5, 15); rather, they are entitled to receive a clear and conspicuous—though not necessarily perfect—disclosure of their rescission rights. *Doral*, 485 F.3d at 16-17. *Doral* instructs the Court to compare the contents of the Notice to the statutory disclosure requirements, as First Horizon did in its brief (Def.'s Br. at 12-13, 16), not to compare the Notice to model forms or previous versions of First Horizon's Notice, as the Plaintiffs have done in their brief. (Pls.' Br. at 3, 8, 11-12, 15.) *See Doral*, 485 F.3d at 16-19. When the appropriate comparison is made, it is evident that First Horizon's Notice met the disclosure requirements.

Plaintiffs' reliance on *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006) to defeat First Horizon's motion (Pls.' Br. at 9-10, 13) fails to carry the day for them. In *Handy*, the borrower received four copies of an H-9 disclosure notice and one copy of an H-8 disclosure notice, with no indication that the H-9 notice was inapplicable to her situation. *Handy*, 464 F.3d at 762. *Handy* is factually distinguishable from this case. Despite Plaintiffs' repeated mischaracterizations to the contrary (Pls.' Br. at 2-3,

8

10, 12, 13-14), the single-form Notice that Plaintiffs here received was not merely an agglomeration of the two FRB model forms.  (*See* Covington Dep. 23:1-24-8, 36:12-37:8.)  Instead, the Notice included language that indicated to borrowers who were extending existing lines of credit with First Horizon that additional information applied to their situation.  Plaintiffs' dubious complaint about the clarity of this language does not transform the Notice into "the functional equivalent of two Notices."  (Pls.' Br. at 10.)

Moreover, *Handy* is not persuasive because *Doral* distinguished *Handy*—not only on the facts, as Plaintiffs admit (Pls.' Br. at 13), but also because *Handy* was decided according to the Seventh Circuit's "hyper-technical compliance requirement."  *Doral*, 485 F.3d at 18 n.9.  The Seventh Circuit's rule of hyper-technicality was rejected by the First Circuit in *Doral* in favor of a "clear and conspicuous standard" that is "less demanding than a requirement of perfect notice."  *Id.* at 16 & n.6, 18 n.9.

## C.     First Horizon's Previous Version of the Notice is Irrelevant to the Confusion Issue

Failing to prove that they, or anyone, were confused by the Notice, Plaintiffs claim instead that the previous "checkbox"[7] version of First Horizon's single-form notice was confusing, and that the Notice at issue here was "virtually identical."  (Pls.' Br. at 11.)  As an initial matter, First Horizon takes issue with Plaintiffs' attempt to divert the course of this lawsuit.  This lawsuit is not about the checkbox notice, which has no bearing on whether the version complained of here complied with truth in lending disclosure requirements.  Embarking on a parallel determination of whether the checkbox

---

[7] Technically, the previous version of the Notice had lines next to the language describing the effects of rescission for First Horizon's closing agents to check off as appropriate (*see* Pls.' Br., App. A (PSOF ¶ 2, App. B, Ex. 2)), but for consistency with Plaintiffs' brief and ease of reference, these lines shall hereinafter be referred to as "checkboxes."

notice violated the truth in lending disclosure requirements would be both unfair to First Horizon—there has been virtually no discovery concerning the checkbox notice and no focused briefing about it—and a waste of judicial resources.

Plaintiffs' discussion about the checkbox notice founders in any event because there are several links missing from Plaintiffs' chain of logic as to why the checkbox notice aids their showing in favor of summary judgment. First, Plaintiffs assert, without a shred of evidence, that the checkbox notice was confusing because First Horizon's agents allegedly made mistakes, such as checking the incorrect box or failing to check a box. (Pls.' Br. at 11-12.) Plaintiffs additionally assert that "First Horizon's trained closing agents could not determine which box to check." (Pls.' Br. at 11 (citing Covington Dep. at 23-24).) These assertions are gross mischaracterizations of Mr. Covington's testimony; Mr. Covington actually testified that the checkbox form was revised to "eliminate an opportunity to make a mistake." (Covington Dep. at 24:8.) He did not testify that any mistakes had actually ever been made, or that any agent had ever been confused about the notice or even about which box to check. Plaintiffs do not explain why an inference of confusion is reasonable, and Plaintiffs have no evidence to support that inference.

Second, Plaintiffs' checkbox notice argument fails anyway, because the Notice at issue here is not "virtually identical" to First Horizon's checkbox notice. (Pls.' Br. at 11.) The Notice added the language "For new transactions involving us" to the key third paragraph in lieu of requiring boxes to be checked. (*Compare* Notice, JSOF, Exs. 1-3 *with* checkbox notice, PSOF Appx. B; *see also* Covington Dep. 36:12-37:8, 37:17-38:3.) This difference renders irrelevant any inference that even if the checkbox form were

confusing, then so must be the Notice. And, given this change, Plaintiffs' backhanded assertion that First Horizon revised the checkbox form just to require the borrower to "guess" which language applied to them is specious.[8] (Pls.' Br. at 11.)

### D.    Principles of Contract Interpretation are Inapplicable Here, But If They Were They Would Dictate Summary Judgment for First Horizon

To bolster their argument, Plaintiffs again look away from the Notice, to an unlikely place—contract law. Plaintiffs do not cite any caselaw or legislative history to support their conclusory assertion that "it is appropriate to look to principles of contract interpretation to determine the meaning of the language in the Notice." (Pls.' Br. at 9.) They do not explain why that makes sense, or how the average borrower would be cognizant of principles of contractual interpretation such as "specific terms typically trump general ones" or "no word or phrase is made meaningless by interpreting another word or phrase." (Pls.' Br. at 9.) Nor did Congress or the Massachusetts legislature suggest that compliance with truth in lending disclosure requirements should turn on rules of contract.

From their nonsensical premise, Plaintiffs arrive at the nonsensical conclusion that Plaintiffs would have assumed that the language in the <u>third</u> paragraph of the Notice applied to them instead of the language in the <u>second</u> paragraph, because the third paragraph is somehow more specific. (Pls.' Br. at 9.) In fact, however, the two paragraphs are couched in very similar terms, evincing a similar level of specificity. (*See* JSOF ¶ 4.) First Horizon has shown that, when context is considered, reasonable

---

[8] Indeed, rescission is a very rare event. First Horizon had no incentive to give imperfect disclosure, and every reason to fully comply with the law.

borrowers in Plaintiffs' situation would realize that it is the second paragraph that more specifically applies to them.  *See supra* at 4-6.

Moreover, if principles of contractual interpretation did apply here, Massachusetts law would allow extrinsic evidence of borrowers' circumstances to show what they understood their rights to be, *Donoghue v. IBC USA (Publications), Inc.*, 70 F.3d 206, 215 (1st Cir. 1995), "[e]ven where the language of the agreement is not ambiguous on its face."  *Cavanagh v. Cavanagh*, 33 Mass. App. Ct. 240, 242 n.4 (1992).  Since Plaintiffs contend that the Notice is confusing, the scope of admissible evidence would be broad: "When the written agreement, as applied to the subject matter, is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing its terms." *Robert Indus., Inc. v. Spence*, 362 Mass. 751, 753-754, 291 N.E.2d 407 (1973).  If principles of contractual interpretation are employed here, Plaintiffs' case is eviscerated by the extrinsic evidence—their admitted lack of confusion and admittedly accurate understanding of their rights.  (Resp. to SOF ¶¶ 1-4.)  Summary judgment for First Horizon would be warranted on this ground alone.

**III.    Even If *Doral* Did Not Compel Summary Judgment for First Horizon, First Horizon Would Still Be Entitled to Summary Judgment Because Its Notice Did Not Confuse Plaintiffs About Their Rescission Rights**

**A.    In *Killeen*, the Supreme Judicial Court Used a Subjective Standard to Evaluate MCCCDA Claims**

As argued above and in First Horizon's principal brief, *Doral* compels the conclusion that First Horizon's Notice constitutes a clear and conspicuous disclosure as required by law.  But even if that were not the case, this Court must still grant summary judgment for First Horizon, as MCCCDA claims are judged by a subjective standard—

not an objective, "reasonable borrower" standard.  Here Plaintiffs all admitted that they were not in fact confused by the Notice until months after their rescission rights had already expired (Resp. to SOF ¶¶ 1-4), and thus there can be no MCCCDA violation.

The Supreme Judicial Court in *Killeen* held that a subjective standard applies in evaluating whether a lender is liable for a claimed violation of MCCCDA.  The Plaintiffs' admitted lack of actual confusion and lack of actual injury is dispositive here. While Plaintiffs' recitation of the facts of *Killeen* is accurate (Pls.' Br. at 16-17), Plaintiffs are wrong in arguing that the Supreme Judicial Court in *Killeen* "specifically rejected" a subjective standard.  (*Id.* at 17.)  In *Killeen*, the Supreme Judicial Court found that the lender had omitted its name from one of the mandatory disclosure forms—a technical violation of MCCCDA's requirements—but nevertheless determined that the lender had complied with the statute because the borrowers "knew who the lender was" and they "sustained no loss or disadvantage."  *Killeen*, 377 Mass. at 111-12. Massachusetts must, therefore, apply a subjective standard in MCCCDA cases, either when determining violations of MCCCDA, or when determining lender liability for a violation of MCCCDA, even if an objective standard is used to determine violations in the first instance.  *See Johnson v. Chase Manhattan Bank, USA N.A.*, 2007 WL 2033833, at *3 (E.D. Pa. Jul. 11, 2007) ("*Palmer* did not address whether an alleged TILA violation could be excused."); *Rodrigues v. Members Mortgage Co., Inc.*, 226 F.R.D. 147, 152 (D. Mass. 2005) (positing that a borrower's subjective understanding can

"negate a prima facie [truth in lending] violation"[9]).  Either way, the subjective standard

espoused in *Killeen* mandates summary judgment for First Horizon here, as Plaintiffs

have admitted that First Horizon's Notice did not confuse them about their rights until

long after those rights had already expired (SOF ¶¶ 1-4) and are not claiming that they

were actually injured (*see* 2d Am. Compl.).  The Court cannot find a violation of

MCCCDA (or liability) without evidence of Plaintiffs' actual confusion, and there is

none.

**B.    Massachusetts Is Entitled to Apply a Subjective Standard When Evaluating
        MCCCDA Claims**

      Trying to avoid *Killeen*, Plaintiffs argue that use of a subjective standard is

forbidden because it would provide "less protection" to consumers than TILA's objective

standard.  (Pls.' Br. at 6, 18.)  They are wrong to even argue the point because MCCCDA

governs this case, and the highest court in Massachusetts has determined that a subjective

standard must be used when evaluating MCCCDA claims.  Indeed, the Supreme Court of

the United States has held that the interpretation of a state statute by that state's highest

court is binding on federal courts, even if the state statute is identical to a federal statute:

> We can easily dispense with petitioners' first contention that Idaho must follow
> the federal construction of a "final decision."  Even if the Idaho and federal
> statutes contained identical language—and they do not—the interpretation of the
> Idaho statute by the Idaho Supreme Court would be binding on federal courts.

---

[9] Plaintiffs argue that the existence of this legal question was "merely a recitation of an
argument raised by Defendant in that case" (Pls.' Br. at 16), but that defies logic.  The
defendant in *Rodrigues* argued that class certification should be denied on the grounds of
lack of commonality.  The existence of a common legal question was obviously the
Court's finding in answer to the defendant's argument, not a recap of the defendant's
argument.  If the question whether a borrower's subjective understanding can negate a
truth in lending violation had already been definitively answered in the negative, that
legal question would not have provided support for the Court's decision to certify a class.
Moreover, the Court's determination in *Rodrigues* that a common legal question existed
was clearly not a determination of the merits, as Plaintiffs inexplicably suggest.  (*Id.*)

> Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State. This proposition, fundamental to our system of federalism, is applicable to procedural as well as substantive rules.

*Johnson v. Fankell*, 520 U.S. 911, 916 (1997) (internal citations omitted). This Court is thus bound to apply state law as announced by the Supreme Judicial Court, notwithstanding Plaintiffs' unhappiness with it.

Plaintiffs' arguments fail for two additional reasons. First, the use of an objective standard alone does not necessarily result in more protection for consumers than Massachusetts' use of a subjective standard when evaluating MCCCDA cases. In *Palmer*, for example, the First Circuit adopted an objective standard, considering a hypothetical average consumer instead of the allegedly confused plaintiff in that case, yet it concluded that the lender had <u>not</u> violated TILA because the disclosure notice would not have confused the hypothetical average consumer. *Palmer v. Champion Mortgage*, 465 F.3d 24, 27, 28 (1st Cir. 2006).[10] Borrowers are not entitled to win every truth in lending case; standards, whether objective, subjective or mixed, merely function to determine whether a violation of the truth in lending laws exists, and if so, whether the lender is liable for it.

---

[10] *See also Carmichael v. The Payment Center, Inc.*, 336 F.3d 636, 641 (7th Cir. 2003) (holding that "a reasonable person in the [plaintiffs'] position would have comprehended what 'the balance of unpaid principal and interest to be paid in full' meant" even though the plaintiffs alleged the language was "confusing"); *Williams*, 643 F.2d at 338-39 (holding that disclosure of security interest would not have been interpreted by borrowers in the allegedly confusing way that plaintiffs suggested); *Carye v. Long Beach Mortg. Co.*, 470 F. Supp. 2d 3, 9 (D. Mass. 2007) ("[D]espite the fact that the Notices failed to include the dates of the transaction, this Court is persuaded as a matter of law that the average person would be aware that the rescission period expired three days after receiving the Notices.").

Second, *Killeen*'s subjective standard is not somehow violative of the provision of TILA that allowed the Federal Reserve Board (FRB) to exempt Massachusetts from certain federal truth in lending requirements and replace parts of TILA with the MCCCDA.  That provision of TILA merely requires the state to have "substantially similar" disclosure requirements and "adequate provision for enforcement."  15 U.S.C. § 1633; *see also* 12 C.F.R. § 226.29(b) ("If the Board determines that a disclosure required by state law … is substantially the same in meaning as a disclosure required under the act or this regulation, creditors in that state may make the state disclosure in lieu of the federal disclosure.").  Notably, the "substantially similar" requirements concern only the disclosures themselves; nowhere in TILA or Regulation Z are exempt states required to use the same standards to interpret their statutes as federal courts determine are applicable to TILA.  Congress could have required an objective standard as part of TILA, *see, e.g.*, *Clemmons v. Wolfe*, 377 F.3d 322, 325 (3d Cir. 2004), but instead, Congress left development of a standard by which to judge violations and lender liability up to the courts.  Thus, the standards by which TILA violations and liability are judged are simply judicial gloss on the statute, not statutory requirements in themselves that exempt states must replicate.[11]

---

[11] Plaintiffs erroneously cite to 15 U.S.C. § 1666j(b) in an attempt to support their "no less protection" argument (Pls.' Br. at 6), but that provision addresses exemptions by the FRB from credit billing requirements under Chapter 4 of TILA, not exemptions for equivalent disclosure requirements for credit transactions under Chapter 2.  Moreover, Section 1666j(b) allows the FRB to exempt states whose credit billing requirements <u>either</u> are "substantially similar to those imposed under this part" <u>or</u> give "greater protection to the consumer."  15 U.S.C. § 1666j(b).  Plaintiffs' assertion that "state exemptions are conditioned upon state law being similar to <u>and</u> affording no less protection than federal law" is simply incorrect.  (Pls.' Br. at 6 (emphasis added).)

In practice, the FRB did not require states to meet a "no less protection" standard when granting them exemption from TILA .  For example, the FRB granted Massachusetts an exemption from TILA, *see* 48 Fed. Reg. 14882, 14890 (April 6, 1983), even though MCCCDA's requirements and enforcement provisions built in the discretion to diverge from TILA.  According to MCCCDA, the Commissioner of Banks

> shall prescribe … rules and regulations … provided, however, that no such rule or regulation shall contain any classification, differentiation or other provision with respect to, or provide for any judgement or exception for, any class of transaction <u>which would result in less stringent disclosure requirements than afforded that class of transaction under the Federal Consumer Protection Act</u> and Regulation Z issued by the [FRB].

MASS. GEN. LAWS ch. 140D, § 3(a) (emphasis added).  Use of a subjective or mixed— rather than an objective—standard would not result in "less stringent <u>disclosure requirements</u>" than those provided by TILA.  Additionally, MCCCDA specifically provides that, while official FRB interpretations of TILA provisions that parallel the MCCCDA "shall … be an advisory ruling[,]… <u>the commissioner may reject a[n FRB] or staff interpretation</u>."  *Id.* § 3(b) (emphasis added).

Similarly, Wyoming, which was also granted an exemption from TILA, *see* 37 Fed. Reg. 24105 (Nov. 14, 1972), excludes from its disclosure requirements so-called "arrangers" of credit sales, which are included by TILA:

> The plaintiffs attempt to incorporate 12 C.F.R., s 226.6(d) into the UCCC and the regulations promulgated by the administrator of the Wyoming Act.  That is the so-called "arrangers" provision applicable to disclosures, which creates a liability on the part of a seller, who actively brings together the lender and the debtor ….
> * * * While the federal regulation, s 226.2(n), also extends the definition of credit sale to "arrange[rs]," s 40-2-104, UCCC, does not.

*Stevens v. Rock Springs Nat. Bank*, 577 P.2d 1374, 1378-79 & nn.9-10 (Wyo. 1978).

Wyoming's Uniform Consumer Credit Code, 40-14-101 *et seq.*, thus explicitly provides

less protection to consumers than TILA, but was nonetheless allowed by FRB to supply the basis for that state's exemption.[12]

Thus, in practice, minor deviations from TILA's level of protection are within the exempt state's discretion. Plaintiffs fail to explain how the Supreme Judicial Court's interpretation of MCCCDA, which has been extant for nearly three decades, could destroy the basis for Massachusetts' exemption from TILA once the First Circuit decided last year that a different interpretation applies to TILA. (*See* Pls.' Br. at 6, 18.) Even if using a subjective standard for MCCCDA violations and liability may sometimes result in "less protection" than TILA provides, it is still legally valid to do so, since it does not "result in less stringent disclosure requirements than … under [TILA] and Regulation Z." MASS. GEN. LAWS ch. 140D, § 3(a).

---

[12] Non-exempt states are also allowed to interpret their own related laws in ways that may reduce TILA's protection to borrowers. For example, in *Nussbaum v. Mortgage Service America Co.*, 913 F. Supp. 1548 (S.D. Fla. 1995), the court held that it was bound to follow a state appellate court decision holding that a state tax should be excluded from disclosure as a finance charge under TILA, which unequivocally resulted in less protection to consumers than federal courts had previously granted:

> When the Fourth District Court of Appeal of Florida issued *Pignato v. Great Western Bank*, 664 So. 2d 1011 (Fla. Dist. Ct. App. 1995), it specifically disagreed with the Eleventh Circuit's interpretation of Florida's intangible tax in *Rodash v. AIB Mortgage*, 16 F.3d 1142 (11th Cir. 1994). *Pignato* held that the Florida intangible tax should be excluded from disclosure as a finance charge under TILA. As the latest interpretation of Florida law, the federal courts should follow *Pignato*, unless it becomes clear that the Florida Supreme Court would reach a different conclusion. Because the *Pignato* decision is the only and most current interpretation of Florida law by a state appellate court, and it appears likely that the Florida Supreme Court would concur with it, we are bound to follow *Pignato*.

*Id.* at 1555.

**C.    According to *Killeen*'s Subjective Standard, Plaintiffs' Admitted Lack of Confusion Is Dispositive**

Plaintiffs have admitted that they were not confused by the Notice that First Horizon provided at the time that they closed on their loans, and according to *Killeen*'s subjective standard for MCCCDA claims, this admission is fatal.[13]  (Resp. to SOF ¶¶ 1-4.)  Contrary to their assertions (Resp. to SOF ¶ 7), Plaintiffs have never claimed that they were actually confused by the Notice at or near the time of their transactions.[14] (SOF ¶ 7; 2d Am. Compl. ¶ 15; Pls.' Br. at 8.)  Like the plaintiffs in *Killeen*, these Plaintiffs clearly knew what their rescission rights were and understood how to exercise those rights, yet they knowingly chose not to rescind their loans within the three-day window, as First Horizon's notice advised them they could.  (SOF ¶¶ 1-4; App. Exs. 1-3.) Thus, as a matter of law, First Horizon is not liable to these Plaintiffs because First Horizon did not violate their rights.  Since liability under MCCCDA is predicated on the borrower's actual confusion according to *Killeen*, Plaintiffs' admitted lack of confusion and concomitant failure to offer any evidence of actual confusion mandates the entry of summary judgment against them for failure to demonstrate the existence of a genuine

---

[13] Plaintiffs apparently dispute the materiality of their admitted lack of actual confusion (Resp. to SOF ¶¶ 1-5), but these facts are material to the analysis of MCCCDA claims according to *Killeen*, as well as indicating that a reasonable borrower would not have been confused by the Notice (*supra* at 4, 5-6).

[14] Plaintiffs argue that somewhere in their Second Amended Complaint is a claim of actual confusion (Resp. to SOF ¶ 7), but cannot cite to even a single paragraph in which such a claim is made.  Upon closer review the Second Amended Complaint merely claims, under "Facts Relating to Plaintiff McKenna," that "This is confusing because there is no explanation of what a 'new transaction involving us' might be.… First Horizon's form obfuscates rather than discloses the borrower's rights."  (2d Am. Compl. ¶ 15.)  There is no mention of Mr. McKenna's actually being confused.  The "facts" sections relating to the other plaintiffs do not even include a claim of confusion in the abstract.  (*See* 2d Am. Compl. ¶¶ 18-22, 23-27.)

issue of material fact to be resolved at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983).

## CONCLUSION

For the foregoing reasons, and based on the entire record, First Horizon respectfully requests that the Court grant summary judgment for First Horizon on the grounds that it complied with the disclosure requirements of MCCCDA and its associated regulations. In the alternative, First Horizon respectfully requests that the Court grant summary judgment for First Horizon on the grounds that, due to Plaintiffs' admitted lack of actual confusion, First Horizon is not liable to them for any violation of MCCCDA.

For these reasons, Plaintiffs' cross-motion for summary judgment should be denied.

Respectfully submitted,

/s/ Alisha R. Bloom
U. Gwyn Williams (BBO # 565181)
Alisha R. Bloom (BBO # 662261)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Thomas M. Hefferon (BBO # 548289)
GOODWIN PROCTER LLP
901 New York Ave., NW
Washington, D.C. 20001
(202) 346-4000

Attorneys for Defendant

FIRST HORIZON HOME LOAN
CORPORATION

Dated: September 17, 2007

20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document is being filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on September 17, 2007.  The foregoing document will be available for viewing and downloading from the ECF system.

/s/ Alisha R. Bloom
Alisha R. Bloom

LIBA/1827584.7

21