## IN THE UNITED STATES DISTRICT COURT
## FOR  DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RALPH G. MCKENNA, | ) | |
| GLENROY A. DEANE, | ) | |
| ILENE WILGOREN-DEANE, | ) | |
| CHRISTOPHER J. LILLIE; and | ) | 04-10370-PBS |
| LAURIE A. LILLIE; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST HORIZON HOME LOAN | ) | |
| CORPORATION, | ) | |
| | ) | **JURY DEMANDED** |
| Defendant. | ) | |

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT
## OF THEIR CROSS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      PLAINTIFFS' STATEMENT OF FACTS IS PROPER . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FIRST HORIZON FAILS TO CLEARLY DISCLOSE
        THE RIGHTS AND EFFECTS OF RESCISSION . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    MCCCDA AND TILA STATUTORY
        REQUIREMENTS HAVE NOT BEEN MET . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.     FIRST HORIZON'S PREVIOUS FORM
        OF THE NOTICE IS RELEVANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.      RULES OF CONTRACT INTERPRETATION ARE
        HELPFUL IN ASCERTAINING THE MEANING
        OF THE PARAGRAPHS AT ISSUE IN THE NOTICE . . . . . . . . . . . . . . . . . . . . . 11

VI.     STATE AND FEDERAL LAW DO NOT DIFFER
        ON THE STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VII.    PLAINTIFFS' TESTIMONY DOES NOT
        SHOW LACK OF CONFUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VIII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**Cases**

*Apgar v. Homeside Lending, Inc.*,
    291 B.R. 665 (Bankr. E.D. Pa. 2003) ........................................ 3

*Aspinall v. Phillip Morris Cos., Inc.*,
    813 N.E.2d 476 (Mass. 2004) ........................................... 14

*Bizier v. Globe Financial Services, Inc.*,
    654 F.2d 1 (1st Cir. 1981) ............................................. 3

*Handy v. Anchor Mortgage Corp.*,
    464 F.3d 760 (7th Cir. 2006) ......................................... 8, 9

*In re Cushing*,
    2005 Bankr. LEXIS 99 (D. Kan. Jan. 21, 2005) ............................. 10

*In re Finch*,
    2003 Bankr. LEXIS 2049 (Bankr. D. Kan. Nov. 7, 2003) ...................... 10

*In re Merriman*,
    329 B.R. 710 (D. Kan. 2005) ........................................... 10

*In re Porter*,
    961 F.2d 1066 (3rd Cir. 1992) ........................................... 7

*In re Ramirez*,
    2003 Bankr. LEXIS 1364 (Bankr. D. Kan. May 28, 2003) ...................... 10

*In re Stanley*,
    315 B.R. 602, 612 (Bankr. D. Kan. 2004) ................................. 10

*Leardi v. Brown*,
    474 N.E.2d 1094 (Mass. 1985) ........................................ 14

*Mayo v. Key Financial Services, Inc.*,
    1994 Mass. Super. LEXIS 549 (Mass. Super. June 22, 1994) ................... 13

*Mechanic Nat'l Bank of Worcester v. Killeen*,
    384 N.E.2d 1231 (Mass. 1979) ................................... 8, 12, 13

*Nat'l Data Corp. v. U.S.*,
    50 Fed. Cl. 240 (2001) ................................................ 5

*Palmer v. Champion Mortgage*,
    465 F.3d 24 (1st Cir. 2006) ...................................... 3, 6, 9, 14

*Rodrigues v. Members Mortgage Co., Inc.*,
    323 F.Supp.2d 202 (D. Mass. 2004) ..................................... 13

*Rodrigues v. Members Mortgage Co., Inc.*,
    226 F.R.D. 147 (D. Mass. 2005) ........................................ 12

*Santos-Rodriguez v. Doral Mortgage Corp.*,
    485 F.3d 12 (1st Cir. 2007) ......................................... 7, 8, 9

*Smith v. Check-N-Go of Ill., Inc.*,
    200 F.3d 511 (7th Cir. 1999) .......................................... 15

*Vasys v. Metropolitan District Commission*,
    438 N.E.2d 836 (Mass. 1982) ......................................... 14

*Zamarippa v. Cy's Car Sales, Inc.,*
    674 F.2d 877 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


**Statutes**

15 U.S.C. § 1604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8
Mass. G.L. ch. 93A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Mass. G.L. ch. 140C §§ 1-13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 12
Mass. G.L. ch. 140D § 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
Mass. G.L. ch. 140D § 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14


**Local Rules**

Local Rule 56.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


**Regulations**

12 C.F.R. § 226.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 7
209 CMR 32.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 7


**Other Authorities**

P.L. 96-221, Title VI, § 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
P.L. 96-221, Title VI, § 625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF MASSACHUSETTS

RALPH G. MCKENNA,                    )
GLENROY A. DEANE,                    )
ILENE WILGOREN-DEANE,                )
CHRISTOPHER J. LILLIE; and           )          04-10370-PBS
LAURIE A. LILLIE;                    )
                                     )
          Plaintiffs,                )
                                     )
     v.                              )
                                     )
FIRST HORIZON HOME LOAN              )
CORPORATION,                         )
                                     )          **JURY DEMANDED**
          Defendant.                 )

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT
## OF THEIR CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiffs Ralph G. McKenna, Glenroy A. Deane, Ilene Wilgoren-Deane, Christopher J. Lillie and Laurie A. Lillie respectfully submit this reply memorandum in support of their cross motion for summary judgment against defendant First Horizon Home Loan Corporation's ("First Horizon").

### I.    PLAINTIFFS' STATEMENT OF FACTS IS PROPER

Defendant initially takes issue with the plaintiffs' statement of facts because they highlight the "Achilles' heel" of defendant's arguments. First, defendant asserts that plaintiffs have somehow mischaracterized the testimony of Charles Covington. (Def. Reply p. 2) The parties have agreed that the transcript of Charles Covington was attached to their JSOF. (JSOF ¶ 13) Mr. Covington's testimony has neither been taken out of context, nor has it been misquoted.

1

Inexplicably, defendant argues that the "previous version of the Notice[1] is irrelevant." (Def. Reply p. 2 ) Yet, it was *defendant* who raised that issue in its SOF ¶ 6: "After Plaintiffs' counsel complained about *a previous version of the Notice*, First Horizon created the version of the Notice that is at issue in this case in an effort to simplify it and eliminate an opportunity for mistakes in disclosing to borrowers their right to rescind." (emphasis added) Furthermore, defendant did not respond to plaintiffs' statement of undisputed material facts which attached the previous form of the Notice and set forth in pertinent part that "True and accurate copies of the Deposition Exhibits from the February 11, 2005, Deposition of Charles Covington are attached hereto as **Appendix B**." (PSOF ¶ 2). That material fact is now admitted. Local Rule 56.1. That fact is relevant to show that the previous form, which is strikingly similar to the form Notice at issue, was confusing to First Horizon's own employees and was changed in order to "eliminate an opportunity to make a mistake." (JSOF ¶ 13, App. Ex. 13, 23:16-25, 24:1-8) It is clear that First Horizon's lazy alterations of the Notice by simply removing the check box spaces and adding the ambiguous language "for new transactions involving us" was one of form over substance, and the "opportunity to make a mistake" was replaced by the certainty of improper disclosure.

Finally, the content of the Notice is determinative of whether the disclosure is clear and conspicuous. Plaintiffs' statements that the Notice combines the language in H-8 and H-9 is not argument but fact. (JSOF ¶ 4) The disclosure a consumer will receive depends on the type of transaction and Plaintiffs' statement of facts sets the stage for their argument by presenting undisputed statements of facts, and an explanation of what the law requires.

---

[1] The Notice of Right to Cancel at issue will be referred to herein as "Notice."

2

## II.    FIRST HORIZON FAILS TO CLEARLY DISCLOSE
##         THE RIGHTS AND EFFECTS OF RESCISSION

First Horizon goes through great lengths to explain how the Notice should be interpreted. (Def. Reply, pp. 3-6) It should not have to undertake such an effort because the Notice must be clear and conspicuous on its face. "Clarity is a function of whether the notice is subject to more than one plausible or sensible interpretation." *Apgar v. Homeside Lending, Inc.*, 291 B.R. 665, 672 (Bankr. E.D. Pa. 2003). The fact that defendant admits that the Notice is subject to interpretation confirms that it is unclear. No borrower reading the Notice would conclude that it really consists of two notices and that parts are inapplicable depending on the nature of the transaction.

First Horizon has failed to meet the high burden of establishing that it's Notice satisfies the requirements set forth in 12 C.F.R. § 226.23(b)(1) and 209 CMR 32.23(2)(a). The accuracy of the disclosures at issue must be examined in detail. First Horizon's Notice fails to satisfy the clear and conspicuous standard and to hold otherwise would in effect be minimizing First Horizon's disclosure obligations. A meaningful disclosure must be accurate. *Bizier v. Globe Financial Services, Inc.*, 654 F.2d 1, 4 (1st Cir. 1981). Without meaningful disclosures, the purposes of TILA and the MCCCDA would not be served.

Using the objective standard of review set forth in *Palmer v. Champion Mortgage*, 465 F.3d 24, 28 (1st Cir. 2006), the Notice is unclear. The objective standard of review does not inquire what the plaintiffs themselves understood the Notice to mean, but rather looks to "the text of the disclosures themselves." *Id.* The Notice is set forth below:

> If you cancel the transaction, the mortgage/deed of trust is also canceled. Within
> 20 calendar days after we receive your notice, we must take the steps necessary to

3

reflect the fact that the mortgage/deed of trust on your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

For new transactions involving us, if you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit. It will not affect the amount that you presently owe or the mortgage lien, or security interest we already have on your home. If you cancel the mortgage, lien, or security interest as it applies to the increased amount is also canceled. Within 20 calendar days after we receive your notice of cancellation of the new transaction, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on your home no longer applies to the increase of credit. We must also return any money you have given to us or anyone else in connection with this transaction.

The first sentence of the second paragraph of the Notice[2] is unclear and confusing. *All* borrowers who receive this Notice are entering into "new" transactions with First Horizon. The later part of the first sentence in the second paragraph tells the borrower that if they rescind, only the additional amount of money borrowed will be cancelled. This is incorrect with respect to the plaintiffs.

The second paragraph simply contradicts and undermines the disclosures made in the first paragraph. First Horizon characterizes the second paragraph as "additional information." (Def. Reply, p. 9) First Horizon concedes that "additional information" provided in the second paragraph was meant to "indicate[] to borrowers who were extending existing lines of credit with First Horizon that additional information applied to their situation." (Def. Reply, p. 9) However, because that "situation" did not apply to these plaintiffs, there was no reason to include that "additional information" in the Notice but for the purpose of confusing the borrower. No

---

[2]  In discussing the Notice, these paragraphs will sometimes be referred to as "paragraph 1" or the "first paragraph" and "paragraph 2" or the "second paragraph." In reality, these paragraphs are the second and third consecutive paragraphs on the Notice.

borrower would conclude the second paragraph only applies to some of the transactions in which the notice is provided.

First Horizon defines "new transactions involving us" as an extension of an existing line of credit with First Horizon. (Def. Reply, p. 4) But how is the average consumer to know this? This is not clear from reading the Notice, because as stated above, every transaction involving First Horizon is a "new" transaction. Although Regulation Z, 226.23(a)(1), n. 47, defines a "transaction" in that manner, the word "new" adds nothing to that definition and instead supports the plaintiffs' interpretation that a "new transaction[] involving us" would necessarily mean refinancing a loan made by a different lender than First Horizon. "When different words are used in the same provision they are presumed to have a different meaning." *Nat'l Data Corp. v. U.S.*, 50 Fed. Cl. 24, 30 (2001), *aff'd,* 291 F.3d 1381 (Fed. Cir. 2002). In Plaintiffs' transactions, First Horizon is the "new" lender. Moreover, if First Horizon uses this form in a transaction where it is the original creditor and it extends a second refinancing loan to the borrower, the second paragraph is incorrect because the right to rescind does not apply to another advance. 12 C.F.R. § 226.23(f)(4); 209 CMR 32.23(6)(d). Since this additional language was not in the previous form of the Notice used by First Horizon, its inclusion has to be read as being purposeful. It makes no sense to include the second paragraph if First Horizon intends on giving a different and more general disclosure on the same page.

The effects of rescission are equally ambiguous in the Notice. A reasonable consumer reading the first paragraph would believe that she was entitled to rescind the entire transaction - "If you cancel the transaction, the mortgage/deed of trust is also canceled." A reasonable consumer reading the second paragraph would conversely conclude that she was only

able to rescind the additional amount of credit borrowed - "if you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit." Since different consequences result from reading each paragraph the requirements of Regulation Z, 12 C.F.R. § 226.23(b)(1)(iv) and 209 CMR 32.23(2)(a)(4), have not been satisfied.

Finally, defendant's "*if* this, *then* that" analysis is flawed. (Def. Reply, pp. 5-6) First Horizon argues that *if* the Notice was confusing, *then* the plaintiffs would have been confused at the time of their closings. Defendant is trying to use each plaintiffs' subjective understanding to analyze its Notice objectively. Not only is this result contrary to the standard set forth in *Palmer*, but runs beyond the purview of the TILA and MCCCDA, and allows the lender to benefit from any ambiguity in the Notice at the consumer's expense.

## III.    MCCCDA AND TILA STATUTORY REQUIREMENTS HAVE NOT BEEN MET

The scope of the right to rescind varies depending on the transaction. Creditors are required to use Notices "substantially similar" to the FRB model forms. 12 C.F.R. § 226.23(b)(2); 15 U.S.C. § 1604(b). "To satisfy the disclosure requirements of 209 CMR 32.23(2)(a), the creditor shall provide *a notice* that *conforms with the model forms in Appendix H of Regulation Z*, as appropriate, or a substantially similar notice." 209 CMR 32.23(2)(b). (emphasis added) First Horizon's failure to provide a "substantially similar" notice demonstrates its lack of compliance with statutory requirements. First Horizon cannot refute this argument.

First Horizon confuses "use of the model form" with the statutory requirement of providing a "substantially similar" notice. (Def. Reply, pp. 6-9) Because First Horizon did not use a model form, the Court must look at the Notice and determine whether it is "substantially similar" to the model forms in providing clear and conspicuous disclosures. A "substantially

similar" notice must disclose, according to 12 C.F.R. § 226.23(b)(1)(ii) and (iv) and 209 CMR

32.23(2)(a)(2) and (4), both the right to rescind and the effects of rescission. The disclosure

guidelines set forth in 15 U.S.C. § 1604(b) and Mass. G.L. ch. 140D § 18 provide that a lender is

compliant so long as any changes it makes to the Notice "does not affect the substance, clarity, or

meaningful sequence of the disclosure." It is remarkable that no model form of the notice, nor

any substantially similar form of the notice contains both of the paragraphs in First Horizon's

Notice. Each model form of the notice (H-8 and H-9) provides only *one* of the paragraphs

(paragraph 1 or 2) in First Horizon's hybrid Notice.

      This analysis is consistent with the First Circuit's analysis in *Santos-Rodriguez v.*

*Doral Mortgage Corp.*, 485 F.3d 12, 15-16 (1st Cir. 2007). The H-8, the "general" notice,

discloses the acquisition of a new security interest in a consumer's home, typically by a new

lender. The H-9, in contrast, is intended for the rarer circumstance when an existing lender makes

a loan which merely increases the amount owed to the existing lender. *See In re Porter*, 961 F.2d

1066 (3rd Cir. 1992). In the later situation, the lender is deemed to have retained, not acquired, a

security interest in the consumer's property. Thus, the disclosures set forth in the H-9 form,

designed for the exceptional circumstances, cannot be the appropriate notice in the ordinary

(general, H-8) transaction.

      First Horizon concedes as it must, that the lender cannot "affect the *substance,*

*clarity or meaningful sequence* of the disclosure" to the borrower. (Def. Reply, p. 7) Mass. G.L.

ch. 140D § 18 (emphasis added). Importantly, this provision was *not* part of the former Mass.

G.L. ch. 140C §§ 1-13. Mass. G.L. ch. 140C was repealed in 1981. The new Mass. G.L. ch.

140D was adopted at the same time and contained the language at issue. Nearly identical

language is found in 15 U.S.C. § 1604(b), and Mass. G.L. ch. 140D § 18 was obviously copied from § 1604. According to P.L. 96-221, Title VI, § 605, this provision in § 1604 stating that the lender cannot "affect the substance, clarity or meaningful sequence of the disclosure" did not take effect until the expiration of 2 years after the date of its enactment on March 31, 1980. P.L. 96-221, Title VI, § 625. In light of this amendment, all cases decided pre-1980 under Mass. G.L. ch. 140C, including *Mechanic Nat'l Bank of Worcester v. Killeen*, 384 N.E.2d 1231 (Mass. 1979), are obsolete. A new standard of disclosure was adopted in 1980.

The Notice at issue fails to clearly and conspicuously communicate in a meaningful sequence the right to rescind to the borrower. In the first paragraph, a general (H-8) disclosure is provided. In the very next paragraph, a limited disclosure (H-9) is provided. The Notice combines these two different rights and effects of rescission in one document in a way that the disclosure becomes meaningless and improper. A borrower cannot be presented with two different consecutive disclosures of their right to rescind and two different consecutive options of the effects of rescission, either in one document, or as was the case in *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006), two different documents.

*Handy* is instructive and persuasive in this case. In *Handy*, the Seventh Circuit held that where more than one interpretation of a consumer's rights are possible, the Notice cannot be clear and conspicuous. *Id.* at 764. *Doral* is consistent with this rule of law.

In *Doral*, the plaintiffs argued that the provision of the wrong form of Notice was a *per se* TILA violation; the Court rejected that argument. *Doral*, 485 F.3d at 15. Plaintiffs do not make that argument in this case. The plaintiffs in *Doral* also argued that they were "misled . . . as to their rescission rights" by provision of a H-8 general form notice in an H-9 refinance with

a same lender transaction. *Id.* at 16. The First Circuit found the plaintiffs received clear and conspicuous disclosures after reviewing the content of the notice with the requirements set forth in Regulation Z under the objective standard of review set forth in *Palmer*. *Id.* at 17-19. Similarly in this case, this Court should undertake the same analysis as discussed *supra*. Consequently, the Court must find the Notice fails to meet the statutory disclosure requirements.

Furthermore, as discussed in plaintiffs' opening brief, *Doral* distinguished *Handy* on its facts. Those facts are (1) Handy's transaction was a refinance with a new lender that was different than the original lender (H-8 form notice is appropriate) and (2) Handy received both H-8 (general) and H-9 (refinance with the same lender) forms of notice. Consistent with *Doral* and the arguments raised in plaintiffs' opening brief, provision of a general form notice H-8 when a limited form notice H-9 is required does not violate the TILA because the greater includes the lesser. The plaintiff in *Handy*, like the plaintiffs in this case, received the H-9 notice, limiting their rescission rights when their transactions called for general disclosures and general rescission rights. Despite defendant's feeble efforts to convey the contrary, this Court must still rule in favor of plaintiffs and will in doing so remain consistent with the rule of law set forth in *Doral*.

First Horizon's hybrid form Notice on its face is deficient. Defendant has clearly undertaken a conscious effort to have one form apply in two different transactions, by incorporating language from both the H-8 (general) and H-9 (refinance with the same lender) forms. (*Compare* PSOF ¶ 2, Appendix B, to JSOF ¶4) The form is also virtually identical to the Notice previously used by First Horizon. (JSOF ¶ 13, App. Ex. 13, 24:9-25, 25:1-7, 34:18-37:16) In cases where a creditor used a hybrid form notice but failed to check a box indicating which notice language applied, courts held that TILA had been violated. *In re Stanley*, 315 B.R. 602,

9

612 (Bankr. D. Kan. 2004); *In re Finch*, 2003 Bankr. LEXIS 2049, at *25 (Bankr. D. Kan. Nov.

7, 2003); *In re Ramirez,* 2003 Bankr. LEXIS 1364, at *22-23 (Bankr. D. Kan. May 28, 2003),

*aff'd* on other grounds *sub nom. In re Merriman*, 329 B.R. 710 (D. Kan. 2005). *See also In re*

*Cushing*, 2005 Bankr. LEXIS 99 (D. Kan. Jan. 21, 2005) (the Court held that hybrid form was

clear and conspicuous so long as the appropriate box on hybrid form notice was checked).

Combining the two notices <u>without</u> making clear which provisions apply does not *further* clear

and conspicuous disclosure.

## IV.    FIRST HORIZON'S PREVIOUS FORM OF THE NOTICE IS RELEVANT

First Horizon argues that its previous version of the Notice is irrelevant. (Def.

Reply, p. 9) Yet, it was First Horizon who put the previous version of the Notice into its

statement of undisputed material facts. (SOF ¶ 6) First Horizon's statement of undisputed

material facts[3] states that it changed its Notice after receiving complaints "in an effort to simplify

it and eliminate an opportunity for mistakes in disclosing to borrowers their right to rescind." *Id.*

The testimony of Charles Covington, First Horizon's director of quality control and compliance

confirms this fact.  (JSOF ¶ 13, App. Ex. 13, 7:20-23; 23:9-25, 24:9) The lawsuits filed by *Maria*

*and Norley Tabares, Tabares v. First Horizon Home Loan Corp.*, 05 C 17 (D.R.I.) and *Gerard*

*and Dawn Morin v. First Horizon Home Loan Corp.*, 03 C 518 (D.R.I.) allege TILA violations

arising out of the checkbox form notice.  (SOF ¶ 6 and Pl. Resp. to SOF ¶ 6).

Contrary to defendant's assertions, there has been discovery on the issue of the

form of the Notice at issue and the previous form of the Notice used by First Horizon. (Def.

---

[3] Plaintiffs have previously addressed the argument of the sufficiency of the inclusion of this fact in their statement of undisputed material facts. *See supra*, pp. 1-2

10

Reply, pp. 9-10)  Mr. Covington's testimony alone refutes defendant's assertions.  No testimony has been inaccurately cited, nor have any statements been taken out of context.  First Horizon has failed to identify the reasons why the addition of "for new transactions involving us" to the second paragraph "cures" any defects on the Notice.  It makes it worse, not better.  Without the checkbox spaces, the borrowers have to guess (1) that less than all of the Notice applies to their particular transaction, and (2) what parts do not apply.  Each scenario renders the Notice unclear.

## V.    RULES OF CONTRACT INTERPRETATION ARE HELPFUL IN ASCERTAINING THE MEANING OF THE PARAGRAPHS AT ISSUE IN THE NOTICE

Plaintiffs in their opening brief argued that the Court should look to rules of contract interpretation to determine which paragraph on the Notice applies to them.  This common-sense argument, unsurprisingly baffles defendant.  (Def. Reply, pp. 11-12) The cited rules of contract interpretation seek to discover what meaning the average person would derive from written documents.  For example, the principle that different language is presumed to have a different meaning reflects the normal reaction people have.

The Notice must communicate to the borrower their rights and duties and the lender's rights and duties.  In this case, the Notice fails to clearly and conspicuously communicate to the borrower what their rights and duties are in their specific transactions.  Each paragraph in the Notice communicates a different right and effect of rescission.  Thus, the borrower is left in a position not knowing that if they exercised their right to rescind, whether they have met all of the conditions required to exercise their right and to what extent First Horizon will limit or extinguish their security interest in the property.

11

## VI.    STATE AND FEDERAL LAW DO NOT DIFFER
##          ON THE STANDARD OF REVIEW

Out of desperation, defendant argues that a subjective standard of review applies to MCCCDA violations.  (Def. Reply, pp. 12-20) The fact that the defendant can only rely on caselaw to support its position from the 1970's "Pre-Simplification" statute, Mass. G.L. ch. 140C, is telling.  Neither *Mechanic Nat'l Bank of Worcester v. Killeen*, 384 N.E.2d 1231 (Mass. 1979), nor *Rodrigues v. Members Mortgage Co., Inc.*, 226 F.R.D. 147 (D. Mass. 2005), held that a subjective standard of review applied to MCCCDA violations.

In *Rodrigues*, one of the issues presented was whether plaintiffs can certify a class *pursuant to TILA*, not the MCCCDA, of persons who signed or received a confirmation of non-exercise of right to cancel form.  226 F.R.D. at 149-150.  The defendant in that case argued that the plaintiffs could not satisfy the predominance requirement because an individual *factual* inquiry needed to be undertaken to determine if oral instructions were provided to the borrowers at their closings that were inconsistent with the notice of right to cancel and confirmation of non-exercise of right to cancel form. *Id.* at 152.   In response to this argument, the Court in *Rodrigues* held that the predominant common question was the individual inquiry defendants argued was necessary. *Id.* at 152.   The analysis the Court undertook to determine whether predominance existed was as follows: "Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and *objective* criteria-thus rendering unnecessary an evidentiary hearing on each claim.'" *Id.*  (citations omitted)(emphasis added)  The Court did not hold as First Horizon suggests, that the subjective understanding of the

consumer is the standard of review to determine if a violation of the law had occurred.[4]

Plaintiffs do not dispute that when a state supreme court speaks on an issue of state law, federal courts are to apply that rule of law. (Def. Reply, pp. 14-15)  However, the SJC did hold not in *Killeen* or in any other case, that a subjective standard of review applies to MCCCDA violations.  384 N.E.2d 1231 (Mass. 1979).  First Horizon has read the statement "The Killeens knew who the lender was" as an interpretation that a subjective inquiry was undertaken.  *Id.* at 1238.  However, the standard articulated in that case was objective - a review of all of the documents provided to the borrowers.  *Id.*

*Killeen* has not been cited for the proposition relied upon by First Horizon by any court in this District, or by the SJC, after Simplification.  In *Mayo v. Key Financial Services, Inc.*, 1994 Mass. Super. LEXIS 549 (Mass. Super. June 22, 1994), the court used an objective standard of review to evaluate an alleged violation of the MCCCDA in the context of a summary judgment motion.  The borrowers in that case sought to rescind their loans for understated finance charges.  *Id.* at *5.  After determining that the TILA and the MCCCDA were identical in defining "material nondisclosures," the SJC looked to caselaw interpreting TILA to determine that the understated finance charges were material disclosures.  *Id.* at *15-16.  "A material disclosure relates to information that would affect the credit shopper's decision to use credit, and materiality should be determined by an objective standard based on what a reasonable consumer would find significant."  *Id.* at *17.

When the Legislature, in enacting a statute, adopts the language of a Federal

---

[4]  Even if the Court did make such a holding, it would conflict with the Court's earlier holding in *Rodrigues v. Members Mortgage Co., Inc.*, 323 F.Supp.2d 202, 206 (D. Mass. 2004), where the court ruled on a defendant's motion to dismiss using an objective standard of review.

13

> statute, we will ordinarily construe the Massachusetts statute in accordance with construction given the cognate Federal statute by the Federal court. We do not follow the Federal precedent, however, when the Federal result is dictated by some principle of Federal law not found in the law of Massachusetts.

*Vasys v. Metropolitan District Commission*, 438 N.E.2d 836 (Mass. 1982).

The MCCCDA is Massachusetts' version of the TILA. Since the MCCCDA provisions at issue in this case mirror the federal statute TILA, they must be construed in accord with other opinions interpreting TILA. It is undisputed that *Palmer v. Champion Mortgage*, 465 F.3d 24, 28 (1st Cir. 2006), dictates that an objective standard of review is applied in determining whether a TILA violation occurred. Thus, the objective standard of review must be used in this case to determine whether a violation of the MCCCDA has occurred.   In addition, because the text of the Notice indicates whether the right to rescind is clearly and conspicuously disclosed, it is unnecessary to examine any additional information or circumstances.

Another Massachusetts consumer protection statute, Mass. G.L. ch. 93A, uses an objective standard of review to determine whether a violation occurred. *Leardi v. Brown*, 474 N.E.2d 1094 (Mass. 1985); *Aspinall v. Phillip Morris Cos., Inc.*, 813 N.E.2d 476, 488 (Mass. 2004). If a violation of the MCCCDA is a *per se* violation of 93A, the same standard of review has to apply in analyzing alleged violations of these statutes. Mass. G.L. ch. 140D § 34. Defendant has offered no reasons why the standard of review should be different in this case than other Massachusetts consumer protection statutes.

Defendant has failed to cite to any case where a subjective standard of review has been held to apply to either a TILA violation or any other exempt state's version of TILA, for the violations at issue in this case; no such cases exist. The First Circuit in *Palmer* has followed

14

numerous other courts in applying an objective standard of review to TILA violations. "An objective standard is used to determine violations of the TILA, based on the representations contained in the relevant disclosure documents; it is unnecessary to inquire as to the subjective deception or misunderstanding of particular consumers....We cannot allow the appellees to evade the requirements of the TILA and Regulation Z on the fortuity that some consumers are better able to evaluate the information than others." *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir. 1982); "The legal standard under the Truth in Lending Act is the objective 'reasonable person' approach,....[which] has nothing to do with borrowers' comprehension.... [and] depends on the contents of the form, not on how it affects any particular reader." *Smith v. Check-N-Go of Ill., Inc.,* 200 F.3d 511, 515 (7th Cir. 1999) (internal citations omitted).

The standardization of statutory and remedial provisions between the TILA and MCCCDA must mean that an objective standard of review be used to analyze violations of the law. To hold otherwise, would defeat the private attorney general provision of each statute and would prevent any class from ever being certified because subjective inquiries would have to be undertaken in each instance. First Horizon's proposed subjective approach to MCCCDA violations, based wholly on a case decided under a prior version of the law which did not include the current standard of disclosure, takes the teeth out of the statute and permits the lender to benefit for MCCCDA violations that are facially apparent due to the fortuitous circumstances of each borrower. This is neither a compelling nor a just result.

## VII.    PLAINTIFFS' TESTIMONY DOES NOT SHOW LACK OF CONFUSION

Assuming *arguendo* that the MCCCDA violations do require a subjective standard of review, not all of the plaintiffs in this case testified that at the time of their respective

closings, they knew which paragraph in the Notice applied to them and what the extent of their rescission rights were. (SOF ¶¶ 1-5) Most of the plaintiffs knew they had a three day right to rescind their loans; but that is not the issue in this case. However, some of the plaintiffs did not clearly understand what their rescission rights were and the effects of rescission. This in and of itself is not unusual. Most plaintiffs, especially in consumer protection cases, do not know what their rights are or even that they have been violated until a complaint has been filed.

In fact, all of the plaintiffs were confused by the Notice. Ms. Lillie stated:

Q: After you reviewed that document, you still understood that you had the right to cancel your loan, is that right?

A: I thought I had the right to cancel it, but apparently the language in it isn't pertaining to the type of loan that we had, because it says, for the new transactions, cancellation will only apply to the increased amount of credit. So we didn't have the right to rescind the entire transaction, which I assumed, just by reading, you have three days to cancel, you know, that you would be able to cancel the entire transaction.

* * *

Q: At the time, back in August of 2003, was it your understanding, after you looked at this document, that you had the right to cancel the loan?

A. I assumed we had the right to cancel the entire loan.

Q: In August of 2003?

A. Yes.

Q: Is it correct that you've come to a different conclusion since you have retained Mr. Lefebvre?

A: Now I understand that the document was incorrect that we received for the type of loan that we did get.

Q: But you didn't hold that opinion until you had retained Mr. Lefebvre, is that right?

A. Until I had spoken with him on the phone. I hadn't retained him yet.

(JSOF ¶ 9, App. Ex. 9, 61:16-24; 62:1-22)

In its totality, it appears that Ms. Lillie believed she had a right to rescind the entire loan and then thought she only had the right to rescind the additional amount of the loan extended to her. She begins her testimony stating "I thought I had the right to cancel it" and then concludes,

"apparently the language in it isn't pertaining to the type of loan we had, because it says [in the second paragraph of the Notice], *for the new transactions*, cancellation will only apply to the increased amount of credit." *Id.* (emphasis added) Based on her reading of the Notice, she was drawn to the second paragraph which indicated to her that she had a limited right to rescind only the increase in the amount of credit. Ms. Lillie subsequently concludes, "we didn't have the right to rescind the entire transaction," which she thought "just *by reading* [the first paragraph of the Notice]...that you would be able to cancel the entire transaction." *Id.* (emphasis added) Ms. Lillie then came to a "different conclusion" after retaining counsel. Ms. Lillie's testimony, like that of her co-plaintiffs shows that she was confused about her rescission rights.

Mrs. Deane's deposition likewise revealed confusion when questioned regarding her knowledge of her rescission rights at the time of her closing:

> Q:   Do you recall reviewing the notice of your right to cancel at the closing?
> A:   Looking at it and signing, but I do not remember reading specifically word for word, no.
> Q:   Is it correct that at the closing that you understood that you had a right to cancel the loan?
> A:   Yes.
> Q:   Was it your understanding that if you cancelled the loan, the whole transaction was cancelled?
> A:   Yes.
> Q:   And that was you understanding at the closing?
> A:   Correct.
> (JSOF ¶ 12, App. Ex. 12, 66:20-24; 67:1-10)
> Q:   Do you believe now that First Horizon violated some particular law?
> A:   I believe that that document is wrong or not the correct one.
> Q:   But you didn't believe that at the time of the closing; is that right?
> A:   I didn't know.
> (JSOF ¶ 12, App. Ex. 12, 69:5-11)

Yet, Ms. Deane was never questioned of what she knew her rights were at the time of her closing based on a review of the Notice at issue. In fact, she testified unequivocally, "I do not remember

reading [the Notice] specifically word for word." *Id.*[5]  In fact, at the time of her closing, she "didn't know" whether the Notice was correct or incorrect.  She was only questioned on what she understood her rights to be generally, based on perhaps, her general life experience.

Outside of Ms. Lillie's deposition, First Horizon never asked what each plaintiffs' understanding of what their rights to rescind were based on their reading of the Notice at issue *at the time of their closings*.  Plaintiffs were never questioned whether they understood at their closings that they had either a limited or general right to rescind based on a review of their First Horizon Notice.  Instead, First Horizon's questions to plaintiffs during their depositions focused on what their understanding of their rights to rescind were *after* obtaining counsel, and *after* filing this lawsuit.   The critical time to assess what plaintiffs' subjective understanding of what their rights were with respect to exercising their right to rescind would be at their closings, when they were reviewing the Notice at issue.  It would be counterintuitive to assess what someone's understanding of their rights were after they spoke to an attorney and after they filed a lawsuit.  Because First Horizon failed to ask the plaintiffs those questions, there is no subjective assessment that can be made.  For this reason, First Horizon's argument is fatally flawed.

## VIII.   CONCLUSION

Based on the foregoing, plaintiffs respectfully request that this Court grant their cross-motion for summary judgment and deny defendant's motion for summary judgment.

---

[5]  Mr. McKenna also testified that he did not read the Notice at his closing.  (JSOF ¶11, App. Ex. 11, 56:16-17; 58:4-15)   Mr. Lillie testified, "I didn't actually read the [Notice] document thoroughly, but any document like that is confusing to me."  (JSOF ¶10, App. Ex. 10, 68:15-18)

Respectfully submitted,

___/s/ Heather Kolbus___
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, IL  60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre, BBO No. 629056
CLAUDE LEFEBVRE, P.C.
P.O. Box 479
Pawtucket, RI  02862
(401) 728-6060
(401) 728-6534 (FAX)