```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


                                  )
RALPH G. MCKENNA,                 )
GLENROY A. DEANE,                 )
ILENE WILGOREN-DEANE,             )
CHRISTOPHER J. LILLIE, AND        )
LAURA A. LILLIE,                  )
          Plaintiffs,             )
                                  )
     v.                           )  Civil Action No. 04-10370-PBS
                                  )
FIRST HORIZON HOME LOAN           )
CORPORATION,                      )
          Defendant.              )
                                  )
```

**MEMORANDUM AND ORDER**

March 3, 2008

Saris, U.S.D.J.

## I. **INTRODUCTION**

Plaintiffs allege that defendant First Horizon Home Loan Corporation ("First Horizon") gave them confusing Notices of Right to Cancel in connection with their refinancing transactions, in violation of the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"), implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226.1, et seq., and their Massachusetts counterparts, the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D ("MCCCDA") and 209 Mass. Code Regs. 32.23. Plaintiffs and Defendant have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. After hearing and a review of the submissions, I **ALLOW** Defendant's motion for summary judgment and **DENY** Plaintiffs' motion for

summary judgment.

## II. FACTUAL BACKGROUND

The following facts are undisputed except where stated. During 2003, Plaintiffs obtained residential home loans from First Horizon in order to refinance their prior mortgages with different lenders. Each Plaintiff used most of the loan proceeds from First Horizon to refinance a pre-existing mortgage. In connection with each transaction, Defendant provided each Plaintiff with a Notice of Right to Cancel ("Notice"),[2] which read:

> You are entering into a transaction that will result in a mortgage/deed of trust on your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occur last: (1) the date of the transaction, which is ___; or (2) the date you received your Truth-in-Lending disclosures; or (3) the date which you received this notice of your right to cancel.
>
> If you cancel the transaction, the mortgage/deed of trust is also canceled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/deed of trust on your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.
>
> For new transactions involving us, if you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit. It will not affect the amount that you presently owe or the mortgage lien,

---

[2] Plaintiffs provided evidence regarding the form of notice that Defendant previously used. Because this Court applied an objective standard of review, it was not necessary to review this history.

>or security interest we already have on your
>home.  If you cancel the mortgage, lien, or
>security interest as it applies to the
>increased amount is also canceled.  Within 20
>calendar days after we receive your notice of
>cancellation of the new transaction, we must
>take the steps necessary to reflect the fact
>that the mortgage, lien, or security interest
>on your home no longer applies to the
>increase of credit.  We must also return any
>money you have given to us or anyone else in
>connection with this transaction.
>
>You may keep any money or property we have
>given you until we have done the things
>mentioned above, but you must then offer to
>return the money or property.  If it is
>impractical or unfair for you to return the
>property, you must offer its reasonable
>value.  You may offer to return the property
>at your home or at the location of the
>property.  Money must be returned to the
>address below.  If we do not take possession
>of the money or property within 20 calendar
>days of your offer, you may keep it without
>further obligation.

When Plaintiffs sent rescission notices to First Horizon, it refused to grant them rescission on the ground that Plaintiffs' notices were untimely.

Plaintiffs (with the possible exception of one) testified that they understood their rights to rescind after receiving First Horizon's notice.[3]

---

[3]Defendant provides testimony from Plaintiffs' depositions indicating that all but one of the Plaintiffs did understand that they had the right to cancel their transactions and rescind their loans.  One Plaintiff, who did not read his Notice, did not correctly understand his right to cancel.  Plaintiffs dispute Defendant's assertion that Plaintiffs' depositions demonstrate that they understood their rights, but provide minimal evidence of actual confusion.  Plaintiffs rely primarily on their argument that the appropriate standard of review is objective.  Defendant acknowledges that the Court's initial analysis should involve an objective standard of review, but argues that, even if the Notice were found to be objectively confusing, Plaintiffs should not be

### III.   PROCEDURAL BACKGROUND

On February 24, 2004, Plaintiffs filed a class action suit against First Horizon, seeking statutory damages and rescission pursuant to the TILA and MCCCDA.  On March 21, 2005, Plaintiffs moved to certify two classes of people who had received Defendant's Notice.  On March 31, 2006, another judge of this Court certified a class of Massachusetts borrowers who had received the Notice from Defendant.  McKenna v. First Horizon Home Loan Corp., 429 F. Supp. 2d 291, 296 (D. Mass. 2006).  Defendant appealed and the First Circuit Court of Appeals reversed the class certification decision and vacated the class certification order.  McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 427 (1st Cir. 2007) (holding that class certification is not available for rescission claims under the TILA).  The First Circuit remanded the case, which was subsequently transferred to this Court.

In their second amended complaint, Plaintiffs seek rescission individually and statutory damages both individually and on behalf of a class.  On May 7, 2007, Plaintiffs also filed an amended motion for certification of a class seeking statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(B) and Mass. Gen. Laws ch. 140D, § 10(g).  The parties agreed to defer the class

---

entitled to damages because they were not actually confused by the Notice.  Defendant relies on Mechs. Nat'l Bank of Worcester v. Killeen, 377 Mass. 100, 384 N.E.2d 1231 (1979) to support this proposition.  Because this Court decided the case in Defendant's favor under the objective standard, I do not need to address whether Killeen supports Defendant's subjective standard claim.

certification issues until their cross motions for summary judgment were decided.

## IV. STANDARD OF REVIEW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)[1]), cert. denied, 516 U.S. 1113 (1996). "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour, 63 F.3d at 37 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to

---

[1] The language of Fed. R. Civ. P. 56(c) has since been amended, effective December 1, 2007, but this amendment does not affect the analysis.

return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" Rogers, 902 F.2d at 143 (quoting Anderson, 477 U.S. at 249-50) (citations in Anderson omitted). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Barbour, 63 F.3d at 36.

### V. DISCUSSION

**1. The Statutory and Regulatory Scheme**

Congress enacted the TILA in 1968 "to assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). "To accomplish this goal, the TILA requires creditors to disclose, clearly and accurately, all the material terms of consumer credit transactions." McKenna, 475 F.3d at 421. A borrower has the statutory right to rescind any consumer credit transaction involving a security interest being taken in the borrower's home within three days of the transaction or receipt by the borrower of information about this right to rescind, whichever is later. See 15 U.S.C. § 1635(a). The TILA provides that creditors must also "clearly and conspicuously disclose" this right to borrowers. Id. If a creditor fails to deliver any of the required material disclosures to the borrower, the borrower may rescind at any time up to three years following the consummation of the transaction or the sale of the property, whichever occurs first. See id. § 1635(f). If a creditor fails

to respond to a rescission request within twenty days, the borrower may file suit in federal court to enforce the rescission right. See Palmer v. Champion Mortgage, 465 F.3d 24, 27 (1st Cir. 2006).

The Massachusetts legislature modeled the MCCCDA on the TILA. Because the MCCCDA largely mirrors its federal counterpart, "[i]t is, therefore, common ground that the MCCCDA should be construed in accordance with the TILA." McKenna, 475 F.3d at 422. The MCCCDA is so similar to the TILA that Massachusetts is one of the few states to which the Federal Reserve has granted an exemption from TILA for certain classes of credit transactions; in Massachusetts, "as to certain TILA requirements the federal provisions have no force and creditors are subject to state requirements that are generally quite similar and often identical to the federal requirements." Belini v. Washington Mut. Bank, FA, 412 F.3d 17, 20 (1st Cir. 2005). The parties agree that the relevant requirements under the TILA and MCCCDA are virtually identical.

Regulations issued pursuant to both the TILA and MCCCDA require that notice of the right to rescind "shall clearly and conspicuously disclose the following:...[t]he effects of rescission." 209 Mass. Code Regs. 32.23(2)(a). See also 12 C.F.R. § 226.23(b)(1). This requirement to disclose the effects of rescission obliges lenders to disclose, inter alia, the following:

> "(a)  When a consumer rescinds a transaction, the security interest giving rise to the right of

>rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>
>(b) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest."

209 Mass. Code Regs. 32.23(4).  See also 12 C.F.R. § 226.23(d) (providing comparable requirements under the TILA).

The Federal Reserve Board has developed model forms designed to meet TILA's requirements regarding disclosure of the borrower's right to rescind, pursuant to Regulation Z. Regulation Z provides that "[t]o satisfy the disclosure requirements of paragraph (b)(1) of this section, the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice."  12 C.F.R. § 226.23(b)(2).  See also 209 Mass. Code Regs. 32.23(2)(b) ("To satisfy the disclosure requirements of 209 CMR 32.23(2)(a), the creditor shall provide a notice that conforms with the model forms in Appendix H of Regulation Z, as appropriate, or a substantially similar notice.")  These model forms were designed to describe the effects of rescission differently depending on the nature of the transaction.  For example, Form H-8[2] is the

---

[2]The relevant paragraph concerning the effects of rescission in Form H-8 states:
>"If you cancel the transaction, the [mortgage/lien/security interest] is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the [mortgage/lien/security interest] [on/in] your home has been cancelled, and we must return to you any

form designed for general transactions, while Form H-9[3] is intended to be used in connection with same-lender refinancing transactions.  See 12 C.F.R. § 226 (app. H-8, H-9).

### 2. Hybrid Form

The key disputed issue is whether the Notice is confusing as a matter of law as to the effects of rescission.  As the parties agree, the standard to be applied is objective.  The First Circuit has explained that "in the TILA context...we, like other courts, have focused the lens of our inquiry on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings."  Palmer, 465 F.3d at 28.  "[C]ourts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer - a consumer who is neither particularly sophisticated nor particularly dense."  Id.

Plaintiffs contend that the Notice, viewed from the perspective of this hypothetical average consumer, fails to

---

money or property you have given to us or to anyone else in connection with this transaction."

[3]The relevant paragraph concerning the effects of rescission in Form H-9 states:
"If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction."

disclose clearly the effects of rescission because the amalgamated form combines the terms of H-8 (the general rescission model form) and H-9 (the form used in connection with same-lender refinancings). Plaintiffs claim that a borrower, refinancing a loan for which <u>another</u> lender was the original creditor, would be confused as to which paragraph applies to him or her. In Plaintiffs' view, Defendant has created a hybrid form that creates a hazy horizon between different kinds of transactions. Plaintiffs give the following example of likely confusion:

> The two paragraphs in First Horizon's Notice involve substantially different results. For example, Mr. McKenna obtained a $244,600 mortgage loan from First Horizon. (JSOF ¶1); (PSOF ¶1). This loan refinanced the following debts: $211,192.72 to Chase Manhattan Mortgage Corp. and $604.94 to 1Q R.E. Tax to Town of Braintree. (PSOF ¶1). According to defendant's Notice, Mr. McKenna would believe he was entitled to rescind the $33,407.28, the additional amount borrowed. In fact, he is entitled to rescind the entire $244,600 amount borrowed. However, paragraph 2 of defendant's Notice tells Mr. McKenna that he is only entitled to exercise a limited rescission right in the amount of $33,407.28, as opposed to the full amount of the loan, which is wrong.

(Pls.' Br. 8). Instead, Plaintiffs contend that each Plaintiff should have received a general notice similar to H-8.

An analysis of the facts in <u>Santos-Rodriguez v. Doral Mortgage Corp.</u>, 485 F.3d 12 (1st Cir. 2007) is particularly helpful in resolving this dispute. The plaintiffs, who took part in same-lender refinancing transactions and received notices of right to cancel modeled on Form H-8, argued that the lender's

failure to provide a notice modeled on Form H-9 constituted a violation of TILA because the notice they received did not disclose that if a same-lender refinancing is rescinded, the original loan is not also canceled.  In plaintiffs' view, a consumer would be less willing to rescind if he believed he would also have to repay the original mortgage.  The First Circuit noted that "the TILA plainly states that use of the model forms is not obligatory," id. at 15, and rejected plaintiffs' argument, explaining that the relevant inquiry is not "whether the notification in Form H-9 would have been more complete than the notification plaintiffs actually received, but only whether the notification plaintiffs actually received met the requirements of the clear and conspicuous standard laid out in Regulation Z."

Id. at 18.  The First Circuit explained:

> Most importantly, [the lender's] disclosure form informed plaintiffs that, "If you cancel the transaction, the mortgage, lien or security interest is also cancelled."  This statement fulfilled the regulatory requirement that the lender disclose that, upon rescission of the current transaction "the security interest giving rise to the right of rescission becomes void."  12 C.F.R. § 226.23(d)(1).  Contrary to plaintiffs' assertion, this disclosure is accurate even in same-lender refinance transactions such as those at issue here, because rescission of a refinance transaction does indeed cancel the entire security interest contemplated by the refinance agreement.

Id. at 17.  Eschewing a requirement of "perfect disclosure," the First Circuit added that "because plaintiffs were told, clearly and conspicuously, that rescission would only operate as to their pending refinance transaction, any conclusions that they might

11

have drawn from that disclosure about their previously existing mortgages were unreasonable (and, thus, not a valid basis for any TILA claim)." Id. at 18.

Plaintiffs point to caselaw in other circuits taking a stricter, zero-tolerance approach when determining whether notice meets the TILA standard. Plaintiffs highlight In re Porter, 961 F.2d 1066 (3d Cir. 1992), which involved a borrower who was wrongly provided the H-8 general form notice. Because the transaction in question was a refinancing entitling borrower to only a partial rescission right, id. at 1076, the Third Circuit concluded that neither the H-8 nor the H-9 gave the borrower clear notice of her partial rescission right that TILA requires and held that if "neither the H-8 nor the H-9 fits a transaction, [lenders] must prepare their own notice forms that do clearly explain their borrowers' statutory rescission rights." Id. at 1078. The court's holding in Porter was informed by its understanding of TILA as creating "a system of strict liability in favor of the consumers when mandated disclosures have not been made." Id. at 1078. The Seventh Circuit has also held that "TILA does not easily forgive 'technical' errors." Handy v. Anchor Mortgage Corp., 464 F.3d 760, 764 (7th Cir. 2006) (holding that a creditor's "simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement, especially with regard to the 'effects of rescission.'")

Reliance on Handy and Porter is misplaced because the First

Circuit recently declined to follow the hyper-technical approach of these circuits. See <u>Doral</u>, 485 F.3d at 17 n.6. In the First Circuit's view, "Congress proceeded to amend the TILA to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations." <u>McKenna</u>, 475 F.3d at 424.

With <u>Doral</u> in mind, I conclude that the Notice, while not perfect, clearly and conspicuously disclosed to Plaintiffs the effects of the rescission. The first of the two disputed paragraphs in the Notice clearly states, "If you cancel the transaction, the mortgage/deed of trust is also canceled." To return to Plaintiffs' example involving Mr. McKenna discussed above, there is no reasonable reading of this paragraph that would mislead a typical consumer into believing that he could not rescind the entire amount of the new loan, rather than just the portion of the loan giving him new, additional money. Plaintiffs argue that the next paragraph would lend support to this incorrect reading because nothing in the Notice informed Plaintiffs that only one of the two paragraphs is applicable to their mortgage transactions. The next paragraph begins with the following two sentences: "For new transactions involving us, if you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit. <u>It will not affect the amount that you presently owe or the mortgage lien, or security interest we already have on your home</u>." (Emphasis added). To be sure, the introductory phrase could have been more explicit in explaining that the paragraph only deals with same-lender

13

refinancing.  Still, the mention of a security interest "we already have on your home" in the second sentence sufficiently notifies borrowers that this paragraph applies only to refinancing transactions involving loans already made by the same lender.  As all of Plaintiffs' loans involved new lenders, under an objective standard, the Notice is adequate to notify borrowers that rescission of this transaction results in cancellation of the mortgage held by First Horizon.  Only a strained reading would suggest that rescission would result in a cancellation only of the additional amount of credit borrowed.

## VI. ORDER

For the reasons set forth above, Defendant's motion for summary judgment [Docket No. 72] is **ALLOWED** and Plaintiffs' motion for summary judgment [Docket No. 78] is **DENIED**.

**S/PATTI B. SARIS**
United States District Judge